**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PERSONAL GROOMING CO LIMITED, | Case No.: |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| DRYFHOUT ENTERPRISES, LLC, DRYFHOUT PROPERTIES, LLC, MATTHEW DRYFHOUT, and ANGELINA DRYFHOUT, | |
| Defendants. | |

<u>**COMPLAINT**</u>

Plaintiff Personal Grooming Co Limited ("Plaintiff"), by and through its attorneys, as and for its Complaint against Defendants Dryfhout Enterprises, LLC ("Dryfhout Enterprises"), Dryfhout Properties, LLC ("Dryfhout Properties"), Matthew Dryfhout ("Mr. Dryfhout"), and Angelina Dryfhout ("Ms. Dryfhout"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.     This is an action for replevin of properties that Defendants wrongfully took from Plaintiff under the knowingly false pretense that the properties, consisting of 36 trademarks, 18 patents, and 79 website domains, belonged to Shellco 2021 Limited f/k/a Bakblade Limited ("Shellco"), a judgment debtor of Defendants. Defendants knew that Plaintiff owned the properties yet nevertheless falsely applied to this Court for a writ of execution, obtained that writ, and then arranged for the fraudulent "sale" of those properties to Defendants. Plaintiff also seeks declaratory relief establishing that it is the owner of the seized properties and that Defendants' liens asserted against those properties are invalid and unenforceable.

1

**THE PARTIES**

2.      Plaintiff is a private limited company incorporated and registered in England and Wales with company number 13679662 whose registered office is at 124 City Road, London, Greater London, England, EC1V 2NX.

3.      Dryfhout Enterprises is an Illinois limited liability company with a principal place of business at 25 Colonel Winstead Drive, Brentwood, Tennessee.

4.      Dryfhout Properties is an Illinois limited liability company with a principal place of business at 25 Colonel Winstead Drive, Brentwood, Tennessee.

5.      Mr. Dryfhout is an individual domiciled in Tennessee, residing at 25 Colonel Winstead Drive, Brentwood, Tennessee.

6.      Ms. Dryfhout is an individual domiciled in Tennessee, residing at 25 Colonel Winstead Drive, Brentwood, Tennessee.

7.      Mr. Dryfhout and Ms. Dryfhout are the sole members of both Dryfhout Enterprises and Dryfhout Properties.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), in that this is a civil action between Plaintiff, an alien citizen of England and Wales, and Defendants, citizens of Tennessee, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over the Defendants under 10 Del. § 3104, and venue in this District is proper, because the claims arise out of Defendants' tortious conduct in Delaware, including obtaining a wrongful execution of judgment and unlawfully obtaining Plaintiff's property in Delaware.

## FACTS

### The Sale of Shellco's Business and Assets to Plaintiff

10.     Defendants formerly operated a business known as "Bakblade," which operated in the back shaving and personal care category with sales primarily generated through the Amazon Marketplace.

11.     In October 2022, Shellco, a company incorporated in the United Kingdom and operating there under the name of Bakblade Limited, acquired the Bakblade business and assets from Defendants, including the trademarks, patents, and website domains concerning that business.

12.     The consideration paid for this acquisition consisted of a cash lump sum plus certain deferred consideration.

13.     The acquisition was funded through borrowing, including from a lender called Denali European Opportunities DAC, which obtained a guaranty of the debt from Shellco.

14.     Shellco's parent company and their businesses subsequently encountered financial difficulties, as a result of which the asset purchase agreement with Defendants was amended to provide that the remaining amounts due would be paid by Shellco in $1 million installments in each of 2025, 2026, 2027, and 2028.

15.     However, matters did not improve, and in or about August 2024 Denali European Opportunities DAC called in its debts.  Shellco, as a guarantor of those debts, was unable to repay them.

16.     In September 2024, the directors of Shellco resigned and an interim director, Ran Oren, was appointed with a remit to seek a settlement with Defendants of the amounts still owed to them.

3

17.     On September 26, 2024, Oren emailed Mr. Dryfhout, explaining the financial distress of Shellco and offering to pay £185,000 to Defendants in full settlement of the amounts owed to them.

18.     In that same email, Oren warned that Shellco was likely to go into administration in the United Kingdom unless it could reach a settlement with Defendants (in which event Defendants were likely to recover a lesser amount during the administration).

19.     Oren also advised Mr. Dryfhout that proposed administrators had been identified and had appointed an agent to commence marketing Shellco's assets for sale.  Oren offered to introduce Mr. Dryfhout to the proposed administrators and invited him to participate in the sale process and advise whether he wanted to purchase Shellco's assets.

20.     Oren then provided Mr. Dryfhout with contact information for James Hopkirk ("Hopkirk"), one of the proposed administrators, and arranged a call between Mr. Dryfhout and Hopkirk.

21.     Administration is a procedure under the insolvency laws of the United Kingdom, similar to the bankruptcy process in the United States.

22.     Defendants did not accept Oren's settlement offer.

23.     In or about September 2024, Andrew Tate ("Tate"), an insolvency expert at Kreston Reeves, an accounting firm, began advising Shellco with respect to its financial difficulties and the courses of action open to it should Defendants not accept a settlement of their claims.

24.     Once it became apparent that Shellco would have to go into administration due to its financial state, Tate recommended the company engage in a "Pre-Pack Sale" (pre-packaged) of Shellco's business and assets, which would provide a better outcome for creditors than other options available to Shellco, such as a liquidation of the company.

25.     Hilco Valuation Services ("Hilco') was retained to value the assets of the company. Examining the sale of Shellco as a going concern, Hilco valued it at £1,000,000-£1,075,000.

26.     Hilco was then retained to market Shellco's business and assets for sale, including to Hilco's database of general purchasers of distressed businesses, comprising 385 parties.

27.     Defendants were provided with the marketing material issued by Hilco and were given the opportunity to make an offer for Shellco's business and assets.

28.     The marketing process began September 26, 2024, and a deadline of October 11, 2024, was set for interested parties submit offers.

29.     Thirteen expressions of interest were received in response to the marketing effort.

30.     Ultimately, three parties made offers.

31.     Defendants did not submit an offer to purchase Shellco's business and assets.

32.     Two of the offers made were low, but Plaintiff, the successful bidder, offered £1,300,000,[1] an amount greater than the Hilco valuation, to purchase Shellco's business and assets. The offer included £999,995 specifically to purchase Shellco's intellectual property.

33.     As Plaintiff shared a common parent with Shellco, it was deemed a "connected party" under UK law and was required to obtain a "Qualifying Report" from an independent person known as an evaluator, who must provide an opinion as to whether the proposed transaction is reasonable under the circumstances.

34.     An appropriate Qualifying Report was obtained from J9 Advisory Limited on October 24, 2024, which concluded that the proposed transaction was reasonable under the circumstances.

35.     On October 23, 2024, Shellco changed its name from Bakblade Limited to Shellco.

---

[1] In or about October 24, 2024, this was equivalent to approximately $1,685,000.

36.    On October 24, 2024, Tate and Hopkirk were appointed as administrators of Shellco.

37.    Shellco then entered into a Sale and Purchase Agreement ("SPA") with Plaintiff under which all of Shellco's assets were sold to Plaintiff, including Shellco's intellectual property—trademarks, patents, copyrights, website domains, and other intellectual property.

38.    Certain trademarks, patents, and website domains were specifically identified in the Schedules to the SPA, although the SPA also provided that all trademarks, patents, and website domains of Shellco were being sold to Plaintiff even if not referred to in the Schedules.

39.    Copies of the Schedules to the SPA are attached as Exhibit A.

40.    The sale of Shellco's business and assets, including its intellectual property, to Plaintiff closed on or about October 24, 2024.

41.    On October 30, 2024, Tate and Hopkirk wrote a letter to all creditors, including Defendants, advising them of their appointment as Shellco's administrator on October 24 and also advising them of the pre-pack sale of Shellco's business and assets to Plaintiff shortly after Tate and Hopkirk were appointed.  A copy of the October 30 letter is attached as Exhibit B.

42.    Tate and Hopkirk also provided Shellco's creditors on October 30 with their Joint Administrators Proposals and a "Statement of Insolvency Practice 16 Pre-packaged Sales in Administrations" (referred to as "SIP16"), a full disclosure of all events and considerations pertaining to the decision to conduct the pre-pack sale of Shellco's business and assets.  Copies of the Joint Administrators Proposals and SIP16 are attached as Exhibit C.

Defendants' Lawsuit Against Shellco

43.     On October 23, 2024, Defendants commenced an action in this Court against Shellco, entitled, *Dryfhout Enterprises, LLC et al v. Shellco 2021 Limited*, Case 1:24-cv-01184-RGA (the "2024 Suit").

44.     By October 23, Defendants were already aware that Shellco was engaged in the sale of its business and assets and had solicited offers to purchase them.

45.     Defendants knew they had declined to bid on the purchase of Shellco's business and assets.

46.     Defendants were well aware of Shellco's progress toward completing that sale, as exemplified by the fact that Defendants knew Shellco had changed its name even though that had only occurred on the very date the 2024 Suit was filed.

47.     Following the commencement of the lawsuit, Defendants communicated with Hopkirk and acknowledged in writing that Shellco's assets had been purchased by Plaintiff.

48.     On February 4, 2025, a default judgment was entered against Shellco in the 2024 Suit, awarding Defendants $4,263,143.97.

49.     On May 6, 2025, Defendants filed an application in the 2024 Suit for a writ of execution against certain assets Defendants claimed belonged to Shellco, namely, certain trademarks, patents, and website domains identified therein (the "Trademarks, Patents, and Website Domains").  A copy of this application is attached as Exhibit D.

50.     This claim was false.

51.     The Trademarks, Patents, and Website Domains that Defendants told this Court belonged to Shellco actually belonged to Plaintiff, which had purchased them on or about October 24, 2024.

52.    Defendants knew that Plaintiff had purchased Shellco's business and assets, including the Trademarks, Patents, and Website Domains, because Shellco's administrators informed Defendants of that sale on October 30, 2024.

53.    Defendants have admitted in writing that they knew Plaintiff had purchased Shellco's business and assets.

54.    Consequently, Defendants knew that Shellco did not own any of the assets for which they sought a writ of execution on May 6, 2025, and concealed this information from the Court.

55.    Defendants did not give Plaintiff notice of the proposed writ of execution to seize the Trademarks, Patents, and Website Domains belonging to Plaintiff.

56.    On May 21, 2025, the Court issued the writ of execution based on Defendants' false representations.  A copy of the writ of execution is attached as Exhibit E.

57.    Defendants did not give Plaintiff notice that a writ of execution had been issued to seize the Trademarks, Patents, and Website Domains belonging to Plaintiff.

58.    The writ of execution directed the U.S. Marshals Service to seize and sell the Trademarks, Patents, and Website Domains.

59.    The U.S. Marshals Service subsequently filed a report in the 2024 Suit, advising that it had seized "Property Held by Defendant, [Shellco]" and identified the Trademarks, Patents, and Website Domains as the seized property.  A copy of the report from the Marshals Service is attached as Exhibit F.

60.    On July 22, 2025, the U.S. Marshals Service conducted an ostensible sale of the Trademarks, Patents, and Website Domains, under the false assertion that this was property of

Shellco. A copy of the bill of sale filed by the U.S. Marshals Service in the 2024 Suit is attached as Exhibit G.

61.     Dryfhout Properties was the high bidder, with a bid of $100,000, and purported to purchase the Trademarks, Patents, and Website Domains, even though Defendants knew none of that property belonged to Shellco or could be seized or sold pursuant to an execution of judgment against Shellco.

62.     On July 29, 2025, Defendants recorded trademark assignments with the United States Patent and Trademark Office ("USPTO"), dated July 25, 2025, assigning to themselves the 27 trademarks and trademark applications identified in the writ of execution and bill of sale, and then, by way of a further assignment, to Dryfhout Properties alone.

63.     Due to the exigencies of operating the larger group of businesses of which Plaintiff forms one part, as of July 29, 2025, Plaintiff had not yet recorded assignments for all the intellectual property it had purchased from Shellco.

64.     But Defendants recorded assignments from Shellco regardless of the actual state of the trademarks at issue.

65.     For example, on July 5, 2025, Plaintiff recorded an assignment of the BAKBLADE trademark, Registration No. 4381008, from Shellco to Plaintiff.

66.     But on July 29, 2025, despite the existence of Plaintiff's assignment, Defendants recorded an assignment from Shellco to Defendants.

67.     Defendants similarly recorded assignments from Shellco to Defendants on July 29, 2025, for seven other trademarks (DRYGLIDE, Registration No. 4876804; WE'VE GOT YOUR BAK, Registration No. 4968684; BODBLADE, Registration No. 5969146; BAKBLADE GROOMING CO., Registration No. 6188545; , Registration No. 6130422; , Registration

No. 6334918; BODBARBER, Registration No. 6495368)_despite the fact that Plaintiff had recorded an assignment of those trademarks from Shellco to Plaintiff on July 5, 2025.

68.    On July 29, 2025, Defendants also recorded patent assignments with the United States Patent and Trademark Office ("USPTO"), dated July 25, 2025, assigning to themselves the 18 patents identified in the writ of execution and bill of sale to themselves, and then, by way of a further assignment, to Dryfhout Properties alone.

69.    Defendants' actions are deeply concerning to Plaintiff.

70.    Defendants have unlawfully obtained an order from this Court and used the U.S. Marshals Service to unlawfully seize the Trademarks, Patents, and Website Domains from Plaintiff under the false claim that those properties belonged to Shellco.

71.    Defendants' actions were knowing and intentional, and they could only have been taken for the purpose of injuring Plaintiff, either in general or as a shocking stratagem to collect on their judgment against Shellco by forcing Plaintiff to pay a ransom for the release of its property.

72.    The property seized unlawfully by Defendants is of substantial importance to Plaintiff's business.

73.    Plaintiff sells the Bakblade business products primarily through the Amazon Marketplace.

74.    Plaintiff's intellectual property is integral to those sales.

75.    Not only is the intellectual property itself highly valuable, but it is how Plaintiff demonstrates to Amazon that it is the lawful owner of the Bakblade business and products.

76.    With control of the Trademarks, Patents, and Website Domains, Defendants can direct Amazon to bar Plaintiff from continuing to sell Bakblade business products on the ground that Plaintiff does not own the intellectual property necessary to list those products on Amazon.

77.    For example, among the trademarks unlawfully seized by Defendants is the BAKBLADE trademark.  With control of that mark, Defendants can bar Plaintiff from selling any Bakblade products.

78.    Plaintiff could not easily restore its business on the Amazon Marketplace if Defendants were to use their leverage over its intellectual property to disable that business, as Amazon would not restore that business until the ownership to that intellectual property was legally determined.

79.    Even a temporary halt in Plaintiff's sales on the Amazon Marketplace would cause it irreparable injury.

80.    Upon information and belief, Amazon is the world's largest online retailer.

81.    The privilege of selling on the Amazon Marketplace is highly advantageous, as Amazon provides third parties such as Plaintiff with exposure to the world marketplace on a scale that no other online retailer can currently provide.

82.    Plaintiff's entire business with respect to the Bakblade products is conducted on the Amazon Marketplace.

83.    With control over the Trademarks, Patents, and Website Domains, Defendants can also interfere with Plaintiff's international intellectual property registrations or attempt to gain control over them.

84.    Defendants can also seek to block Plaintiff from importing goods into this country by registering the patents and trademarks Defendants have unlawfully obtained with U.S. Customs and Border Patrol ("CBP") and requesting that it block foreign goods bearing such patents or trademarks.

## COUNT I
### (Replevin)

85.    Plaintiff restates the allegations set forth in paragraphs 1 through 84 above, as if fully set forth herein.

86.    Plaintiff has title to, and the right of immediate possession of, all the Trademarks, Patents, and Website Domains identified in Defendants' application for a writ of execution in the 2024 Suit.  (The same Trademarks, Patents, and Website Domains are identified in the US Marshals Service's bill of sale.)

87.    The complete list of those Trademarks, Patents, and Website Domains are:

- United States Patent for Back Hair Removal Using Comb and Integrated Blade, Patent No. 8739411 issued 06/03/2014

- United States Patent for Safety Razor with Comb and Integrated Blade and Associated Methods, Patent No. 9718200 issued 08/01/2017

- United States Patent for Method of Using a Back Shaver Handle, Patent No. 10315322 issued 06/11/2019

- United States Patent for Back Shaver Handle, Patent No. D808589 issued 01/23/2018

- United States Patent for Two-Point Discrimination Safety Razor Assembly, Patent No. 9937629 issued 04/10/2018

- United States Patent for Body Shaver with Comb and Blade, Patent No. 10131062 issued 11/20/2018

- United States Patent for Safety Razor with Plurality of Comb and Integrated Blade Groups, Patent No. 10500744 issued 12/10/2019

- United States Patent for Elevated Shaver, Patent No. 10543609 issued 01/28/2020

- United States Patent for Leveled Back Shaver, Patent No. 10493643 issued 12/03/2019

- United States Patent for Back Shaver Cartridge, Patent No. D825852 issued 08/14/2018

- United States Patent for Back Shaver Blade, Patent No. D826474 issued 08/21/2018

- United States Patent for Sponge Flap for Razor, Patent No. 10252431 issued 04/09/2019

- United States Patent for Safety Razor with Comb and Blade, Patent No. 11104018 issued 08/31/2021

- United States Patent for Flexible Back Shaver, Patent No. 11077570 issued 08/03/2021

- United States Patent for Wide Shaver Handle, Patent No. D917097 issued 04/20/2021

- United States Patent for Backshaver Brush, Patent No. D946285 issued 03/22/2022

- United States Patent for Backshaver Handle, Patent No. D1004289 issued 03/11/2025 (this was noted as Application No. 29792323 in the writ of execution but it has been issued)

- United States Patent for Safety Razor with Comb and Blade, Patent No. 12280512 issued 04/25/2025 (this was noted as Application No. 17444281 in the writ of execution but it has been issued)

- United States Trademark for "ARE YOU A HAIRY APE?," Registration # 5,123,061 and all associated goodwill represented thereby

- United States Trademark for "BAKBLADE," Registration # 4381008 and all associated goodwill represented thereby

- United States Trademark for "DON'T BE THE EIGHT HUNDRED POUND GORILLA IN THE ROOM," Registration # 4,712,609 and all associated goodwill represented thereby

- United States Trademark for "DON'T PAY FOR PAIN," Registration # 4,868,445 and all associated goodwill represented thereby

- United States Trademark for "DRYGLIDE," Registration # 4,876,804 and all associated goodwill represented thereby

- United States Trademark for "ESCAPE YOUR APE," Registration # 4,868,219 and all associated goodwill represented thereby

- United States Trademark for "GET THE MONKEY OFF YOUR BACK," Registration # 5,104,564 and all associated goodwill represented thereby

- United States Trademark for Registration # 5,105,129 and all associated goodwill represented thereby

- United States Trademark for "PUT THE 'MAN' BACK IN 'MANSCAPING'," Registration # 4,875,196 and all associated goodwill represented thereby

- United States Trademark for "WE'VE GOT YOUR BAK," Registration # 4,968,684 and all associated goodwill represented thereby

- United States Trademark for Registration # 5,385,369 and all associated goodwill represented thereby

- United States Trademark for "BAKBLADE," Registration # 5,496,847 and all associated goodwill represented thereby

- United States Trademark for "BACK HAIR SUCKS, OUR BLADES DON'T," Registration # 5,645,404 and all associated goodwill represented thereby

- United States Trademark for Registration # 5,667,614 and all associated goodwill represented thereby

- United States Trademark for "BODBLADE," Registration # 5,969,146 and all associated goodwill represented thereby

- United States Trademark for "DIY," Registration # 6,071,478 and all associated goodwill represented thereby

- United States Trademark for "BAKBLADE GROOMING CO," Registration # 6,188,545 and all associated goodwill represented thereby

- United States Trademark for "MICROTEETH," Registration # 6,465,471 and all associated goodwill represented thereby

- United States Trademark for Registration # 6130422 and all associated goodwill represented thereby

- United States Trademark for Registration # 6,334,918 and all associated goodwill represented thereby

- United States Trademark for "GROIN GROOMER," Registration # 6,436,199 and all associated goodwill represented thereby

- United States Trademark for "PROVEN UNIVERSITY," Application Serial # 90/168,780 and all associated goodwill represented thereby

- United States Trademark for "BODBARBER," Registration # 6,495,368 and all associated goodwill represented thereby

- United States Trademark for "BALDBARBER," Application Serial # 90/486,867 and all associated goodwill represented thereby

- United States Trademark for "BAKBLADE BODY GROOMING," Registration # 6,589,364 and all associated goodwill represented thereby

- United States Trademark for "PAWFULLY GOOD," Application Serial # 90/554,560 and all associated goodwill represented thereby

- United States Trademark for "BODFRESH," Application Serial # 90/629,585 and all associated goodwill represented thereby

- United States Trademark for "DON'T BE THAT GUY," Registration # 4,712,610 and all associated goodwill represented thereby

- United States Trademark for "STOP PAYING FOR PAIN," Registration # 4,726,678 and all associated goodwill represented thereby

- United States Trademark for "TAKE BAK YOUR BACK," Registration # 4,968,774 and all associated goodwill represented thereby

- United States Trademark for "THE ULTIMATE CURE FOR MANFUR," Registration # 4,868,293 and all associated goodwill represented thereby

- United States Trademark for "FRESH SAK," Application Serial # 88/285,929 and all associated goodwill represented thereby

- United States Trademark for "WE'VE GOT YOUR BAK, BOD & BOYS," Application Serial # 90/460,992 and all associated goodwill represented thereby

- United States Trademark for "NO-NICK," Application Serial # 90/511,066 and all associated goodwill represented thereby

- United States Trademark for "WORLD'S BEST BOSS," Application Serial # 90/750406 and all associated goodwill represented thereby

- United States Trademark for "RYAN STARTED THE FIRE," Application Serial # 90/750982 and all associated goodwill represented thereby

- The following GoDaddy.com domain names:

  - backblade.com

  - backblade.org

  - backshaverclub.com

  - bak-blade.com

- bakblade.at

- bakblade.bz

- bakblade.ca

- bakblade.co.in

- bakblade.eo.nz

- bakblade.co.uk

- bakblade.com

- bakblade.com.br

- bakblade.com.br

- bakblade.com.co

- bakblade.cz

- bakblade.es

- bakblade.in

- bakblade.info

- bakblade.it

- bakblade.mx

- bakblade.net

- bakblade.net.in

- bakblade.org

- bakblade.se

- bakblade.tv

- bakblade.es

- bakbladeamericas.com

- bakbladegrooming.ca

- bakbladegrooming.com

- bakbladegrooming.mx

- bakbladegrooming.net

- bakbladegrooming.org

- bakbladegroominaco.com

- bakbladegroorningco.info

- bakbladegroomingco.net

- Bakbladegroomingco.org

- bakbladeproducts.com

- bakbladeproducts.net

- bakbladeproducts.org

- bakbladepromo.com

- bakbladerazor.com

- bakblades.com

- bakbladeshaver.com

- bakbladeshop.com

- bakbladespecialoffer.com

- bakbladestore.com

- bakbladetvoffer.com

- bakrazor.com

- bakshaver.com

- bakshaverclub.com

- baktrimmer.com

- baldblade.com

- baldblade.net

- baldblade.org

- ball-barber.com

- ballbarber.net

- bodbarber.ca

- bodbarber.com

- bodbarber.info

- bodbarber.net

- bodbarber.org

- bodblade.com

- bodblade.info

- bodblade.net

- bodblade.org

- bodfresh.com

- bodfresh.net

- bodfresh.org

- bodrazor.com

- bodrazor.info

- bodrazor.net

- bodrazor.org

- bodshaver.com

- bodshaver.info

- bodshaver.net

- bodshaver.org

- cabakblade.com

- getballbarber.com

- liberatugotila.com

88.    Defendants have unlawfully taken the Trademarks, Patents, and Website Domains by falsely claiming to the Court on May 6, 2025, that the said Trademarks, Patents, and Website Domains were the property of Shellco, and thereafter repeating that false claim to the U.S. Marshals Service.

89.    Defendants knew this claim was false.

90.    Defendants knew Plaintiff had purchased the Trademarks, Patents, and Website Domains from Shellco on or about October 24, 2024.

91.    Defendants knowingly made their false claim to the Court and the U.S. Marshals Service for the purpose of unlawfully depriving Plaintiff of its property.

92.    Defendants have no ownership or possessory right to the Trademarks, Patents, and Website Domains and have unlawfully withheld them from Plaintiff.

93.    Defendants have wrongfully retained the Trademarks, Patents, and Website Domains.

94.    Money damages are not a substitute for the Trademarks, Patents, and Website Domains, which are unique items of property that are integral to the functioning of Plaintiff's business.

95.     Plaintiff would suffer irreparable harm if the Trademarks, Patents, and Website Domains are not returned to it.

96.     As a result of the foregoing, Plaintiff is entitled to the return of the Trademarks, Patents, and Website Domains.

97.     The value of the Trademarks, Patents, and Website Domains is at least £999,995, an amount well in excess of $75,000.

98.     As a direct and proximate result of the foregoing, Plaintiff has been damaged by Defendants' misconduct in unlawfully depriving Plaintiff of its property, in an amount to be determined at trial.

99.     By reason of the foregoing, Plaintiff is entitled to the imposition of a constructive trust on any revenues earned by Defendants through their sale or use of the Trademarks, Patents, and Website Domains, in an amount to be determined at trial.

## COUNT II
(Conversion)

100.    Plaintiff restates the allegations set forth in paragraphs 1 through 99 above, as if fully set forth herein.

101.    Plaintiff asserts this conversion claim as an alternate to replevin, in the event that Defendants have disposed of the Trademarks, Patents, and Website Domains and cannot return them to Plaintiff.

102.    Plaintiff has a property interest in the Trademarks, Patents, and Website Domains.

103.    Plaintiff purchased the Trademarks, Patents, and Website Domains from Shellco.

104.    Plaintiff have title and a right to possession of the Trademarks, Patents, and Website Domains.

105.    Defendants have unlawfully gained possession of the Trademarks, Patents, and Website Domains under the knowingly false pretense that they were the property of Shellco.

106.    Defendants have no lawful right to possession of the Trademarks, Patents, and Website Domains.

107.    Defendants are wrongfully in possession of Plaintiff's Trademarks, Patents, and Website Domains and have exercised dominion and control over said property in derogation of Plaintiff's rights.

108.    Defendants' wrongful acts and unlawful retention of the Trademarks, Patents, and Website Domains constitute unlawful conversion of Plaintiff's property.

109.    As a direct and proximate result of the foregoing, Plaintiff has been damaged by Defendants' unlawful conversion of Plaintiff's property, in an amount to be determined at trial but no less than £999,995.

110.    In addition, Defendants' actions are wanton, intentional, and willful and therefore warrant the imposition of punitive damages in an amount to be determined at trial.

111.    By reason of the foregoing, Plaintiff is entitled to the imposition of a constructive trust on any revenues earned by Defendants through their sale or use of the Trademarks, Patents, and Website Domains, in an amount to be determined at trial.

## COUNT III
(Declaratory Judgment)

112.    Plaintiff restates the allegations set forth in paragraphs 1 through 111 above, as if fully set forth herein.

113.    There is an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

114.     Defendants have asserted that the Trademarks, Patents, and Website Domains are properties that may be executed on to enforce a judgment against Shellco, including by applying for and obtaining a writ of execution from this Court to seize the Trademarks, Patents, and Website Domains, and then using the U.S. Marshals Service to seize those properties.

115.     Defendants have also asserted they have a right to file liens against the Trademarks, Patents, and Website Domains, and in fact have filed liens against those trademarks and trademark applications with the USPTO in February 2025, burdening Plaintiff's rights.

116.     Defendants have recorded assignments to themselves of the trademarks, trademark applications, patents included in the Trademarks, Patents, and Website Domains with the USPTO.

117.     Defendants' assertions are without basis, as Shellco did not own the Trademarks, Patents, and Website Domains when Defendants sought to enforce their judgment against Shellco by seizing those assets.  Plaintiff owns the Trademarks, Patents, and Website Domains.  Plaintiff purchased the Trademarks, Patents, and Website Domains from Shellco on or about October 24, 2024, and currently still own them.  Defendants know that Plaintiff purchased the Trademarks, Patents, and Website Domains and that Shellco did not own any of those properties after Plaintiff's purchase.

118.     Defendants knew that Shellco did not own the Trademarks, Patents, and Website Domains, and that Plaintiff now owned them, when Defendants moved for a judgment against Shellco in December 2024 and obtained that judgment in February 2025.

119.     Defendants also knew that Shellco did not own the Trademarks, Patents, and Website Domains, and that Plaintiff now owned them,  when Defendants filed liens against those trademarks and trademark applications in February 2025.

120.     Defendants also knew when they applied for and obtained a writ of execution from this Court in May 2025 that Shellco did not own the Trademarks, Patents, and Website Domains, and that Plaintiff now owned them, as well as when they subsequently used the U.S. Marshals Service to seize those properties.

121.     Based on the foregoing, a justiciable controversy exists between Plaintiff and Defendants as to whether Plaintiff owns the Trademarks, Patents, and Website Domains, and whether Defendants may file liens or take other actions against Plaintiff's property to enforce a judgment against Shellco.

122.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Plaintiff owns the Trademarks, Patents, and Website Domains and that Defendants cannot file liens or take other actions against those Trademarks, Patents, and Website Domains to enforce a judgment against Shellco, and that any such actions taken are null and void and of no effect.

123.     By reason of the foregoing, Plaintiff needs and is entitled to a judicial declaration that Plaintiff owns the Trademarks, Patents, and Website Domains and that Defendants cannot file liens against those Trademarks, Patents, and Website Domains to enforce a judgment against Shellco, and that any such actions taken are null and void and of no effect.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a jury trial of all issues triable to a jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants, granting the following relief:

1. On the First Cause of Action, declaring: (i) Plaintiff to be the sole and rightful owner of the Trademarks, Patents, and Website Domains and that it has the right to possess the Property; (ii) that the Trademarks, Patents, and Website Domains be returned to Plaintiff; (iii) all damages in connection with Defendants' wrongful retention of the Trademarks, Patents, and Website Domains, in an amount to be determined at trial;

2. On the Second Cause of Action, awarding compensatory damages in an amount to be determined at trial, but in no event less than £999,995 in actual and consequential damages, plus punitive damages in an amount sufficient to punish Defendants and to discourage, by example, others in a situation similar to that of Defendants from engaging in the conduct complained of herein;

3. Imposing a constructive trust on any revenues earned by Defendants through their sale or use of the Trademarks, Patents, and Website Domains, in an amount to be determined at trial.

4. Declaring that Plaintiff is the owner of the Trademarks, Patents, and Website Domains.

5. Declaring that Defendants may not enforce their judgment against Shellco by taking action against the Trademarks, Patents, and Website Domain, or any other properties owned by Plaintiff, including by filing liens against said properties.

6. Declaring that any actions taken by Defendants to date against the Trademarks, Patents, and Website Domain, or any other properties owned by Plaintiff, including by filing liens against said properties, are null and void and of no effect.

7. Awarding Plaintiff its attorney's fees, costs, and disbursements to the extent permitted by law;

8. Awarding pre- and post-judgment interest at the maximum rate allowed by law; and

9.   Granting such other and further relief as the Court deems just and proper.

Dated: August 20, 2025

OF COUNSEL:

_/s/ Kenneth L. Dorsney_

Joel H. Rosner                                    Kenneth L. Dorsney (#3726)
*Pro Hac Vice Application Forthcoming*            Cortlan S. Hitch (#6720)
TARTER KRINSKY & DROGIN LLP                       MORRIS JAMES LLP
1350 Broadway                                     500 Delaware Avenue, Suite 1500
New York, New York 10018                          Wilmington, Delaware 19801
Tel. (212) 216-8000                               (302) 888-6800
jrosner@tarterkrinsky.com                         kdorsney@morrisjames.com
                                                  chitch@morrisjames.com

                                                  *Attorneys for Plaintiff*
                                                  *Personal Grooming Co Limited*