**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| PERSONAL GROOMING CO LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 25-1047-RGA |
| v. | ) | |
| | ) | |
| DRYFHOUT ENTERPRISES, LLC, | ) | |
| DRYFHOUT PROPERTIES, LLC, | ) | |
| MATTHEW DRYFHOUT, and | ) | |
| ANGELINA DRYFHOUT | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendants Dryfhout Enterprises, LLC, Dryfhout Properties, LLC, Matthew Dryfhout ("M. Dryfhout"), and Angelina Dryfhout ("A. Dryfhout") (all defendants are collectively referred to herein as "Defendants") file this Answer to Plaintiff Personal Grooming Co Limited's ("Personal Grooming" or "Plaintiff") Complaint. Defendants deny all allegations in Plaintiff's Complaint unless expressly admitted. Any admissions herein are for purposed of this matter only. Defendants also reserve the right to take further positions and raise additional defenses and counterclaims that may become apparent because of additional information discovered subsequent to filing this Answer.

## NATURE OF ACTION

1.     This is an action for replevin of properties that Defendants wrongfully took from Plaintiff under the knowingly false pretense that the properties, consisting of 36 trademarks, 18 patents, and 79 website domains, belonged to Shellco 2021 Limited f/k/a Bakblade Limited ("Shellco"), a judgment debtor of Defendants. Defendants knew that Plaintiff owned the properties yet nevertheless falsely applied to this Court for a writ of execution, obtained that writ, and then arranged for the fraudulent "sale" of those properties to Defendants. Plaintiff also seeks declaratory relief establishing that it is the owner of the seized properties and that Defendants' liens asserted against those properties are invalid and unenforceable.

**ANSWER**        Defendants admit that Plaintiff's Complaint purports to bring an action for replevin and declaratory relief to establish that Plaintiff "is the owner of the seized properties and that Defendants' liens asserted against those properties are invalid and unenforceable," which Defendants deny. Defendants deny that they "wrongfully took from Plaintiff under the knowingly false pretense that the properties, consisting of 36 trademarks, 18 patents, and 79 website domains, belonged to Shellco 2021 Limited f/k/a Bakblade Limited ("Shellco")." Defendants admit that Shellco is a judgment debtor of Defendants. Defendants deny that "they knew that Plaintiff owned the properties yet nevertheless falsely applied to this Court for a writ of execution, obtained that writ, and then arranged for the fraudulent 'sale' of those properties to Defendants." The remaining allegations of Paragraph 1 contain conclusions of law for which no response is required. To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 1.

## THE PARTIES

2.        Plaintiff is a private limited company incorporated and registered in England and Wales with company number 13679662 whose registered office is at 124 City Road, London, Greater London, England, EC1V 2NX.

**ANSWER**        Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 and therefore deny them.

3.        Dryfhout Enterprises is an Illinois limited liability company with a principal place of business at 25 Colonel Winstead Drive, Brentwood, Tennessee.

**ANSWER**        Defendants admit the allegations of Paragraph 3.

4.        Dryfhout Properties is an Illinois limited liability company with a principal place of business at 25 Colonel Winstead Drive, Brentwood, Tennessee.

**ANSWER**        Defendants admit the allegations of Paragraph 4.

5.        Mr. Dryfhout is an individual domiciled in Tennessee, residing at 25 Colonel Winstead Drive, Brentwood, Tennessee.

**ANSWER**   Defendants admit the allegations of Paragraph 5.

6.   Ms. Dryfhout is an individual domiciled in Tennessee, residing at 25 Colonel Winstead Drive, Brentwood, Tennessee.

**ANSWER**   Defendants admit the allegations of Paragraph 6.

7.   Mr. Dryfhout and Ms. Dryfhout are the sole members of both Dryfhout Enterprises and Dryfhout Properties.

**ANSWER**   Defendants admit the allegations of Paragraph 7.

## JURISDICTION AND VENUE

8.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), in that this is a civil action between Plaintiff, an alien citizen of England and Wales, and Defendants, citizens of Tennessee, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER**   Paragraph 8 contains conclusions of law for which no response is required.

To the extent that a response is required, Defendants do not object to this Court's subject matter

jurisdiction over Plaintiff's claims.

9.   This Court has personal jurisdiction over the Defendants under 10 Del. § 3104, and venue in this District is proper, because the claims arise out of Defendants' tortious conduct in Delaware, including obtaining a wrongful execution of judgment and unlawfully obtaining Plaintiff's property in Delaware.

**ANSWER**   Paragraph 9 contains conclusions of law for which no response is required.

To the extent that a response is required, Defendants do not object to this Court's personal

jurisdiction over Defendants.

## FACTS

### The Sale of Shellco's Business and Assets to Plaintiff

10.   Defendants formerly operated a business known as "Bakblade," which operated in the back shaving and personal care category with sales primarily generated through the Amazon Marketplace.

**ANSWER**    Defendants admit that they operated a business that sold BAKBLADE-branded products, including back shavers and blade refills. To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 10.

11.    In October 2022, Shellco, a company incorporated in the United Kingdom and operating there under the name of Bakblade Limited, acquired the Bakblade business and assets from Defendants, including the trademarks, patents, and website domains concerning that business.

**ANSWER**    On October 28, 2022, Defendants and Bakblade Limited entered into an Asset Purchase Agreement ("APA"), whereby Defendants agreed to sell certain business assets to Bakblade limited. The assets included certain trademark, patents, and website domains. To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 11.

12.    The consideration paid for this acquisition consisted of a cash lump sum plus certain deferred consideration.

**ANSWER**    Defendants admit that pursuant to Section 1.04 of the APA, Bakblade agreed to pay a "Purchase Price" comprised of, *inter alia*, an immediate "Upfront Payment" as well as certain "Deferred Consideration" payments to be paid in installments over time (the "Deferred Payments"). To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 12.

13.    The acquisition was funded through borrowing, including from a lender called Denali European Opportunities DAC, which obtained a guaranty of the debt from Shellco.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 and therefore deny them.

14.    Shellco's parent company and their businesses subsequently encountered financial difficulties, as a result of which the asset purchase agreement with Defendants was amended to provide that the remaining amounts due would be paid by Shellco in $1 million installments in each of 2025, 2026, 2027, and 2028.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 14 and therefore denies it.

4

Defendants admit that in 2023, a disagreement arose between Defendants and Bakblade Limited regarding, among other things, the payment of the Deferred Payments by Bakblade under the APA. As a resolution, the parties entered into a First Amendment to Asset Purchase Agreement on October 13, 2023 (the "APA Amendment"). Pursuant to the APA Amendment, the Parties agreed, among other things, to amend the APA relating to Bakblade's obligations to pay the Deferred Payments. Defendants admit pursuant to Section 3 of the APA Amendment, the Parties agreed that the APA would be amended to require Bakblade to pay Deferred Payments in four annual installments totaling $4 million dollars, with $1 million to be paid on each January 1st of years 2025, 2026, 2027, and 2028.

15.     However, matters did not improve, and in or about August 2024 Denali European Opportunities DAC called in its debts. Shellco, as a guarantor of those debts, was unable to repay them.

**ANSWER**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 and therefore deny them.

16.     In September 2024, the directors of Shellco resigned and an interim director, Ran Oren, was appointed with a remit to seek a settlement with Defendants of the amounts still owed to them.

**ANSWER**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 and therefore deny them.

17.     On September 26, 2024, Oren emailed Mr. Dryfhout, explaining the financial distress of Shellco and offering to pay £185,000 to Defendants in full settlement of the amounts owed to them.

**ANSWER**     Defendants admit the allegations of Paragraph 17.

18.     In that same email, Oren warned that Shellco was likely to go into administration in the United Kingdom unless it could reach a settlement with Defendants (in which event Defendants were likely to recover a lesser amount during the administration).

**ANSWER**     Defendants admit the allegations of Paragraph 18.

19.     Oren also advised Mr. Dryfhout that proposed administrators had been identified and had appointed an agent to commence marketing Shellco's assets for sale. Oren offered to introduce Mr. Dryfhout to the proposed administrators and invited him to participate in the sale process and advise whether he wanted to purchase Shellco's assets.

**ANSWER**     Defendants deny that Oren also advised Mr. Dryfhout that proposed administrators had been identified and had appointed an agent to commence marketing Shellco's assets for sale and that Oren offered to introduce Mr. Dryfhout to the proposed administrators and invited him to participate in the sale process and advise whether he wanted to purchase Shellco's assets.

20.     Oren then provided Mr. Dryfhout with contact information for James Hopkirk ("Hopkirk"), one of the proposed administrators, and arranged a call between Mr. Dryfhout and Hopkirk.

**ANSWER**     Defendants deny that Oren then provided Mr. Dryfhout with contact information for James Hopkirk ("Hopkirk"), one of the proposed administrators, and arranged a call between Mr. Dryfhout and Hopkirk.

21.     Administration is a procedure under the insolvency laws of the United Kingdom, similar to the bankruptcy process in the United States.

**ANSWER**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21 and therefore denies them.

22.     Defendants did not accept Oren's settlement offer.

**ANSWER**     Defendants do not have sufficient information to form a belief as to the of the allegations of Paragraph 22 based on the way that it is written and therefore deny them.

23.     In or about September 2024, Andrew Tate ("Tate"), an insolvency expert at Kreston Reeves, an accounting firm, began advising Shellco with respect to its financial difficulties and the courses of action open to it should Defendants not accept a settlement of their claims.

**ANSWER**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 and therefore deny them.

24.     Once it became apparent that Shellco would have to go into administration due to its financial state, Tate recommended the company engage in a "Pre-Pack Sale" (pre-packaged) of Shellco's business and assets, which would provide a better outcome for creditors than other options available to Shellco, such as a liquidation of the company.

**ANSWER**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 and therefore deny them.

25.     Hilco Valuation Services ("Hilco") was retained to value the assets of the company. Examining the sale of Shellco as a going concern, Hilco valued it at £1,000,000-£1,075,000.

**ANSWER**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25 and therefore deny them.

26.     Hilco was then retained to market Shellco's business and assets for sale, including to Hilco's database of general purchasers of distressed businesses, comprising 385 parties.

**ANSWER**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26 and therefore deny them.

27.     Defendants were provided with the marketing material issued by Hilco and were given the opportunity to make an offer for Shellco's business and assets.

**ANSWER**     Defendants deny that they were provided with the marketing material issued by Hilco and were given the opportunity to make an offer for Shellco's business and assets.

28.     The marketing process began September 26, 2024, and a deadline of October 11, 2024, was set for interested parties submit offers.

**ANSWER**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28 and therefore deny them.

29.     Thirteen expressions of interest were received in response to the marketing effort.

**ANSWER**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29 and therefore deny them.

30.     Ultimately, three parties made offers.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30 and therefore deny them.

31.    Defendants did not submit an offer to purchase Shellco's business and assets.

**ANSWER**    Defendants deny the allegations in Paragraph 31.

32.    Two of the offers made were low, but Plaintiff, the successful bidder, offered £1,300,000,[1] an amount greater than the Hilco valuation, to purchase Shellco's business and assets. The offer included £999,995 specifically to purchase Shellco's intellectual property.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32 and therefore deny them.

33.    As Plaintiff shared a common parent with Shellco, it was deemed a "connected party" under UK law and was required to obtain a "Qualifying Report" from an independent person known as an evaluator, who must provide an opinion as to whether the proposed transaction is reasonable under the circumstances.

**ANSWER**    Defendants admit that Plaintiff shared a common parent with Shellco. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 33 and therefore deny them.

34.    An appropriate Qualifying Report was obtained from J9 Advisory Limited on October 24, 2024, which concluded that the proposed transaction was reasonable under the circumstances.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34 and therefore deny them.

35.    On October 23, 2024, Shellco changed its name from Bakblade Limited to Shellco.

**ANSWER**    Defendants admit that on October 23, 2024, Shellco changed its name from Bakblade Limited to Shellco in the United Kingdom as reflected as CompanyHouse.gov.

36.    On October 24, 2024, Tate and Hopkirk were appointed as administrators of Shellco.

---

[1] In or about October 24, 2024, this was equivalent to approximately $1,685,000.

**ANSWER**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36 and therefore deny them.

37.     Shellco then entered into a Sale and Purchase Agreement ("SPA") with Plaintiff under which all of Shellco's assets were sold to Plaintiff, including Shellco's intellectual property—trademarks, patents, copyrights, website domains, and other intellectual property.

**ANSWER**     Defendants deny that Shellco then entered into a Sale and Purchase Agreement ("SPA") with Plaintiff under which all of Shellco's assets were sold to Plaintiff, including Shellco's intellectual property—trademarks, patents, copyrights, website domains, and other intellectual property.

38.     Certain trademarks, patents, and website domains were specifically identified in the Schedules to the SPA, although the SPA also provided that all trademarks, patents, and website domains of Shellco were being sold to Plaintiff even if not referred to in the Schedules.

**ANSWER**     Defendants admit that certain trademarks, patents, and website domains appear to be identified in the Schedules. Defendants deny the remaining allegations of Paragraph 38.

39.     Copies of the Schedules to the SPA are attached as Exhibit A.

**ANSWER**     Defendants admit that Schedules are attached to the Complaint as Exhibit A.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 39 and therefore deny them.

40.     The sale of Shellco's business and assets, including its intellectual property, to Plaintiff closed on or about October 24, 2024.

**ANSWER**     Defendants deny that sale of Shellco's business and assets, including its intellectual property, to Plaintiff closed on or about October 24, 2024.

41.     On October 30, 2024, Tate and Hopkirk wrote a letter to all creditors, including Defendants, advising them of their appointment as Shellco's administrator on October 24 and also advising them of the pre-pack sale of Shellco's business and assets to Plaintiff shortly after Tate and Hopkirk were appointed. A copy of the October 30 letter is attached as Exhibit B.

**ANSWER**    Defendants admit that on October 30, 2024, it received a copy of the letter that is Exhibit B to the Complaint. The letter states that Tate and Hopkirk were appointed as administrators and that a Plaintiff purchased Shellco's business and assets. No assets were identified in the letter. Defendants further lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 41 and therefore deny them.

42.    Tate and Hopkirk also provided Shellco's creditors on October 30 with their Joint Administrators Proposals and a "Statement of Insolvency Practice 16 Pre-packaged Sales in Administrations" (referred to as "SIP16"), a full disclosure of all events and considerations pertaining to the decision to conduct the pre-pack sale of Shellco's business and assets. Copies of the Joint Administrators Proposals and SIP16 are attached as Exhibit C.

**ANSWER**    Defendants admit that on October 30, 2024, it received a url link to the document described as "SIP16" and that Plaintiff has attached to the Complaint as Exhibit C, a document entitled "Statement of Insolvency Practice 16 Pre-packaged Sales in Administrations." Defendants lack knowledge or information sufficient to form a belief as to the truth of whether these documents are the same.  Defendants further lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 42 and therefore deny them.

Defendants' Lawsuit Against Shellco

43.    On October 23, 2024, Defendants commenced an action in this Court against Shellco, entitled, *Dryfhout Enterprises, LLC et al v. Shellco 2021 Limited*, Case 1:24-cv-01184-RGA (the "2024 Suit").

**ANSWER**    Defendants admit that October 23, 2024, Defendants commenced an action in this Court against Shellco, entitled, *Dryfhout Enterprises, LLC et al v. Shellco 2021 Limited*, Case 1:24-cv-01184-RGA (the "2024 Suit").

44.    By October 23, Defendants were already aware that Shellco was engaged in the sale of its business and assets and had solicited offers to purchase them.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44 and therefore deny them.

45.    Defendants knew they had declined to bid on the purchase of Shellco's business and assets.

**ANSWER**    Defendants deny the allegations of Paragraph 45.

46.    Defendants were well aware of Shellco's progress toward completing that sale, as exemplified by the fact that Defendants knew Shellco had changed its name even though that had only occurred on the very date the 2024 Suit was filed.

**ANSWER**    Defendants deny the allegations of Paragraph 46.

47.    Following the commencement of the lawsuit, Defendants communicated with Hopkirk and acknowledged in writing that Shellco's assets had been purchased by Plaintiff.

**ANSWER**    Defendants admit that they acknowledged they were told the company had been sold.  Defendants deny they agreed with the sale or were ever informed of what assets were allegedly sold by Shellco to Plaintiff.  The documents provided to Defendants on October 30, 2024 do not specify what assets were allegedly sold to Plaintiff. To the extent that a further response is required, Defendants deny the remaining allegations of Paragraph 47.

48.    On February 4, 2025, a default judgment was entered against Shellco in the 2024 Suit, awarding Defendants $4,263,143.97.

**ANSWER**    Defendants admit that on February 4, 2025, a default judgment was entered against Shellco in the 2024 Suit, awarding Defendants $4,263,143.97.

49.    On May 6, 2025, Defendants filed an application in the 2024 Suit for a writ of execution against certain assets Defendants claimed belonged to Shellco, namely, certain trademarks, patents, and website domains identified therein (the "Trademarks, Patents, and Website Domains"). A copy of this application is attached as Exhibit D.

**ANSWER**    Defendants admit that on May 6, 2025, Defendants filed an application in the 2024 Suit for a writ of execution against certain assets that belonged to Shellco, namely, certain trademarks, patents, and website domains identified therein (the "Trademarks, Patents,

and Website Domains"). Defendants admit that a copy of this application is attached as Exhibit D to the Complaint.

50.     This claim was false.

**ANSWER**     Defendants deny the claim was false.

51.     The Trademarks, Patents, and Website Domains that Defendants told this Court belonged to Shellco actually belonged to Plaintiff, which had purchased them on or about October 24, 2024.

**ANSWER**     Defendants deny that the Trademarks, Patents, and Website Domains that Defendants told this Court belonged to Shellco actually belonged to Plaintiff, which had purchased them on or about October 24, 2024.

52.     Defendants knew that Plaintiff had purchased Shellco's business and assets, including the Trademarks, Patents, and Website Domains, because Shellco's administrators informed Defendants of that sale on October 30, 2024.

**ANSWER**     Defendants deny that they knew that Plaintiff had purchased Shellco's business and assets, including the Trademarks, Patents, and Website Domains, because Shellco's administrators informed Defendants of that sale on October 30, 2024.

53.     Defendants have admitted in writing that they knew Plaintiff had purchased Shellco's business and assets.

**ANSWER**     Defendants deny that they have admitted in writing that they knew Plaintiff had purchased Shellco's business and assets.

54.     Consequently, Defendants knew that Shellco did not own any of the assets for which they sought a writ of execution on May 6, 2025, and concealed this information from the Court.

**ANSWER**     Defendants deny that they knew that Shellco did not own any of the assets for which they sought a writ of execution on May 6, 2025, and deny that they concealed this information from the Court.

55.     Defendants did not give Plaintiff notice of the proposed writ of execution to seize the Trademarks, Patents, and Website Domains belonging to Plaintiff.

**ANSWER**    Defendants deny that Plaintiff was entitled to notice of the proposed writ of execution to seize Trademarks, Patents, and Website Domains which were then owned by Bakblade, Ltd.    The writ of execution was served via process server through the Hague Convention on the Administrator, Mr. Hopkirk, the representative of the property owner/party to the lawsuit.    The Defendants deny this allegation as phrased.

56.    On May 21, 2025, the Court issued the writ of execution based on Defendants' false representations. A copy of the writ of execution is attached as Exhibit E.

**ANSWER**    Defendants admit that on May 21, 2025, the Court issued the writ of execution. Defendants admit that a copy of the writ of execution is attached as Exhibit E to the Complaint. Defendants deny that the writ of execution was based on Defendants' false representations.

57.    Defendants did not give Plaintiff notice that a writ of execution had been issued to seize the Trademarks, Patents, and Website Domains belonging to Plaintiff.

**ANSWER**    Defendants deny that Plaintiff was entitled to notice of the proposed writ of execution to seize Trademarks, Patents, and Website Domains which were then owned by Bakblade, Ltd.    The writ of execution was served via process server through the Hague Convention on the Administrator, Mr. Hopkirk, the representative of the property owner/party to the lawsuit.    After the Writ of Execution was issued by the Court, Defendants recorded it at the USPTO. Defendants deny this allegation as phrased.

58.    The writ of execution directed the U.S. Marshals Service to seize and sell the Trademarks, Patents, and Website Domains.

**ANSWER**    Defendants admit that the writ of execution directed the U.S. Marshals Service to seize and sell the Trademarks, Patents, and Website Domains.

59.    The U.S. Marshals Service subsequently filed a report in the 2024 Suit, advising that it had seized "Property Held by Defendant, [Shellco]" and identified the Trademarks, Patents, and Website Domains as the seized property. A copy of the report from the Marshals Service is attached as Exhibit F.

**ANSWER**     Defendants admit that the U.S. Marshals Service subsequently filed a report in the 2024 Suit, advising that it had seized "Property Held by Defendant, [Shellco]" and identified the Trademarks, Patents, and Website Domains as the seized property. Defendants admit that a copy of the report from the Marshals Service is attached as Exhibit F to the Complaint.

60.     On July 22, 2025, the U.S. Marshals Service conducted an ostensible sale of the Trademarks, Patents, and Website Domains, under the false assertion that this was property of Shellco. A copy of the bill of sale filed by the U.S. Marshals Service in the 2024 Suit is attached as Exhibit G.

**ANSWER**     Defendants admit that, on July 22, 2025, the U.S. Marshals Service conducted a sale of the Trademarks, Patents, and Website Domains. Defendants admit that a copy of the bill of sale filed by the U.S. Marshals Service in the 2024 Suit is attached as Exhibit G to the Complaint. Defendants deny that the writ of execution was based on Defendants' false assertion and that the sale was ostensible.

61.     Dryfhout Properties was the high bidder, with a bid of $100,000, and purported to purchase the Trademarks, Patents, and Website Domains, even though Defendants knew none of that property belonged to Shellco or could be seized or sold pursuant to an execution of judgment against Shellco.

**ANSWER**     Defendants admit that Dryfhout Properties was the high bidder, with a bid of $100,000, and purchased the Trademarks, Patents, and Website Domains. Defendants deny that none of the property belonged to Shellco or could be seized or sold pursuant to an execution of judgment against Shellco.

62.     On July 29, 2025, Defendants recorded trademark assignments with the United States Patent and Trademark Office ("USPTO"), dated July 25, 2025, assigning to themselves the 27 trademarks and trademark applications identified in the writ of execution and bill of sale, and then, by way of a further assignment, to Dryfhout Properties alone.

**ANSWER**     Defendants admit that, on July 29, 2025, Defendants recorded trademark assignments with the United States Patent and Trademark Office ("USPTO"), dated July 25,

2025, assigning to themselves the 27 trademarks and trademark applications identified in the writ of execution and bill of sale, and then, by way of a further assignment, to Dryfhout Properties alone.

63.     Due to the exigencies of operating the larger group of businesses of which Plaintiff forms one part, as of July 29, 2025, Plaintiff had not yet recorded assignments for all the intellectual property it had purchased from Shellco.

**ANSWER**     Defendant admits that as of July 29, 2025, Plaintiff did not record assignments to all of the intellectual property that Plaintiff is contending it purchased from Shellco. As to the remaining allegations of this Paragraph, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 63 and therefore deny them.

64.     But Defendants recorded assignments from Shellco regardless of the actual state of the trademarks at issue.

**ANSWER**     Defendants admit that Defendants recorded assignments from Shellco. Defendants deny that Defendants recorded them "regardless of the actual state of the trademarks at issue."

65.     For example, on July 5, 2025, Plaintiff recorded an assignment of the BAKBLADE trademark, Registration No. 4381008, from Shellco to Plaintiff.

**ANSWER**     Defendants admit that on July 5, 2025, Plaintiff recorded an assignment of the BAKBLADE trademark, Registration No. 4381008, from Shellco to Plaintiff, but deny that it had any legal effect and deny that Plaintiff is the owner of the BAKBLADE trademark.

66.     But on July 29, 2025, despite the existence of Plaintiff's assignment, Defendants recorded an assignment from Shellco to Defendants.

**ANSWER**     Defendants admit that, on July 29, 2025, Defendants recorded an assignment from Shellco to Defendants. To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 66.

67. Defendants similarly recorded assignments from Shellco to Defendants on July 29, 2025, for seven other trademarks (DRYGLIDE, Registration No. 4876804; WE'VE GOT YOUR BAK, Registration No. 4968684; BODBLADE, Registration No. 5969146; BAKBLADE GROOMING CO., Registration No. 6188545; , Registration No. 6130422; , Registration No. 6334918; BODBARBER, Registration No. 6495368)_despite the fact that Plaintiff had recorded an assignment of those trademarks from Shellco to Plaintiff on July 5, 2025.

**ANSWER**    Defendants admit that Defendants recorded assignments from Shellco to Defendants on July 29, 2025, for seven other trademarks (DRYGLIDE, Registration No. 4876804; WE'VE GOT YOUR BAK, Registration No. 4968684; BODBLADE, Registration No. 5969146; BAKBLADE GROOMING CO., Registration No. 6188545; , Registration No. 6130422; , Registration No. 6334918; BODBARBER, Registration No. 6495368). To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 67.

68. On July 29, 2025, Defendants also recorded patent assignments with the United States Patent and Trademark Office ("USPTO"), dated July 25, 2025, assigning to themselves the 18 patents identified in the writ of execution and bill of sale to themselves, and then, by way of a further assignment, to Dryfhout Properties alone.

**ANSWER**    Defendants admit that, on July 29, 2025, Defendants also recorded patent assignments with the United States Patent and Trademark Office ("USPTO"), dated July 25, 2025, assigning to themselves the 18 patents identified in the writ of execution and bill of sale to themselves, and then, by way of a further assignment, to Dryfhout Properties alone.

69. Defendants' actions are deeply concerning to Plaintiff.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 69 and therefore deny them.

70.    Defendants have unlawfully obtained an order from this Court and used the U.S. Marshals Service to unlawfully seize the Trademarks, Patents, and Website Domains from Plaintiff under the false claim that those properties belonged to Shellco.

**ANSWER**    Defendants admit that they obtained an order from this Court and used the

U.S. Marshals Service to seize the Trademarks, Patents, and Website Domains from Plaintiff.

Defendants deny that 1) the order was obtained unlawfully, 2) that the Trademarks, Patents, and

Website Domains were unlawfully seized, and 3) claim those properties belonged to Shellco was

false.

71.    Defendants' actions were knowing and intentional, and they could only have been taken for the purpose of injuring Plaintiff, either in general or as a shocking stratagem to collect on their judgment against Shellco by forcing Plaintiff to pay a ransom for the release of its property.

**ANSWER**    Defendants deny that their actions could only have been taken for the

purpose of injuring Plaintiff, either in general or as a shocking stratagem to collect on their

judgment against Shellco by forcing Plaintiff to pay a ransom for the release of its property.

72.    The property seized unlawfully by Defendants is of substantial importance to Plaintiff's business.

**ANSWER**    Defendants deny that the property was seized unlawfully. To the extent a

further response is required, Defendants deny the remaining allegations in Paragraph 72.

73.    Plaintiff sells the Bakblade business products primarily through the Amazon Marketplace.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 73 and therefore deny them.

74.    Plaintiff's intellectual property is integral to those sales.

**ANSWER**    Defendants admit that intellectual property is integral to sales on Amazon

using the intellectual property at issue in this litigation.

75.    Not only is the intellectual property itself highly valuable, but it is how Plaintiff demonstrates to Amazon that it is the lawful owner of the Bakblade business and products.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 75 and therefore deny them.

76.    With control of the Trademarks, Patents, and Website Domains, Defendants can direct Amazon to bar Plaintiff from continuing to sell Bakblade business products on the ground that Plaintiff does not own the intellectual property necessary to list those products on Amazon.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 76 and therefore deny them.

77.    For example, among the trademarks unlawfully seized by Defendants is the BAKBLADE trademark. With control of that mark, Defendants can bar Plaintiff from selling any Bakblade products.

**ANSWER**    Defendants admit that the U.S. Marshall seized the BAKBLADE trademark. Defendants deny that the trademarks were seized unlawfully. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 77 and therefore deny them.

78.    Plaintiff could not easily restore its business on the Amazon Marketplace if Defendants were to use their leverage over its intellectual property to disable that business, as Amazon would not restore that business until the ownership to that intellectual property was legally determined.

**ANSWER**    Plaintiff's allegation is conjecture and does not contain specific facts. Because of the vague, speculative, or conjectural nature of the allegation, the Defendant lacks information sufficient to form a belief as to the truth of the allegations and therefore deny them.

79.    Even a temporary halt in Plaintiff's sales on the Amazon Marketplace would cause it irreparable injury.

**ANSWER**    Defendants deny that Plaintiffs would suffer irreparable injury as the assets subject to the Bill of Sale are owned by Dryfhout Properties.

80.    Upon information and belief, Amazon is the world's largest online retailer.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 80 and therefore deny them.

81.    The privilege of selling on the Amazon Marketplace is highly advantageous, as Amazon provides third parties such as Plaintiff with exposure to the world marketplace on a scale that no other online retailer can currently provide.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81 and therefore deny them.

82.    Plaintiff's entire business with respect to the Bakblade products is conducted on the Amazon Marketplace.

**ANSWER**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 82 and therefore deny them.

83.    With control over the Trademarks, Patents, and Website Domains, Defendants can also interfere with Plaintiff's international intellectual property registrations or attempt to gain control over them.

**ANSWER**    Plaintiff's allegation is conjecture and does not contain specific facts. Because of the vague, speculative, or conjectural nature of the allegation, the Defendant lacks information sufficient to form a belief as to the truth of the allegations and therefore deny them.

84.    Defendants can also seek to block Plaintiff from importing goods into this country by registering the patents and trademarks Defendants have unlawfully obtained with U.S. Customs and Border Patrol ("CBP") and requesting that it block foreign goods bearing such patents or trademarks.

**ANSWER**    Plaintiff's allegation is conjecture and does not contain specific facts. Because of the vague, speculative, or conjectural nature of the allegation, the Defendant lacks information sufficient to form a belief as to the truth of the allegations and therefore deny them.

## COUNT I
(Replevin)

85.    Plaintiff restates the allegations set forth in paragraphs 1 through 84 above, as if fully set forth herein.

**ANSWER**    Defendants repeat and incorporation by reference each of its answers contained in the preceding paragraphs of this Answer.

86. Plaintiff has title to, and the right of immediate possession of, all the Trademarks, Patents, and Website Domains identified in Defendants' application for a writ of execution in the 2024 Suit. (The same Trademarks, Patents, and Website Domains are identified in the US Marshals Service's bill of sale.)

**ANSWER**    Defendants deny Paragraph 86.

87. The complete list of those Trademarks, Patents, and Website Domains are:

• United States Patent for Back Hair Removal Using Comb and Integrated Blade, Patent No. 8739411 issued 06/03/2014

• United States Patent for Safety Razor with Comb and Integrated Blade and Associated Methods, Patent No. 9718200 issued 08/01/2017

• United States Patent for Method of Using a Back Shaver Handle, Patent No. 10315322 issued 06/11/2019

• United States Patent for Back Shaver Handle, Patent No. D808589 issued 01/23/2018

• United States Patent for Two-Point Discrimination Safety Razor Assembly, Patent No. 9937629 issued 04/10/2018

• United States Patent for Body Shaver with Comb and Blade, Patent No. 10131062 issued 11/20/2018

• United States Patent for Safety Razor with Plurality of Comb and Integrated Blade Groups, Patent No. 10500744 issued 12/10/2019

• United States Patent for Elevated Shaver, Patent No. 10543609 issued 01/28/2020

• United States Patent for Leveled Back Shaver, Patent No. 10493643 issued 12/03/2019

• United States Patent for Back Shaver Cartridge, Patent No. D825852 issued 08/14/2018

• United States Patent for Back Shaver Blade, Patent No. D826474 issued 08/21/2018

• United States Patent for Sponge Flap for Razor, Patent No. 10252431 issued 04/09/2019

• United States Patent for Safety Razor with Comb and Blade, Patent No. 11104018 issued 08/31/2021

- United States Patent for Flexible Back Shaver, Patent No. 11077570 issued 08/03/2021

- United States Patent for Wide Shaver Handle, Patent No. D917097 issued 04/20/2021

- United States Patent for Backshaver Brush, Patent No. D946285 issued 03/22/2022

- United States Patent for Backshaver Handle, Patent No. D1004289 issued 03/11/2025 (this was noted as Application No. 29792323 in the writ of execution but it has been issued)

- United States Patent for Safety Razor with Comb and Blade, Patent No. 12280512 issued 04/25/2025 (this was noted as Application No. 17444281 in the writ of execution but it has been issued)

- United States Trademark for "ARE YOU A HAIRY APE?," Registration # 5,123,061 and all associated goodwill represented thereby

- United States Trademark for "BAKBLADE," Registration # 4381008 and all associated goodwill represented thereby

- United States Trademark for "DON'T BE THE EIGHT HUNDRED POUND GORILLA IN THE ROOM," Registration # 4,712,609 and all associated goodwill represented thereby

- United States Trademark for "DON'T PAY FOR PAIN," Registration # 4,868,445 and all associated goodwill represented thereby

- United States Trademark for "DRYGLIDE," Registration # 4,876,804 and all associated goodwill represented thereby

- United States Trademark for "ESCAPE YOUR APE," Registration # 4,868,219 and all associated goodwill represented thereby

- United States Trademark for "GET THE MONKEY OFF YOUR BACK," Registration # 5,104,564 and all associated goodwill represented thereby

- United States Trademark for Registration # 5,105,129 and all associated goodwill represented thereby

- United States Trademark for "PUT THE 'MAN' BACK IN 'MANSCAPING'," Registration # 4,875,196 and all associated goodwill represented thereby

- United States Trademark for "WE'VE GOT YOUR BAK," Registration # 4,968,684 and all associated goodwill represented thereby

- United States Trademark for Registration # 5,385,369 and all associated goodwill represented thereby

- United States Trademark for "BAKBLADE," Registration # 5,496,847 and all associated goodwill represented thereby

- United States Trademark for "BACK HAIR SUCKS, OUR BLADES DON'T," Registration # 5,645,404 and all associated goodwill represented thereby

- United States Trademark for Registration # 5,667,614 and all associated goodwill represented thereby

- United States Trademark for "BODBLADE," Registration # 5,969,146 and all associated goodwill represented thereby

- United States Trademark for "DIY," Registration # 6,071,478 and all associated goodwill represented thereby

- United States Trademark for "BAKBLADE GROOMING CO," Registration # 6,188,545 and all associated goodwill represented thereby

- United States Trademark for "MICROTEETH," Registration # 6,465,471 and all associated goodwill represented thereby

- United States Trademark for Registration # 6130422 and all associated goodwill represented thereby

- United States Trademark for Registration # 6,334,918 and all associated goodwill represented thereby

- United States Trademark for "GROIN GROOMER," Registration # 6,436,199 and all associated goodwill represented thereby

- United States Trademark for "PROVEN UNIVERSITY," Application Serial # 90/168,780 and all associated goodwill represented thereby

- United States Trademark for "BODBARBER," Registration # 6,495,368 and all associated goodwill represented thereby

- United States Trademark for "BALDBARBER," Application Serial # 90/486,867 and all associated goodwill represented thereby

- United States Trademark for "BAKBLADE BODY GROOMING," Registration # 6,589,364 and all associated goodwill represented thereby

- United States Trademark for "PAWFULLY GOOD," Application Serial # 90/554,560 and all associated goodwill represented thereby

- United States Trademark for "BODFRESH," Application Serial # 90/629,585 and all associated goodwill represented thereby

- United States Trademark for "DON'T BE THAT GUY," Registration # 4,712,610 and all associated goodwill represented thereby

- United States Trademark for "STOP PAYING FOR PAIN," Registration # 4,726,678 and all associated goodwill represented thereby

- United States Trademark for "TAKE BAK YOUR BACK," Registration # 4,968,774 and all associated goodwill represented thereby

- United States Trademark for "THE ULTIMATE CURE FOR MANFUR," Registration # 4,868,293 and all associated goodwill represented thereby

- United States Trademark for "FRESH SAK," Application Serial # 88/285,929 and all associated goodwill represented thereby

- United States Trademark for "WE'VE GOT YOUR BAK, BOD & BOYS," Application Serial # 90/460,992 and all associated goodwill represented thereby

- United States Trademark for "NO-NICK," Application Serial # 90/511,066 and all associated goodwill represented thereby

- United States Trademark for "WORLD'S BEST BOSS," Application Serial # 90/750406 and all associated goodwill represented thereby

- United States Trademark for "RYAN STARTED THE FIRE," Application Serial # 90/750982 and all associated goodwill represented thereby

- The following GoDaddy.com domain names:

  - backblade.com

  - backblade.org

  - backshaverclub.com

  - bak-blade.com

  - bakblade.at

  - bakblade.bz

  - bakblade.ca

  - bakblade.co.in

  - bakblade.eo.nz

- bakblade.co.uk

- bakblade.com

- bakblade.com.br

- bakblade.com.br

- bakblade.com.co

- bakblade.cz

- bakblade.es

- bakblade.in

- bakblade.info

- bakblade.it

- bakblade.mx

- bakblade.net

- bakblade.net.in

- bakblade.org

- bakblade.se

- bakblade.tv

- bakblade.es

- bakbladeamericas.com

- bakbladegrooming.ca

- bakbladegrooming.com

- bakbladegrooming.mx

- bakbladegrooming.net

- bakbladegrooming.org

- bakbladegroominaco.com

- bakbladegroorningco.info

- bakbladegroomingco.net

- Bakbladegroomingco.org

- bakbladeproducts.com

- bakbladeproducts.net

- bakbladeproducts.org

- bakbladepromo.com

- bakbladerazor.com

- bakblades.com

- bakbladeshaver.com

- bakbladeshop.com

- bakbladespecialoffer.com

- bakbladestore.com

- bakbladetvoffer.com

- bakrazor.com

- bakshaver.com

- bakshaverclub.com

- baktrimmer.com

- baldblade.com

- baldblade.net

- baldblade.org

- ball-barber.com

- ballbarber.net

- bodbarber.ca

- bodbarber.com

- bodbarber.info

- bodbarber.net

- bodbarber.org

- bodblade.com

- bodblade.info

- bodblade.net

- bodblade.org

- bodfresh.com

- bodfresh.net

- bodfresh.org

- bodrazor.com

- bodrazor.info

- bodrazor.net

- bodrazor.org

- bodshaver.com

- bodshaver.info

- bodshaver.net

- bodshaver.org

- cabakblade.com

- getballbarber.com

- liberatugotila.com

**ANSWER**    Defendants admit that Paragraph 87 contains a complete list of the Trademarks, Patents, and Website Domains from the writ of execution but denies that Plaintiff owns these assets.

88.    Defendants have unlawfully taken the Trademarks, Patents, and Website Domains by falsely claiming to the Court on May 6, 2025, that the said Trademarks, Patents, and Website

Domains were the property of Shellco, and thereafter repeating that false claim to the U.S. Marshals Service.

**ANSWER**    Defendants deny that they have unlawfully taken the Trademarks, Patents, and Website Domains by falsely claiming to the Court on May 6, 2025, that the said Trademarks, Patents, and Website Domains were the property of Shellco, and thereafter repeating that false claim to the U.S. Marshals Service.

89.    Defendants knew this claim was false.

**ANSWER**    Defendants deny Paragraph 89.

90.    Defendants knew Plaintiff had purchased the Trademarks, Patents, and Website Domains from Shellco on or about October 24, 2024.

**ANSWER**    Defendants deny that they knew Plaintiff had purchased the Trademarks, Patents, and Website Domains from Shellco on or about October 24, 2024.

91.    Defendants knowingly made their false claim to the Court and the U.S. Marshals Service for the purpose of unlawfully depriving Plaintiff of its property.

**ANSWER**    Defendants deny that they knowingly made their false claim to the Court and the U.S. Marshals Service for the purpose of unlawfully depriving Plaintiff of its property.

92.    Defendants have no ownership or possessory right to the Trademarks, Patents, and Website Domains and have unlawfully withheld them from Plaintiff.

**ANSWER**    Defendants deny that they have no ownership or possessory right to the Trademarks, Patents, and Website Domains and have unlawfully withheld them from Plaintiff.

93.    Defendants have wrongfully retained the Trademarks, Patents, and Website Domains.

**ANSWER**    Defendants deny that they have wrongfully retained the Trademarks, Patents, and Website Domains.

94.    Money damages are not a substitute for the Trademarks, Patents, and Website Domains, which are unique items of property that are integral to the functioning of Plaintiff's business.

**ANSWER**    Defendants deny that money damages are not a substitute for the Trademarks, Patents, and Website Domains, which are unique items of property that are integral to the functioning of Plaintiff's business.

95.    Plaintiff would suffer irreparable harm if the Trademarks, Patents, and Website Domains are not returned to it.

**ANSWER**    Defendants deny that Plaintiff would suffer irreparable harm if the Trademarks, Patents, and Website Domains are not returned to it.

96.    As a result of the foregoing, Plaintiff is entitled to the return of the Trademarks, Patents, and Website Domains.

**ANSWER**    Defendants deny that as a result of the foregoing, Plaintiff is entitled to the return of the Trademarks, Patents, and Website Domains.

97.    The value of the Trademarks, Patents, and Website Domains is at least £999,995, an amount well in excess of $75,000.

**ANSWER**    Defendants admit that the value of the Trademarks, Patents, and Website Domains is at least £999,995, an amount well in excess of $75,000.

98.    As a direct and proximate result of the foregoing, Plaintiff has been damaged by Defendants' misconduct in unlawfully depriving Plaintiff of its property, in an amount to be determined at trial.

**ANSWER**    Defendants deny that as a direct and proximate result of the foregoing, Plaintiff has been damaged by Defendants' misconduct in unlawfully depriving Plaintiff of its property, in an amount to be determined at trial.

99.    By reason of the foregoing, Plaintiff is entitled to the imposition of a constructive trust on any revenues earned by Defendants through their sale or use of the Trademarks, Patents, and Website Domains, in an amount to be determined at trial.

**ANSWER**    Defendants deny that reason of the foregoing, Plaintiff is entitled to the imposition of a constructive trust on any revenues earned by Defendants through their sale or use of the Trademarks, Patents, and Website Domains, in an amount to be determined at trial.

## **COUNT II**
(Conversion)

100.    Plaintiff restates the allegations set forth in paragraphs 1 through 99 above, as if fully set forth herein.

**ANSWER**    Defendants repeat and incorporation by reference each of its answers contained in the preceding paragraphs of this Answer.

101.    Plaintiff asserts this conversion claim as an alternate to replevin, in the event that Defendants have disposed of the Trademarks, Patents, and Website Domains and cannot return them to Plaintiff.

**ANSWER**    Defendants admit that Plaintiff has brought a claim for conversion. Defendants deny the conversion claim is proper or properly pled.  To the extent a further response is required, Defendants deny the remaining allegations of Paragraph 101.

102.    Plaintiff has a property interest in the Trademarks, Patents, and Website Domains.

**ANSWER**    Defendants deny Paragraph 102.

103.    Plaintiff purchased the Trademarks, Patents, and Website Domains from Shellco.

**ANSWER**    Defendants deny Paragraph 103.

104.    Plaintiff have title and a right to possession of the Trademarks, Patents, and Website Domains.

**ANSWER**    Defendants deny Paragraph 104.

105.    Defendants have unlawfully gained possession of the Trademarks, Patents, and Website Domains under the knowingly false pretense that they were the property of Shellco.

**ANSWER**    Defendants deny Paragraph 105.

106.    Defendants have no lawful right to possession of the Trademarks, Patents, and Website Domains.

**ANSWER**    Defendants deny Paragraph 106.

107.    Defendants are wrongfully in possession of Plaintiff's Trademarks, Patents, and Website Domains and have exercised dominion and control over said property in derogation of Plaintiff's rights.

**ANSWER**    Defendants deny Paragraph 107.

108.    Defendants' wrongful acts and unlawful retention of the Trademarks, Patents, and Website Domains constitute unlawful conversion of Plaintiff's property.

**ANSWER**    Defendants deny Paragraph 108.

109.    As a direct and proximate result of the foregoing, Plaintiff has been damaged by Defendants' unlawful conversion of Plaintiff's property, in an amount to be determined at trial but no less than £999,995.

**ANSWER**    Defendants deny Paragraph 109.

110.    In addition, Defendants' actions are wanton, intentional, and willful and therefore warrant the imposition of punitive damages in an amount to be determined at trial.

**ANSWER**    Defendants deny Paragraph 110.

111.    By reason of the foregoing, Plaintiff is entitled to the imposition of a constructive trust on any revenues earned by Defendants through their sale or use of the Trademarks, Patents, and Website Domains, in an amount to be determined at trial.

**ANSWER**    Defendants deny Paragraph 111.

## COUNT III
(Declaratory Judgment)

112.    Plaintiff restates the allegations set forth in paragraphs 1 through 111 above, as if fully set forth herein.

**ANSWER**    Defendants repeat and incorporation by reference each of its answers contained in the preceding paragraphs of this Answer.

113.    There is an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

**ANSWER**    Paragraph 113 seeks a legal conclusion to which no answer is required. Defendants do not dispute that the Court has jurisdiction to determine ownership of certain trademarks, patents, and domains at issue in this litigation.

114.    Defendants have asserted that the Trademarks, Patents, and Website Domains are properties that may be executed on to enforce a judgment against Shellco, including by applying for and obtaining a writ of execution from this Court to seize the Trademarks, Patents, and Website Domains, and then using the U.S. Marshals Service to seize those properties.

**ANSWER**    Defendants admit that they have asserted that the Trademarks, Patents, and Website Domains are properties that may be executed on to enforce a judgment against Shellco, including by applying for and obtaining a writ of execution from this Court to seize the Trademarks, Patents, and Website Domains, and then using the U.S. Marshals Service to seize those properties.

115.    Defendants have also asserted they have a right to file liens against the Trademarks, Patents, and Website Domains, and in fact have filed liens against those trademarks and trademark applications with the USPTO in February 2025, burdening Plaintiff's rights.

**ANSWER**    Defendants admit that they have also asserted they have a right to file liens against the Trademarks, Patents, and Website Domains, and in fact have filed liens against those trademarks and trademark applications with the USPTO in February 2025. Defendants deny that Plaintiff has any valid rights to be burdened.

116.    Defendants have recorded assignments to themselves of the trademarks, trademark applications, patents included in the Trademarks, Patents, and Website Domains with the USPTO.

**ANSWER**    Defendants admit that they have recorded assignments to themselves of certain of the trademarks, trademark applications, patents included in the Trademarks, Patents, and Website Domains with the USPTO.

117.    Defendants' assertions are without basis, as Shellco did not own the Trademarks, Patents, and Website Domains when Defendants sought to enforce their judgment against Shellco by seizing those assets. Plaintiff owns the Trademarks, Patents, and Website Domains. Plaintiff purchased the Trademarks, Patents, and Website Domains from Shellco on or about October 24, 2024, and currently still own them. Defendants know that Plaintiff purchased the Trademarks, Patents, and Website Domains and that Shellco did not own any of those properties after Plaintiff's purchase.

**ANSWER**    Defendants deny Paragraph 117.

118.    Defendants knew that Shellco did not own the Trademarks, Patents, and Website Domains, and that Plaintiff now owned them, when Defendants moved for a judgment against Shellco in December 2024 and obtained that judgment in February 2025.

**ANSWER**    Defendants deny Paragraph 118.

119.    Defendants also knew that Shellco did not own the Trademarks, Patents, and Website Domains, and that Plaintiff now owned them, when Defendants filed liens against those trademarks and trademark applications in February 2025.

**ANSWER**    Defendants deny Paragraph 119.

120.    Defendants also knew when they applied for and obtained a writ of execution from this Court in May 2025 that Shellco did not own the Trademarks, Patents, and Website Domains, and that Plaintiff now owned them, as well as when they subsequently used the U.S. Marshals Service to seize those properties.

**ANSWER**    Defendants deny Paragraph 120.

121.    Based on the foregoing, a justiciable controversy exists between Plaintiff and Defendants as to whether Plaintiff owns the Trademarks, Patents, and Website Domains, and whether Defendants may file liens or take other actions against Plaintiff's property to enforce a judgment against Shellco.

**ANSWER**    Paragraph 121 seeks a legal conclusion to which no answer is required. Defendants deny that Plaintiff owns the Trademarks, Patents, and Website Domains. Defendants admit that it may and has filed lines and may take other actions to enforce its judgment against Shellco. To the extent that any further response is required, Defendants deny any remaining allegations.

122.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Plaintiff owns the Trademarks, Patents, and Website Domains and that Defendants cannot file liens or take other actions against those Trademarks, Patents, and Website Domains to enforce a judgment against Shellco, and that any such actions taken are null and void and of no effect.

**ANSWER**    Paragraph 122 seeks a legal conclusion to which no answer is required. Defendants deny that Plaintiff owns the Trademarks, Patents, and Website Domains and that Defendants cannot file liens or take other actions against those Trademarks, Patents, and Website Domains to enforce a judgment against Shellco, and that any such actions taken are null and void and of no effect. To the extent that any further response is required, Defendants deny any remaining allegations.

123.    By reason of the foregoing, Plaintiff needs and is entitled to a judicial declaration that Plaintiff owns the Trademarks, Patents, and Website Domains and that Defendants cannot file liens against those Trademarks, Patents, and Website Domains to enforce a judgment against Shellco, and that any such actions taken are null and void and of no effect.

**ANSWER**    Paragraph 123 seeks a legal conclusion to which no answer is required. Defendants deny that Plaintiff owns the Trademarks, Patents, and Website Domains and that Defendants cannot file liens against those Trademarks, Patents, and Website Domains to enforce a judgment against Shellco, and that any such actions taken are null and void and of no effect. To the extent that any further response is required, Defendants deny any remaining allegations.

## AFFIRMATIVE DEFENSES

Defendants incorporate by reference the following affirmative defenses as though fully set forth herein, without assuming the burden of proof where such burden is otherwise on Plaintiff as a matter of substantive procedural law and recognizing that (i) this litigation is at an early stage, (ii) Defendants' investigation regarding the facts alleged in the Complaint is ongoing, and (iii) discovery has not commenced. Accordingly, Defendants assert the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

### Fails to State a Claim

Plaintiff fails to state any claim on which relief can be granted.  No factual allegations have been pleaded in support of any of Plaintiff's claims. Plaintiff has alleged no facts which could support a finding of replevin, conversion, or declaratory judgment. As a non-limiting example, Plaintiff's claims of replevin and conversion are improperly directed to intangible property (i.e., intellectual property and website domains). Further, the SPA is not an assignment of title to U.S. intellectual property. Thus, these claims fail as a matter of law.

## SECOND AFFIRMATIVE DEFENSE

### Improper Relief

Plaintiff seeks improper relief.  As a non-limiting example, Plaintiff's claims of replevin and conversion are directed to intangible property (i.e., intellectual property and website domains). Thus, Plaintiff seeks improper relief because these claims are only available to a party seeking replevin and conversion of tangible property.

## THIRD AFFIRMATIVE DEFENSE

### Defense of Unclean Hands

Plaintiff's claims are barred by the doctrine of unclean hands. Specifically, Plaintiff is a sister company of Shellco 2021 Limited f/k/a Bakblade Limited and a sister subsidiary of the same parent company, Olsam Opco Ltd. By seeking to reclaim ownership of the intellectual property lawfully forfeited by its sister company by suing Defendants for replevin, conversion, and declaratory judgment, Plaintiff approaches this Court with unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

### Doctrine of Collateral Estoppel or Issue Preclusion

Plaintiff's claims are barred by the doctrine of collateral estoppel or issue preclusion. Specifically, the issue of the ownership of intangible property referenced in the Complaint was already decided in *Dryfhout Enterprises, LLC et al v. Shellco 2021 Limited*, Case 1:24-cv-01184-RGA.

## FIFTH AFFIRMATIVE DEFENSE

### Consent

If the owner of the property gave consent to Defendants to take the property, there can be no conversion. The US Marshalls office, by virtue of the Writ of Execution, took possession of the

property, and sold same to Defendants. The owner did not appear to challenge the Writ of Execution; and thus, consented to the U.S. Marshall's seizure and sale.

## SIXTH AFFIRMATIVE DEFENSE

### Waiver and Ratification and Consent

Plaintiff's conduct suggests it knowingly and voluntarily gave up their right to sue for conversion by not appearing in or challenging prior proceedings in *Dryfhout Enterprises, LLC et al v. Shellco 2021 Limited*, Case 1:24-cv-01184-RGA. Plaintiff either knew or should have known about the proceedings as a result of USPTO and public notice posted. Plaintiff either knew or should have known by virtue of its CEO, Ben Poynter, who is also the CEO of Shellco's parent company, and the previous CFO of Shellco. It would be incredulous to believe the CEO was unaware of such consequential happenings of these interconnected companies.

## SEVENTH AFFIRMATIVE DEFENSE

### Assumption of Risk

Plaintiff assumed the risk that Shellco 2021 Limited f/k/a Bakblade Limited did not have good title to the Trademarks, Patents, and Website Domains to transfer them to Plaintiff under the SPA or subsequent assignment agreement. Plaintiff purported to purchase the Trademarks, Patents, and Website Domains through a pre-pack sale where the Administrator of Shellco 2021 Limited f/k/a Bakblade Limited made no warranties or representations as to whether Shellco 2021 Limited f/k/a Bakblade Limited had good title to the Trademarks, Patents, and Website Domains to convey to Plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

### Superior Right of Possession

Defendants have superior right to possess the Trademarks, Patents, and Website Domains than Plaintiff.

## NINTH AFFIRMATIVE DEEFENSE

### Fraudulent Transfer

Shellco's purported transfer of the IP Assets to Personal Grooming is a fraudulent transfer pursuant to Delaware Uniform Fraudulent Transfer Act (DUFTA), codified in Chapter 13 of Title 6 of the Delaware Code, which provides statutory causes of action for creditors to challenge transfers of debtor's assets. Shellco's purported transfer under the Sales and Purchase Agreement is an actual fraudulent transfer and/or a constructive fraudulent transfer. Shellco's transfer was made with actual intent to hinder, delay or defraud a creditor of the debtor, namely Defendants. The transfer was made to an insider, specifically Shellco's sister company, Personal Grooming. Upon information and belief, even though transfer supposedly transferred the IP Assets to Personal Grooming, the business arrangement through which goods sold under the IP Assets did not change. Shortly after the transfer, Shellco became insolvent. These facts are commonly referred to as "badges of fraud" and are used to infer intent. Dryfhout did not learn of the fraudulent transfer had occurred until Personal Grooming filed assignment records at the USPTO for some of the IP Assets in July 2025, and provided Defendants a copy of the Sales and Purchase Agreement shortly after filing this lawsuit, in September 2025. Additionally, the transfer of the IP Assets from Shellco to Personal Grooming is a constructive fraudulent transfer. Upon information and belief, Shellco failed to receive reasonably equivalent value for the IP

Assets transferred and Shellco was insolvent at the time of the transfer or rendered insolvent by it.

## COUNTERCLAIMS

Without waiver of any rights, Dryfhout Properties, LLC ("Dryfhout"), by and through its undersigned counsel, alleges the following counterclaims against Personal Grooming Co Limited ("Personal Grooming") in accordance with the Federal Rules of Civil Procedure. Dryfhout incorporates the foregoing responses and defenses as if fully set forth herein.

## NATURE OF ACTION

1.     These counterclaims are for Personal Grooming's infringement of Dryfhout's federally-registered trademark rights under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and fraudulent transfer pursuant to Delaware Uniform Fraudulent Transfer Act.

## THE PARTIES

2.     Dryfhout is an Illinois limited liability company with a principal place of business at 25 Colonel Winstead Drive, Brentwood, Tennessee.

3.     Upon information and belief, Personal Grooming is a private limited company incorporated and registered in England and Wales with company number 13679662 whose registered office is at 124 City Road, London, Greater London, England, EC1V 2NX.

## JURISDICTION AND VENUE

4.     This Court has exclusive subject matter jurisdiction over this case pursuant to 15 U.S.C § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5.      Personal Grooming has consented to the personal jurisdiction of this Court by commencing this action in this judicial district. Dryfhout's counterclaims are compulsory because the counterclaims and Personal Grooming's claims share a close, logical relation: the ownership and rightful use of the trademarks, patents, and website domains listed as assets on Dryfhout's application in the 2024 Suit for a writ of execution, a copy which is attached to the Complaint as Exhibit D.

6.      Venue is proper in this district under 28 U.S.C. § 1391(c)(3), in that Personal Grooming is not a resident in the United States and thus may be sued in any judicial district.

## BACKGROUND

### A. The Asset Purchase Agreement between Dryfhout and Shellco

7.      On October 28, 2022, Dryfhout executed an Asset Purchase Agreement (the "APA") with Bakblade Limited, later renamed as Shellco (referred to herein as "Shellco").

8.      Under the APA, Shellco purchased intellectual property and domains from Defendants, some of which is at issue in the present matter (referred to herein as the "IP Assets").

9.      The purchase price included, in part, three deferred payments and four yearly earnouts.

10.     In the APA, Shellco and its principals warranted that it had "sufficient cash on hand or other sources of immediately available funds" to pay the full purchase price.

11.     This turned out to be false, however, and at Shellco's request, Defendants agreed to an amendment to the APA on October 13, 2023 (the "AAPA").

12.     The AAPA restructured the outstanding payments under the APA to include $1 million in four annual payments.

13.     Shellco failed to pay.

**B. <u>Dryfhout 2024 Lawsuit Against Shellco in this Court</u>**

14.     Upon Shellco's indication it would not fulfil its obligations under the AAPA, Defendants filed suit in this District for breach of contract and anticipatory repudiation on October 23, 2024. *See Dryfhout Enterprises, LLC et al., v. Shellco 2021 Ltd.*, Case No. 24-cv-1184 (D. Del.) ("*Shellco Action*").

15.     The next day on October 24, 2024, Shellco appointed administrators in preparation for insolvency proceedings in the U.K.

16.     Service of the Complaint from the *Shellco Action* was effectuated on Shellco's administrators via the Hague Convention on November 12, 2024.

17.     Neither Shellco nor its administrators responded, and Defendants moved for a default judgment against Shellco on January 10, 2025, which was granted on February 4, 2025, in the amount of $4,263,143.97.

18.     This judgment remains intact.

19.     On or about February 5, 2025, Defendants perfected liens against the IP Assets and recorded the liens with the USPTO, State of Delaware, and Washington D.C.

20.     On May 6, 2025, Defendants applied for a Writ of Execution, seeking to levy and sell the intellectual property covered by the APA, which was issued by this Court on May 21, 2025 ("Writ"), and served on Shellco Administrators.

21.     Defendants recorded the Writ at the USTPO on May 22, 2025.

22.     Defendants subsequently purchased the encumbered intellectual property for $100,000 at the Marshal's Sale held July 22, 2025.

23.      Defendants recorded their ownership of the intellectual property at the USPTO. Each of the defendants in this action assigned all of their rights in the IP Assets to Dryfhout.

24.      At no time did Shellco, or its administrators appear, participate, or object to the aforementioned proceedings.

## DRYFHOUT'S OWNERSHIP OF FEDERALLY REGISTERED BAKBLADE TRADEMARKS

25.      Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 4,381,008 on the Principal Register in the United States Patent and Trademark Office for BAKBLADE ("BAKBLADE Mark"). Attached as **Exhibit A** is a true and correct copy of the registration certificate for the BAKBLADE Mark, which was issued by the United States Patent and Trademark Office on August 6, 2013.

26.      Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 4,876,804 on the Principal Register in the United States Patent and Trademark Office for DRYGLIDE ("DRYGLIDE Mark"). Attached as **Exhibit B** is a true and correct copy of the registration certificate for the DRYGLIDE Mark, which was issued by the United States Patent and Trademark Office on December 29, 2015.

27.      Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 4,868,219 on the Principal Register in the United States Patent and Trademark Office for ESCAPE YOUR APE ("ESCAPE YOUR APE Mark"). Attached as **Exhibit C** is a true and correct copy of the registration certificate for the ESCAPE YOUR APE Mark, which was issued by the United States Patent and Trademark Office on December 8, 2015.

28.      Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 4,968,684 on the Principal Register in the United States Patent and Trademark Office for WE'VE GOT YOUR BAK ("WE'VE GOT YOUR BAK Mark"). Attached as **Exhibit**

D is a true and correct copy of the registration certificate for the WE'VE GOT YOUR BAK Mark, which was issued by the United States Patent and Trademark Office on May 31, 2016.

29.    Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 5,969,146 on the Principal Register in the United States Patent and Trademark Office for BODBLADE ("BODBLADE Mark"). Attached as **Exhibit E** is a true and correct copy of the registration certificate for the BODBLADE, which was issued by the United States Patent and Trademark Office on January 21, 2020.

30.    Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 6,188,545 on the Principal Register in the United States Patent and Trademark Office for BAKBLADE GROOMING CO. ("BAKBLADE GROOMING CO. Mark"). Attached as **Exhibit F** is a true and correct copy of the registration certificate for the '545 Trademark Registration, which was issued by the United States Patent and Trademark Office on November 3, 2020.

31.    Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 6,465,471 on the Principal Register in the United States Patent and Trademark Office for MICROTEETH ("MICROTEETH Mark"). Attached as **Exhibit G** is a true and correct copy of the registration certificate for the MICROTEETH Mark, which was issued by the United States Patent and Trademark Office on August 24, 2021.

32.    Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 6,130,422 on the Principal Register in the United States Patent and Trademark

Office for the following illustration:  ("Ape Design Mark #1"). Attached as **Exhibit H** is a true and correct copy of the registration certificate for the Ape Design Mark #1, which was

issued by the United States Patent and Trademark Office on August 18, 2020.

33.     Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 6,334,918 on the Principal Register in the United States Patent and Trademark

Office for the following illustration:      ("Ape Design Mark #2). Attached as **Exhibit I** is a true and correct copy of the registration certificate for the Ape Design Mark #2, which was issued by the United States Patent and Trademark Office on April 27, 2021.

34.     Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 6,495,368 on the Principal Register in the United States Patent and Trademark Office for BODBARBER ("BODBARBER Mark"). Attached as **Exhibit J** is a true and correct copy of the registration certificate for the BODBARBER Mark Registration, which was issued by the United States Patent and Trademark Office on September 21, 2021.

35.     Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 6,589,364 on the Principal Register in the United States Patent and Trademark Office for BAKBLADE BODY GROOMING ("BAKBLADE BODY GROOMING Mark"). Attached as **Exhibit K** is a true and correct copy of the registration certificate for the BAKBLADE BODY GROOMING Mark, which was issued by the United States Patent and Trademark Office on December 14, 2021.

36.     Dryfhout is the owner of valid and subsisting United States Trademark Registration No. 6,436,199 on the Principal Register in the United States Patent and Trademark Office for GROIN GROOMER ("GROIN GROOMER Mark"). Attached as **Exhibit L** is a true and correct copy of the registration certificate for the GROIN GROOMER Mark, which was issued by the United States Patent and Trademark Office on July 27, 2021.

37.     Dryfhout owns valid and subsisting federal statutory rights to BAKBLADE Mark, DRYGLIDE Mark, ESCAPE YOUR APE Mark, WE'VE GOT YOUR BAK Mark, BODBLADE Mark, DIY Mark, BAKBLADE GROOMING CO. Mark, MICROTEETH Mark, Ape Design Mark #1, Ape Design Mark #2, BODBARBER Mark, BAKBLADE BODY GROOMING Mark, and GROIN GROOMER Mark (collectively referred to herein as "the BAKBLADE Marks").

## PERSONAL GROOMING'S INFRINGEMENT OF THE BAKBLADE MARKS

38.     Personal Grooming has been engaged in the manufacture, distribution, provision, advertising, promotion, offering for sale, and sale of goods and services using marks throughout the United States that are identical and/or substantially similar to the BAKBLADE Marks. The images below compare Personal Grooming's use of marks identical or substantially similar to BAKBLADE Marks.

| Dryfhout's BAKBLADE Marks | Personal Grooming's Infringing Use of the BAKBLADE Marks. |
|---|---|
| BAKBLADE |  https://www.amazon.com/dp/B071JSSF8T (last accessed October 3, 2025) |











| | |
|---|---|
| DRYGLIDE | https://www.amazon.com/dp/B07MZCTMSG (last accessed October 3, 2025) |





| ESCAPE YOUR APE | <br>ESCAPE YOUR APE!<br>https://www.amazon.com/stores/DryfhoutEnterprisesLLC/page/BE648E6E-1FDC-4D0B-AB37-D09C7F358DE0 (last accessed October 3, 2025) |
|---|---|
| WE'VE GOT YOUR BAK | Looking to order the **BAK**BLADE outside the US or Canada? No problem, we've got your BAK. Just pick from the following list. Please note: the **BAK**BLADE may not yet be available in your region - but rest assured, we're working on getting them everywhere. Happy Shaving.<br>https://bakblade.com/pages/international?srsltid=AfmBOopdZqMftuixr6zFRky7yngXwkGTKSRi1DTeR1k5ljv0HO3w7bnt (last accessed October 3, 2025) |





BODBLADE



https://www.amazon.com/dp/B07TMRRFLJ (last accessed October 3, 2025)





| BAKBLADE GROOMING CO. |  |
| --- | --- |

https://x.com/BAKBLADECO (last accessed October 3, 2025)

https://bakblade.com/ (last accessed October 3, 2025)

| | |
|---|---|
| |  |
| MICROTEETH | • PERSONAL GROOMER FOR MEN: This men grooming kit includes - Groin Groomer with MicroTeeth Tech for safe shaving, Body Groomer for smooth clean look, Ear & Nose Hair Trimmer for Men with easy access for trimming, Foil Shaver to clean up your neck line<br><br>https://www.amazon.com/dp/B08GV38V5B (last accessed October 3, 2025)<br><br>**How to Use BodBarber**<br><br>Start by choosing the right attachment for the job. If you need a close shave, the body groomer is your best bet. For beard maintenance, attach the hair and beard trimmer. If ear and nose hair need some attention, there's a specialized trimmer for that too. With adjustable clipper combs in 3mm, 6mm, 9mm, and 12mm lengths, you can easily customize your look. Plus, you can switch between two-speed settings (7,000-8,000RPM) for better control. Worried about shaving in delicate areas? BodBarber's groin groomer features MicroTeeth Tech, ensuring a safe, smooth shave with no irritation or nicks. And since it's waterproof, you have the freedom to use it in or out of the shower.<br><br>https://bakblade.com/blogs/manscaping/how-to-use-bodblade-bodbarber-your-ultimate-grooming-guide?srsltid=AfmBOorhk5xB4CUP6WKUyB3WNjigtBsKpWM9QaK82zl0 |

MllGbQjP45Ra





| Ape Design Mark #1 | |
| Ape Design Mark #2 | |

https://www.amazon.com/dp/B071JSSF8T (last accessed October 3, 2025)

https://www.amazon.com/stores/bakblade/page/0F3C1340-794F-45D9-952F-9BFBC85DADB7 (last accessed October 3, 2025)











BODBARBER



https://www.amazon.com/dp/B08GV38V5B (last accessed October 3, 2025)

## BODBARBER 11-in-1 KIT

★★★★⯪  130 Reviews

$49.95                                                                    In Stock

[ −   1   + ]    **ADD TO CART**

Buy with **shop** VISA 3413

More payment options

https://bakblade.com/collections/back-shavers/products/bodbarber





| BAKBLADE BODY GROOMING |  

https://www.amazon.com/dp/B07TMRRFLJ (last accessed October 3, 2025)

 |







| GROIN GROOMER |  |



## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

### Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

39.    Dryfhout incorporates the foregoing paragraphs as if fully set forth herein.

40.    Dryfhout is the owner of the BAKBLADE Marks, which are valid and subsisting and duly registered with the USPTO.

41.    Dryfhout has the exclusive right to use the BAKBLADE Marks in commerce in connection with the goods and services recited in their respective trademark registrations and applications, including without limitation, electric and non-electric razors, razor blades, safety razors, personal grooming supplies and accessories, and skin care products.

42.    Personal Grooming's use of marks identical or confusingly similar to the BAKBLADE Marks in connection with the sale, offering for sale, distribution, and/or advertising of its Infringing Products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or associations of Personal Grooming with Dryfhout, or

as to the origin, sponsorship, or approval of Personal Grooming's products by Dryfhout, in violation of 15 U.S.C. § 1114.

43.    Without Dryfhout's consent, Personal Grooming has knowingly and willfully infringed Dryfhout's rights in its federally registered BAKBLADE Marks through the sale, offering for sale, distribution, and/or advertising of identical, overlapping, and/or substantially similar goods and services under a confusingly similar name and in the same channels of trade, i.e. direct to consumers and over the internet, all in violation of 15 U.S.C. § 1114(1)(a).

44.    Personal Grooming's unauthorized use of designations identical or highly similar to the BAKBLADE Marks violates 15 U.S.C. § 1114, and has also caused irreparable injury to Dryfhout's reputation and goodwill.  On information and belief, unless restrained and enjoined, Personal Grooming will continue to infringe Dryfhout's BAKBLADE Marks.

45.    Dryfhout's remedy at law is not adequate to redress the harm Personal Grooming has caused and will continue to cause until its conduct is restrained, entitling Dryfhout to preliminary injunctive relief pursuant to 15 U.S.C. § 1116 and the equitable authority of this Court and permanent injunctive relief.

46.    As a result of Personal Grooming's infringement, Dryfhout has suffered damages, including lost sales, lost profits, and lost goodwill.

47.    Dryfhout seeks monetary damages and statutory damages in an amount to be proven, pursuant to 15 U.S.C. §§ 1117(a) and (b).

## **COUNT II: FALSE DESIGNATION OF ORIGIN**

### **Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

48.    Dryfhout incorporates the foregoing paragraphs as if fully set forth herein.

49.     Personal Grooming's creation, production, offering for sale, advertisement, and/or distribution of goods in connection with the BAKBLADE Marks, have been and are without Dryfhout's permission or consent, and constitute designation of a term, symbol, device, or any combination thereof, that is false or misleading within the meaning of 15 U.S.C. § 1125(a).

50.     Personal Grooming's knowing use of reproductions or confusingly similar imitations of the BAKBLADE Marks in connection with Personal Grooming's goods is causing and will continue to cause confusion, deception, and mistake among the general purchasing public of the United States by creating the false and misleading impression that Personal Grooming's goods are manufactured or distributed by Dryfhout; or are affiliated, connected, or associated with Dryfhout; or have the sponsorship, endorsement, or approval of Dryfhout.

51.     Unless restrained and enjoined by this Court, Personal Grooming will persist in their activities, thereby causing Dryfhout irreparable harm.

52.     Dryfhout has no adequate remedy at law.

53.     Dryfhout's remedy at law is not adequate to redress the harm Personal Grooming has caused and will continue to cause until its conduct is restrained, entitling Dryfhout to preliminary injunctive relief pursuant to 15 U.S.C. § 1116 and the equitable authority of this Court and permanent injunctive relief.

54.     Personal Grooming's acts of unfair competition as alleged herein have been undertaken with knowledge of Dryfhout's exclusive rights to the BAKBLADE Marks, entitling Dryfhout to an award of treble Personal Grooming's profits, plus attorneys' fees in bringing and maintaining this action, pursuant to 15 U.S.C. § 1117(b), or alternatively statutory damages pursuant to 15 U.S.C. § 1117(c).

## COUNT III: FRAUDULENT TRANSFER

55.     Dryfhout incorporates the foregoing paragraphs as if fully set forth herein.

56.     Alternatively, Shellco's purported transfer of the IP Assets to Personal Grooming is a fraudulent transfer pursuant to Delaware Uniform Fraudulent Transfer Act (DUFTA), codified in Chapter 13 of Title 6 of the Delaware Code, which provides statutory causes of action for creditors to challenge transfers of debtor's assets. Shellco's purported transfer under the Sales and Purchase Agreement is an actual fraudulent transfer and/or a constructive fraudulent transfer.

57.     Shellco's transfer was made with actual intent to hinder, delay or defraud a creditor of the debtor, namely Defendants. The transfer was made to an insider, specifically Shellco's sister company, Personal Grooming. Upon information and belief, even though transfer supposedly transferred the IP Assets to Personal Grooming, the business arrangement through which goods sold under the IP Assets did not change. Shortly after the transfer, Shellco became insolvent. These facts are commonly referred to as "badges of fraud" and are used to infer intent.

58.     Dryfhout did not learn of the fraudulent transfer had occurred until Personal Grooming filed assignment records at the USPTO for some of the IP Assets in July 2025, and provided Defendants a copy of the Sales and Purchase Agreement shortly after filing this lawsuit, in September 2025.

59.     Additionally, the transfer of the IP Assets from Shellco to Personal Grooming is a constructive fraudulent transfer. Upon information and belief, Shellco failed to receive reasonably equivalent value for the IP Assets transferred and Shellco was insolvent at the time of the transfer or rendered insolvent by it.

**ATTORNEYS FEES**

60.     According to 15 U.S.C. § 1117, Dryfhout is entitled to, and respectfully requests, its reasonable attorneys' fees in this case.

**DEMAND FOR JURY TRIAL**

61.     According to Fed. R. Civ. P. 38(b), Dryfhout respectfully requests a trial by jury on all issues triable by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Dryfhout prays for the following relief against Personal Grooming as follows:

A.     Judgement be entered that Personal Grooming has willfully infringed the BAKBLADE Marks in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

B.     Enter an order preliminarily and permanently enjoining Personal Grooming, its employees, agents, officers, directors, successors, affiliates, subsidiaries, assigns, and all those acting in concert and participation with them from:

    i.   distributing, providing, selling, marketing, advertising, promoting, using or
         authorizing any third party to distribute, provide, sell, market, advertise,
         promote or use the BAKBLADE Marks, or any other mark that is confusingly
         similar to the BAKBLADE Marks;

    ii.  engaging in any activity that infringes or interferes with Dryfhout's rights to
         its BAKBLADE Marks; and

    iii. making or displaying any statement, representation or depiction that is likely
         to lead the public or the trade to believe that 1) Personal Grooming's goods

and services are in any manner approved, endorsed, licensed, sponsored, authorized, associated, affiliated or otherwise connected with Dryfhout; and 2) Personal Grooming's goods and services are in any manner approved, endorsed, licensed, sponsored, authorized, associated, affiliated or otherwise connected with Dryfhout;

C.      Award Dryfhout an amount up to three times the amount of its actual damages, in accordance with 15 U.S.C. § 1117(a);

D.      Award Dryfhout statutory damages under 15 U.S.C. § 1117(d);

E.      Direct Personal Grooming to account to and pay over to Dryfhout all profits realized through their wrongful conduct in accordance with 15 U.S.C. § 1117(a), enhanced as appropriate to compensate Dryfhout for the damages caused thereby;

F.      Declare this an exceptional case and order that Personal Grooming pay to Dryfhout its reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1117(a);

G.      Award Dryfhout interest, including prejudgment and post-judgment interest, on the foregoing amounts;

H.      Declare that any transfer of title from Shellco to Personal Grooming pursuant to the Sales and Purchase Agreement any intellectual property assignments is void and unenforceable;

I.      Award such further and other relief to Dryfhout as the Court deems just, together with its costs and disbursements in this action.

Dated: October 6, 2025

Respectfully submitted,

*Of Counsel:*

Carrie J. Richey
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2740
San Francisco, California 94111
Telephone: (415) 433-1900
carrie.richey@wbd-us.com

*/s/ Stephanie S. Riley*
Stephanie S. Riley (#5803)
Zachary Murphy (#6881)
Alexander P. Wharton (#7304)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
stephanie.riley@wbd-us.com
zachary.murphy@wbd-us.com
alexander.wharton@wbd-us.com

*Counsel to Dryfhout Enterprises, LLC,*
*Dryfhout Properties, LLC, Matthew Dryfhout,*
*and Angelina Dryfhout*