**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PERSONAL GROOMING CO LIMITED,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | C.A. No. 25-1047-RGA |
| v.  ) | |
| ) | |
| DRYFHOUT ENTERPRISES, LLC,  ) | |
| DRYFHOUT PROPERTIES, LLC,  ) | |
| MATTHEW DRYFHOUT, and  ) | |
| ANGELINA DRYFHOUT  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**OPPOSITION TO PLAINTIFF PERSONAL GROOMING CO**
**LIMITED'S MOTION TO SHOW CAUSE OR IN THE ALTERNATIVE FOR**
**A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

*Of Counsel:*

Carrie J. Richey
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2740
San Francisco, California 94111
Telephone: (415) 433-1900
carrie.richey@wbd-us.com

Stephanie S. Riley (#5803)
Zachary Murphy (#6881)
Alexander P. Wharton (#7304)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
stephanie.riley@wbd-us.com
zachary.murphy@wbd-us.com
alexander.wharton@wbd-us.com

*Counsel to Dryfhout Enterprises, LLC,*
*Dryfhout Properties, LLC, Matthew Dryfhout,*
*and Angelina Dryfhout*

Dated: October 6, 2025

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ...................................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS ......................................................2

III.    SUMMARY OF ARGUMENT ............................................................................3

IV.    STATEMENT OF FACTS ...................................................................................3

    A.     The Asset Purchase Agreement between Defendants and Shellco................................3

    B.     Defendants' 2024 Lawsuit Against Shellco in this Court................................4

V.      ARGUMENT .......................................................................................................5

    A.     PGC's Show Cause Motion Should be Denied ..............................................5

    B.     PGC's PI Motion Should be Denied................................................................7

        1.    PGC Cannot Establish a Reasonable Likelihood of Success on the Merits ................8

          a.   PGC Cannot Establish Conversion and Replevin Are Proper ....................8

          b.   PGC Cannot Establish with Reasonable Certainty It Is the Owner of the IP Assets...8

          c.   PGC's Failure to Show Likelihood of Ownership Is Fatal to PGC's Request to Enjoin Defendants' Use of the IP Assets............................................................17

        2.    Defendants are at Risk of Irreparable Harm, Not PGC ............................17

        3.    The Balance of Hardships Favor Defendants ............................................18

        4.    The Proposed Injunction Will Not Serve the Public Interest....................20

VI.    CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*

    625 F.3d 1359 (Fed. Cir. 2010) ................................................................. 9

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*

    583 F.3d 832 (Fed. Cir. 2009) ................................................................... 9

*Boston Sci. Corp. v. Acacia Research Grp., LLC*

    2018 WL 3117549 (D. Del. June 25, 2018) ............................................... 5

*Bush v. Hillman Land Co.*

    2 A.2d 133 (Del. Ch. 1938) ....................................................................... 6

*Cent. Transp., LLC v. Atlas Towing, Inc.*

    884 F. Supp. 2d 207 (E.D. Pa. 2012) ........................................................ 6

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*

    765 F.3d 205 (3d Cir. 2014) ...................................................................... 7

*Filmtec Corp. v. Allied-Signal Inc.*

    939 F.2d 1568 (Fed. Cir. 1991) ............................................................... 15

*Hughes Tool Co. v. Fawcett Publications, Inc.*

    315 A.2d 577 (Del. 1974) .......................................................................... 5

*Hydrogen Master Rights, Ltd. v. Weston*

    228 F. Supp. 3d 320 (D. Del. 2017) .......................................................... 5

*Juju, Inc. v. Native Media, LLC*

    2020 WL 3208800 (D. Del. June 15, 2020) ............................................... 5

*Melher Transp., Inc. v. Westfall Towing LLC*

    2021 WL 5339518 (S.D. Ohio June 7, 2021) ............................................ 6

*Mercado-Salinas v. Bart Enters. Int'l, Ltd.*

    747 F. Supp. 2d 265 (D.P.R) .................................................................... 17

*Novartis Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*

    290 F.3d 578 (3d Cir. 2002) .................................................................... 19

*Pelham v. VBIT Techs. Corp.*,

    2025 WL 947867 (D. Del. Mar. 28, 2025) ............................................... 4

*Ponder v. Maaranu*

2021 WL 4928452 (D. Del. Oct. 21, 2021) ....................................................... 17, 20

*Reilly v. City of Harrisburg*

858 F.3d 173 (3d Cir. 2017)......................................................................... 7, 8

*Rogers v. Corbett*

468 F.3d 188 (3d Cir. 2006).......................................................................... 19

*SiRF Tech., Inc. v. Int'l Trade Comm'n*

601 F.3d 1319 (Fed. Cir. 2010)..................................................................... 16

*Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*

2018 WL 395750 (D. Del. Jan. 8, 2018)........................................................ 18

*Tauwab v. Barry*

2014 WL 4245967 (N.D. Ohio Aug. 25, 2014) ............................................... 6

*Wilberger v. Joseph*

2004 WL 1192692 (D. Del. May 20, 2004)..................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.*

555 U.S. 7 (2008)........................................................................................... 8

*Yamaha Motor Fin. Co., U.S.A. v. ML Country Club*

2020 WL 7334189 (D.N.J. Dec. 14, 2020) ..................................................... 7

**Statutes**

15 U.S.C. § 1060.................................................................................................. 14

35 U.S.C. § 261................................................................................................... 14

**Other Authorities**

Black's Law Dictionary (14th ed. 2014) ................................................................ 5

**Rules**

Fed. R. Civ. P. 64................................................................................................. 6

## I.    INTRODUCTION

This matter is an IP ownership dispute where Plaintiff improperly seeks replevin of certain patents, trademarks, and web domains ("IP Assets")[1] and moves for preliminary relief based on its improper claim. Prior to this action and in this Court, Defendants Dryfhout Enterprises, LLC, Dryfhout Properties, LLC, Matthew Dryfhout, and Angelina Dryfhout (collectively, "Defendants") sued Shellco 2021 Limited (formerly known as Bakblade Ltd) (referred to herein as "Bakblade" or "Shellco") for breach of an Assets Purchase Agreement ("APA") related to certain intellectual property Shellco purchased from Defendants. Shellco, or any representatives thereof, failed to appear. As a result, on February 3, 2025, this Court entered a default judgment against Shellco for approximately $4 million. On May 21, 2025, Defendants obtained a writ of execution against the IP Assets and then repurchased the IP Assets through a Marshal's Sale.

Now, Plaintiff Personal Grooming Co Limited ("PGC"), a sister subsidiary of Shellco owned by the same parent company, Olsam Opco Ltd. ("Olsam"), seeks to reclaim ownership of the IP Assets forfeited by its sister company by suing Defendants for replevin, conversion, and a declaratory judgment that PGC is the owner of the IP Assets by virtue of a "pre-pack sale" that was part of an insolvency proceeding in the United Kingdom. (*See generally* D.I. 1.) PGC filed a Motion to Show Cause pursuant to Federal Rule of Civil Procedure 64 (the "Show Cause Motion"), asking this Court to apply a Delaware procedural replevin statute to direct Defendants "not to intentionally destroy, damage, sell or secrete" the intellectual property, and requested in the alternative, a preliminary injunction ("PI") or temporary restraining order ("TRO") under Rule 65 (the "PI Motion"; with the Show Cause Motion, the "Motion") enjoining Defendants from using

---

[1] The "IP Assets" as defined herein are the patents, trademarks, and web domains identified in the Bill of Sale in *Dryfhout Enterprises, LLC et al., v. Shellco 2021 Ltd.*, Case No. 24-cv-1184 (D. Del.) (D.I. 18) (hereinafter "*Shellco Action*"); *see also* D.I. 1, ¶ 87.

the IP Assets. Both avenues are improper and should be denied.

PGC's Show Cause Motion fails as a matter of law because replevin is an improper remedy for intangible property, and therefore Rule 64 cannot be applied. While this should be sufficient for the Court to end any further inquiry into the merits, PGC's alternate request for a PI and TRO should also be denied. As discussed in greater detail below, PGC fails to demonstrate it has a reasonable likelihood of success as to any of its claims and cannot demonstrate irreparable harm. PGC's sister subsidiary Shellco breached its obligations under the APA, failed to appear in a lawsuit against it, and as such owes Defendants several million dollars. The only harm to be suffered is by Defendants, faced with a backdoor attempt by PGC to circumvent a proper writ.

At base though, the relief sought is inconsistent. PGC's primary relief, under Rule 64, notwithstanding its impropriety, seeks to prevent Defendants from "intentionally destroying, damaging, selling, or secreting" the IP Assets. (D.I. 12 at 1.) PGC's alternative requested relief, under Rule 65, seeks something entirely different—to prevent Defendants from *using* the IP Assets—without filing an infringement action. *Id.* Further, PGC's Proposed Order to the Motion (D.I. 13 at 3) only includes a directive that prohibits Defendants from destroying, damaging, selling, or secreting the IP Assets. This blurred, moving target further encapsulates the impropriety of PGC's Motion.

## II.   NATURE AND STAGE OF PROCEEDINGS

PGC brought this action on August 20, 2025 for replevin of the IP Assets, a claim of conversion of the IP Assets, and a declaratory judgment as to the ownership of the IP Assets. (D.I. 1.) Defendants were served on August 27, 2025. (D.I. 8, 9, 10, 11.) On August 29, 2025, PGC filed its Motion. (D.I. 12.) The Motion was served via e-mail on Defendants' former counsel on September 2, 2025 and by FedEx on Defendants on September 3, 2025. (D.I. 22.)

## III. SUMMARY OF ARGUMENT

PGC's Motion should be denied because:

1. Replevin is only available for *tangible* property and intellectual property is *intangible* property.

2. Rule 64 is to secure satisfaction of a potential judgment, not to immediately reclaim property that is the subject of the lawsuit.

3. Even if replevin was available, PGC's own case law encourages this Court to apply the PI standard in deciding whether to enjoin Defendants, yet PGC fails to make that showing.

4. PGC's PI Motion[2] improperly seeks to prohibit Defendants from *using* the IP Assets—a request more typical of an infringement claim, not present here.

5. PGC is unable to demonstrate likelihood of success on the merits and irreparable harm, plus consideration of the balance of the hardships and public interest warrant a denial.

## IV. STATEMENT OF FACTS

### A. <u>The Asset Purchase Agreement between Defendants and Shellco</u>

On October 28, 2022, Defendants executed an APA with Bakblade (Declaration of Matthew Dryfhout ("Dryfhout Decl."), at ¶ 4), later renamed Shellco. (D.I. 17, ¶ 3.) Under the APA, Bakblade purchased intellectual property from Defendants, some of which is at issue in the present matter. Dryfhout Decl., Ex. A, § 1.01. The purchase price included, in part, three deferred payments and four yearly earnouts. *Id.* at Ex. A, §§ 1.04, 1.05. In the APA, Bakblade and its principals[3] warranted that it had "sufficient cash on hand or other sources of immediately available

---

[2] Just as PGC treated its alternative pleading as one, combining the requested relief of a TRO and PI, Defendants will do the same. However, as the TRO would expire within 14 days and would be mooted by a PI, Defendants aver that a TRO needs no consideration in the face of a PI.

[3] These principals included a Mr. Oliver Horbye, who was at the same time, a director of Olsam, Bakblade's parent, and PGC, Bakblade's sister subsidiary. Declaration of Carrie Richey ("Richey Decl."), ¶ 2.

funds" to pay the full purchase price. *Id.* at Ex. A, § 5.02. This turned out to be false, and at Bakblade's request (Dryfhout Decl., ¶ 5), Defendants agreed to an amendment to the APA on October 13, 2023 (the "AAPA"). *Id.* at ¶ 6, Ex. B. The AAPA restructured the outstanding payments under the APA to include $1 million in four annual payments. *Id.* at Ex. B. Bakblade failed to pay. *Id.* at ¶ 7.

      **B.**      **Defendants' 2024 Lawsuit Against Shellco in this Court**

Upon Shellco's indication it would not fulfil its obligations under the AAPA (Dryfhout Decl., ¶ 7), Defendants filed suit in this District for breach of contract and anticipatory repudiation on October 23, 2024. Dryfhout Decl., ¶ 8. The next day on October 24, 2024, Shellco appointed administrators in preparation for insolvency proceedings in the U.K. (D.I. 17, Ex. B at 15.) Service was effectuated on Shellco's administrators via the Hague Convention on November 12, 2024.[4] Dryfhout Decl., ¶ 9. Neither Shellco nor its administrators responded, and Defendants moved for a default judgment against Shellco on January 10, 2025 (Dryfhout Decl., ¶ 11), which was granted on February 4, 2025, in the amount of $4,263,143.97 (Dryfhout Decl., ¶ 12) (the "Default Judgment"). This judgment remains intact. On May 6, 2025, Defendants applied for a Writ of Execution ("Writ"), seeking to levy and sell the IP Assets covered by the APA (Dryfhout Decl., ¶¶ 13, 14), which was issued by this Court on May 21, 2025 (Dryfhout Decl., ¶ 15), and served on Shellco's administrators (Dryfhout Decl., ¶¶ 17, 18). Defendants also recorded the Writ at the USTPO on May 22, 2025. Dryfhout Decl., ¶ 16; *see* Richey Decl., ¶¶ 3, 4. Defendants subsequently purchased the IP Assets for $100,000 at the Marshal's Sale held July 22, 2025 (the "Sale").

---

[4] Six days after service under the Hague Conventions was effectuated, an administrator of Shellco contacted Defendants refusing to accept service. Dryfhout Decl., ¶ 10. This objection is fruitless, however, as refusal to accept service does not invalidate service. *See Pelham v. VBIT Techs. Corp.*, 2025 WL 947867, at *7-*8 (D. Del. Mar. 28, 2025), *report and recommendation adopted*, 2025 WL 1282321 (D. Del. May 2, 2025).

Dryfhout Decl., ¶¶ 18, 19; *see also* D.I. 1, Ex. G. Defendants recorded their ownership of the IP Assets at the USPTO. Richey Decl., ¶¶ 3, 4; *see also* D.I. 17, Ex. J. At no time did Shellco, or its administrators appear, participate, or object to the aforementioned proceedings.

## V.     ARGUMENT

### A.     PGC's Show Cause Motion Should be Denied

PGC's Show Cause Motion seeks to enjoin Defendants from intentionally destroying, damaging, selling or secreting the IP Assets during the pendency of this action based on Rule 64 and Delaware's replevin statute, 10 *Del. C.* § 9633(b). This is improper for three reasons.

First, replevin is not appropriate relief for claiming ownership of intellectual property. As this Court has held, "the law of replevin has long held that only tangible and corporeal objects may be replevied." *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 335 (D. Del. 2017) (Andrews, J.) (citation omitted). What PGC seeks to replevy, however, is *intangible* intellectual property, which both federal and state courts in Delaware have held cannot be replevied. *Boston Sci. Corp. v. Acacia Research Grp., LLC*, 2018 WL 3117549, at *3 (D. Del. June 25, 2018) (Andrews, J.) (defining "intellectual property" as a "category of intangible rights…") (citing Black's Law Dictionary (14th ed. 2014)); *Hughes Tool Co. v. Fawcett Publications, Inc.,* 315 A.2d 577, 579-80 (Del. 1974) (holding that a copyright is "not a material substance, but is an incorporeal right" and thus "cannot be recovered in an action at law" because "an action in replevin [] would, if successful, recover merely the physical manuscript."); *see also Hydrogen Master*, 228 F. Supp. 3d at 335 (seeking to return intangible data was "fatal to their conversion and replevin claims."); *Juju, Inc. v. Native Media, LLC,* 2020 WL 3208800, at *14 (D. Del. June 15, 2020), *report and recommendation adopted*, 2020 WL 4001059 (D. Del. July 15, 2020) (dismissing claim of conversion, noting, "[n]owhere in this claim does Plaintiff allege that any tangible object was 'converted' and should be returned; instead, it asserts only that intangible information (the

Registered User Data) was wrongfully obtained."); *Bush v. Hillman Land Co.,* 2 A.2d 133, 135-136 (Del. Ch. 1938) (holding that an action of replevin was unavailable to seize and cause delivery of shares of stock). Thus, the Show Cause Motion is improper as Rule 64 does not apply here.

Second, and notwithstanding the above, other district courts have seen through similar thinly-veiled attempts to misuse Rule 64 to reclaim property that is the subject of the lawsuit instead of to seize property to secure satisfaction of a potential judgment, as Rule 64 requires. Rule 64 serves "to secure a fund available to satisfy a judgment at the conclusion of the trial," not to "request the immediate return of the very subject of the lawsuit." *Melher Transp., Inc. v. Westfall Towing LLC*, 2021 WL 5339518, at *2 (S.D. Ohio June 7, 2021); *see also* Fed. R. Civ. P. 64 ("seizing … property to secure satisfaction of the potential judgment…"). In *Melher*, because "Plaintiffs d[id] not seek to secure a fund available to satisfy a judgment at the conclusion of the trial, nor d[id] they ask the Court to take possession of the property and hold it in trust," the Court denied a Rule 64 motion, dismissing arguments that the plaintiffs were "entitled to the property" and "suffering financial loss with each passing day" which "go to the ultimate issue of the case and are best left for dispositive motions or trial." *Id.; see also Tauwab v. Barry*, 2014 WL 4245967, at *10 (N.D. Ohio Aug. 25, 2014) (denying the Rule 64 motion where the plaintiffs requested the "immediate return of the very subject of the lawsuit" and simply "argue[d] the merits of the underlying claims"). PGC does the same, seeking the "*status quo ante*" (D.I. 29, ¶ 1), i.e., to take possession of the IP Assets, without demonstrating any need to "secure a fund available to satisfy a judgment at the conclusion of trial." *See Mehler*, 2021 WL 5339518, at *2; *Cent. Transp., LLC v. Atlas Towing, Inc*., 884 F. Supp. 2d 207, 222 (E.D. Pa. 2012) (Rule 64 provides for seizing a person or property to secure satisfaction of the potential judgment.). PGC does not want to secure satisfaction—it wants immediate possession of the subject of this lawsuit to allow them to sell

products during the "holiday selling season." (D.I. 29 at ¶ 6.)

Even if replevin were a proper claim *and* PGC's intention was to secure satisfaction, PGC's preferred case, *Yamaha*, undermines PGC's claim that it "need only satisfy the state procedural requirement of initiating a replevin action." (D.I. 13 at 11 (citing *Yamaha Motor Fin. Co., U.S.A. v. ML Country Club*, 2020 WL 7334189, at *2-3 (D.N.J. Dec. 14, 2020)).) The *Yamaha* court recognizes a distinction in its precedent; when "faced with motions for pre-judgment writs under Rule 64 *that were not accompanied by any motion for preliminary injunction*," courts have "simply applied the relevant New Jersey laws and standards." *Yamaha*, 2020 WL 7334189 at *2 (emphasis added). However, as pointed out by the defendant in *Yamaha*, and as recognized by the court, courts have "analyzed [] requests for writs of replevin by applying the same elements parties must demonstrate in moving for a preliminary injunction" when plaintiffs have simultaneously sought relief under Rule 65. *Id.* PGC falls into the latter category of precedent, as recognized by PGC's cited case, yet fails to address the elements of a PI in relation to its Show Cause Motion.

As such, for each of the reasons discussed above, PGC's Show Cause Motion is improper and must be denied.

### B. PGC's PI Motion Should be Denied

A preliminary injunction is "an extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (internal quotations omitted). PGC has a high burden, as it must establish that "[it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* (quotations omitted). PGC "*must* meet the threshold for the first two 'most critical' factors [of irreparable harm and success on the merits]." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (footnotes omitted; emphasis added). "If these gateway factors are met, a court then

considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id*. However, PGC failed to meet its high burden for this "extraordinary remedy," and thus PGC's alternate request for relief should be denied.

**1.      PGC Cannot Establish a Reasonable Likelihood of Success on the Merits**

As the Supreme Court has held, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). But in contending it has a reasonable likelihood of success on the merits, PGC treats it as if it were awarded as of right, overlooking key and obvious legal and factual fatalities in its position.

**a.      PGC Cannot Establish Conversion and Replevin Are Proper**

PGC moves for a PI based on a likelihood of success only as to its replevin claim. (D.I. 13 at 13.) As shown above, replevin (and conversion) are improper claims to determine the issues of intellectual property ownership. *See supra*, § V.A. Thus, PGC fails to meet this first, gatekeeping preliminary injunction factor, and therefore any requested relief should be denied. *Wilberger v. Joseph*, 2004 WL 1192692, *2 (D. Del. May 20, 2004) ("failure to meet any one of the factors is sufficient to deny relief.").

**b.      PGC Cannot Establish with Reasonable Certainty It Is the Owner of the IP Assets**

Notwithstanding that claims for replevin and conversion must fail as a matter of law, as discussed *supra*, PGC cannot otherwise establish a reasonable likelihood that it is the owner of the IP Assets. All PGC offers is one sentence in support of its "reasonable probability of eventual success" as to ownership: "PGC has established it owns the [IP Assets]: it purchased them from Shellco on October 24, 2024" pursuant to the Agreement for the Sale and Purchase of the Business

and Assets of Shellco 2021 Limited (in administration)" ("SPA").[5] (D.I. 13 at 13; D.I. 16, Ex. A.) PGC does not conduct a chain of title analysis, analyze the language of the SPA to determine whether title transferred, analyze the effect of the Default Action and Writ, the lack of federal registrations for some of the IP Assets. Individually and collectively, these arguments require denial of PGC's PI Motion seeking to enjoin Defendants from selling and using the IP Assets.

### i. *Title to Shellco's IP Did Not Transfer Under the SPA in Oct. 2024*

In its backdoor attack on Defendants' Default Judgment and Writ, PGC argues that it obtained title to the IP Assets on October 24, 2024, prior to the Default Judgment and Writ. (D.I. 13 at 13.) But it could not have because the SPA did not transfer title in October. The SPA states that "the Company (acting by the Administrators) <u>shall sell</u>" and "Purchaser <u>shall purchase</u> for the Consideration" certain assets including "Intellectual Property Rights," which includes domain names, websites, trademarks, and patents. (D.I. 16, Ex. A, § 2.1 (emphasis added).) Use of the term "shall" indicates no title is presently conveyed, instead it reflects a mere promise to assign rights in the future, requiring a subsequent written instrument to effectuate the transfer. *See, e.g., Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1365 (Fed. Cir. 2010) (use of the term "shall" in an Asset Purchase Agreement indicated transfer of the patents was to occur in the future); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) ("contract language 'agree to assign' reflects a mere promise to assign rights in the future, not an immediate transfer of expectant interests."). Section 6 of the SPA affirms this interpretation, requiring that the Purchaser, Company, and Administrators to execute a separate "IPR Assignment Deed." (D.I. 16, Ex. A, §§ 1.1 (definition), 6.2, 6.3.) The Furtherance Assurances Clause further requires the administrators to "execute and deliver all such

---

[5] Not until the commencement of this lawsuit did Defendants obtain a copy of the SPA. Dryfhout Decl., ¶ 21.

documents, and do whatever the Purchaser may reasonably require for the purpose of giving effect to the provisions of this Agreement…" (*Id.* at § 26.)

Not until June 2, 2025 was an "Intellectual Property Assignment" (the "IP Assignment") entered into between Shellco (in administration) and PGC; Mr. James Hopkirk signed on behalf of Shellco on June 2, 2025 and Ben Poynter on behalf of PGC on May 29, 2025. (D.I. 17, Ex. I.) This agreement refers to the SPA as the basis for entering the assignment, but title would not have transferred until the separate assignment agreement was executed to consummate the assignment.[6] Notably, PGC's Motion does not rely on this assignment document. PGC's entire premise for its preliminary injunction thus fails because it relies solely on the SPA as the basis for transferring title in October 2024.

### ii. *IP Assets Seized by the Writ Never Transferred to PGC and Were Sold at a Public Auction to Defendants*

PGC's Motion fails to acknowledge that Defendants obtained the Default Judgment and Writ and recorded it at the USPTO *before* Shellco attempted to transfer title of its intellectual property to PGC under the IP Assignment. Neither Shellco nor PGC moved to quash the Writ. Because the Writ seized the IP Assets in May 2025, the title to the IP Assets did not and could not transfer to PGC. Pursuant to Rule 69, on May 21, 2025, this Court issued the Writ seizing the IP Assets, preventing Shellco from disposing of those assets to ensure the property remained available to satisfy the Default Judgment. Dryfhout Decl., ¶ 15. Upon the entry of the Writ, Shellco had no ability to transfer the IP Assets. [7] Because the Writ was served on June 9, 2025 (Dryfhout Decl.,

---

[6] The assignment document does not list all of the IP Assets. *Compare* D.I. 17, Ex. I *with* D.I. 1, ¶ 87; *see also* Richey Decl., ¶¶ 3-6. In fact, the Trademark Assignment Cover Sheet filed by PGC in connection with the assignment document only lists eight (8) trademarks. (D.I. 17, Ex. I.)

[7] PCG's counsel declares under oath that Defendants "falsely" claimed the IP Assets belonged to Shellco at the time the Writ issued, (D.I. 17, ¶¶ 9, 11, 13), but as established above, the SPA did not transfer title nor had PGC or Shellco provided any proof of an assignment to Defendants. Dryfhout Decl., ¶ 21.

¶ 17), Shellco's administrator acknowledged receipt of the Writ on June 13, 2025 (Dryfhout Decl., ¶ 18), and the Writ had been on file with the USPTO since May 22, 2025 (Dryfhout Decl., ¶ 16), Shellco, its administrators, and PGC have no basis to claim it was not on notice, and knew that Shellco had no right to assign the intellectual property listed on the Writ. Nevertheless, Mr. Hopkirk and PGC purportedly entered into the June 2, 2025 assignment (D.I. 17, Ex. I) and sought to record the assignments at the USPTO on or after July 5, 2025, even though they were on notice of the Default Judgment and Writ.

Mr. Hopkirk was also made aware that the IP Assets would be sold as Defendants emailed him a Notice of Sale ten (10) days prior to the sale as required, on July 11, 2025. Dryfhout Decl., ¶ 19. On July 22, 2025, after a Marshal's Sale, the IP Assets were sold at public auction to Dryfhout Properties, LLC in partial satisfaction of the Default Judgment. Dryfhout Decl., ¶ 20. A Bill of Sale was issued by this Court, and subsequently filed with the USPTO. Dryfhout Decl., ¶ 22. Recordation of Defendants' ownership of the IP Assets was completed with the USPTO on July 29, 2025, and that same day, all interest in the IP Assets was assigned to Dryfhout Properties, LLC. Richey Decl., ¶¶ 3-4. Accordingly, Shellco's intellectual property subject to the Writ never transferred to PGC and was instead sold at a public auction to Defendants.

PGC argues the Court would not have issued the Writ had it known of the administrative proceedings in the UK and the SPA. But this Court was informed of the proceedings in multiple instances, for example, in the executed summons (*Shellco Action,* D.I. 5), the Request for Default (*Shellco Action*, D.I. 6), and Application for Writ (*Shellco Action.,* D.I. 10); *see also* Dryfhout Decl., ¶¶ 10, 11, Ex. F, Ex. G; D.I. 1, Ex. D. Yet this Court entered the Default Judgment against Shellco and granted Defendants' Motion for Writ. Dryfhout Decl., ¶¶ 12, 15. Shellco and its administrators chose not to appear in this Court. Shellco instead attempted to sell to the IP Assets

to its sister company in the pre-pack sale. No other party has moved to quash the Writ or attempted to prove that its alleged title is superior to Defendants' right to execute judgment on the IP Assets. The filing of this action is a clear attempt to play the "shell game" by transferring the IP Assets between commonly-owned subsidiaries in an effort to rebuff Defendants' efforts to collect on its judgment. In fact, the entire administrative proceeding was initiated to *specifically* to discharge Shellco's debt to Defendants while maintaining ownership of the IP Assets. Dryfhout Decl., Ex. C, ¶ 7.

### iii.     *The SPA Prevents PGC From Disputing the Default Judgment, Liens, Writ, or Bill of Sale*

Further, under the SPA, PGC assumed all risk that Shellco did not have good title to transfer and agreed to take title pursuant to any encumbrances, including any other third party right or interest—legal or equitable. Thus, PGC cannot claim that it was "unaware" of the U.S. proceedings, the Default Judgment, Writ, or Bill of Sale as a basis to nullify the transfer to Defendants in favor of PGC. The SPA provides that the Purchaser (PGC) shall purchase "such right title and interest the Company has or can transfer (if any) … in all the Assets." D.I. 16, Ex. A, § 2.1. This means that the Administrator will (on behalf of Shellco) *sell whatever rights, title and interest* Shellco has in any asset, including the IP Assets. No representations or warranties were given by the Administrators as they have no prior knowledge of the business and are unable to confirm to a purchaser what is being sold under a pre-pack sale. It is for the purchaser to ensure it is satisfied from a due diligence perspective on what it is buying. The SPA further confirms this:

> It is hereby acknowledged by the Purchaser [PGC] that the sole risk of there not being good title to the Assets and/or the sole risk of their being subject to an Encumbrance is the Purchaser's and its alone.

D.I. 16, Ex. A, § 2.2. "Encumbrance" is defined as:

> any mortgage, charge (fixed or floating), pledge, lien, hypothecation, guarantee, trust, right of set off, or other third party right or interest (legal or equitable)

including any assignment by way of security, reservation of title or other security interest of any kind, howsoever created or arising or any other agreement or arrangement having similar effect.

D.I. 16, Ex. A, § 1.1. Thus, PGC agreed to take title subject to any third-party rights or interests, legal or equitable, arising out of any other agreement . This includes Defendants' legal proceedings against Shellco in the U.S., and any resulting outcome. The SPA further provides that PGC:

will accept, without requisition or objection, such right, title and interest (if any) as the Company has in the Assets which shall be acquired by the Purchaser in their state, condition, and situation (whether inside or outside the United Kingdom) at Completion or, if later, the time of delivery to or possession by the Purchaser.

D.I. 16, Ex. A, § 2.3. PGC agreed to take title in the "state, condition, and situation" at the time of "Completion" or any later date at which time the title is delivered to PGC. This means that PGC can be in no better position than Shellco in claiming title to the IP Assets. Shellco agreed to convey whatever rights, title and interest, and PGC agreed to accept that risk. And as established above, the IP Assets were encumbered by the Default Judgment and Writ (and unable to be transferred) before title was transferred to PGC. Thus, PGC never received title from Shellco—because Shellco could not legally transfer title to PGC—and PGC voluntarily took that risk.

### iv. *Nevertheless, PGC Was on Notice of the Shellco Action and Writ Prior to the June 2025 Assignment*

PGC argues that because it was not notified of the Writ prior to June 2025, it has superior title to the IP Assets. Not only is this incorrect, as PGC assumed the risk that Shellco did not have title to the IP Assets, but this is also belayed by the fact that Defendants recorded the Writ at the USPTO (Dryfhout Decl., ¶ 16)—the very place for purchasers to review before purchasing intellectual property to determine whether title is clear. PGC was on inquiry notice to review the USPTO records to determine whether title was clear. The Writ was on file with the USPTO before any assignment from Shellco to PGC. Moreover, PGC and Shellco are sister subsidiaries. Ben Poynter, a director of both PGC and Olsam, by virtue of his Declaration filed in this matter (D.I.

16), cannot genuinely deny knowledge of Shellco's debt to Defendants or of the Shellco Action. Poynter declared that "[i]n his capacity as director of Olsam, [he] was informed about Shellco's marketing efforts," a "process [that] included discussions with the existing creditors of Shellco, including Defendants." (D.I. 16, ¶¶ 6, 7.) Shellco's administrators, with whom Mr. Poynter was dealing, were on notice of the lawsuit and chose not to appear. They were served with the Default Judgment and Writ, but chose not to challenge them. It is far-fetched that Mr. Poynter had no knowledge that Shellco did not have good title to the IP Assets due to the ongoing dealings between the Administrators and Mr. Poynter in relation to finalizing the pre-pack sale.

> ### v. *Even if SPA Conveyed Title in October 2024, SPA Is Void Against Defendants Because PGC Did Not Record Assignments Until After the Writ and the Sale is An Attempt to Defraud Creditors*

Even assuming arguendo that the SPA purported to convey title to PGC, PGC still is not the owner of the IP Assets because PGC failed to record its assignments at the USPTO within three months of the supposed October 2024 transfer; instead, it recorded its assignments after this Court issued a Writ, and even then only as to some of the IP Assets. Richey Decl., ¶¶ 3-6, Apps. I, II. This renders SPA or any subsequent recording void against Defendants. 35 U.S.C. § 261 ("An assignment is void against a subsequent bona fide purchaser for valuable consideration without notice, unless the assignment was recorded at the USPTO within three months of the assignment or before the subsequent purchase.") (patents); 15 U.S.C. § 1060 (trademarks). PGC contends that the IP Assets transferred to PGC on October 24, 2024 pursuant to the SPA (D.I. 13 at 13), however PGC failed to record its purported ownership at the USPTO within three months of the SPA. As of February 2025, PGC had not filed any assignment for the IP Assets at the USPTO (Richey Decl., ¶¶ 3-6, Apps. I, II), nor has PGC presented any proof that any assignment was recorded within three months of the SPA. Before PGC recorded any assignments at the USPTO, Defendants applied to this Court to issue a Writ as to the IP Assets, and this Court issued the Writ, preventing

Shellco from transferring the IP Assets. Dryfhout Decl., ¶¶ 13, 15. Only after issuance of the Writ did PGC file any assignments with the USPTO, and even then, only as to some of the IP Assets. Richey Decl., ¶¶ 3-6, Apps. I, II; D.I. 1 at ¶ 63 (PGC admitting that it did not file assignments for all IP Assets prior to July 29, 2025 the day Defendants filed its assignments). In fact, none of the USPTO records for the 18 patents identified in the Bill of Sale include an assignment to PGC. Richey Decl., ¶ 3, App. I.

The Lanham Act and Patent Act require that assignments be recorded and will construe a failure to record against the assignee in favor of a security, writ, or bona fide third-party. *See, e.g., Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991) ("the bona fide purchaser for value cuts off the rights of a prior assignee who has failed to record the prior assignment in the Patent and Trademark Office"). Further, as PGC never recorded an assignment as to some of the IP Assets (¶¶ 3-6s, Apps. I, II); thus, any attempt to do so now would be futile as Defendants have already obtained title through the Sale and recorded their assignments.

PGC argues that because Defendants "knew" that the IP Assets had been sold to PGC in October 2024, they had no right to request the Writ. In other words, PGC contends that because Defendants had notice that a pre-pack sale occurred, that Defendants were on "notice" of the assignments, regardless of whether PGC did not record any assignments until July 7, 2025 or ever. But Defendants did not have notice of any assignment in October 2024. Dryfhout Decl., ¶ 21; *see also* Richey Decl., ¶¶ 3-4, Apps. I, II. PGC relies on three pieces of information to prove "notice"— but none of these documents are assignments, nor do they identify any specific intellectual property or contain any language from which an assignment can be deduced. Notably PGC does not rely on the SPA to provide Defendants' notice because the SPA was never provided to Defendants until September when PGC's motion was served on Defendants. Dryfhout Decl., ¶ 21.

The October 30, 2024 letter states "I effected a sale of the Company's business and assets to [PGC]" through administrative proceedings in the UK. (D.I. 16, Ex. B.) No intellectual property is identified. This does not contain sufficient language to inform Defendants that an assignment had been entered into, and specifically, that title to the IP Assets had been assigned to PGC. Neither does the "SIP16 Statement" to which the letter refers; the SIP16 Statement simply states that a purchase of assets occurred. (D.I 17, ¶ 6, Ex. C.) At most, the letter would put Defendants on inquiry notice to check the USPTO for assignments, which they did and found none. Dryfhout Decl., ¶ 23. Whether Defendants could have "been put on notice by the filing of the Administrators Proposals at Companies House on November 14, 2024" (D.I. 13 at 5) is irrelevant and conjecture. Since USPTO assignment records create a presumption of ownership, *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010), Defendants were reasonable in searching those records, and those records alone, to see whether title was clear. Nevertheless, the Administrators Proposals do not identify any intellectual property that was assigned and merely state that most of Shellco's assets were sold to PGC. (D.I 17, ¶ 6, Ex. C.) Defendants periodically checked the USPTO website and no assignments were ever filed before the Writ, including after receiving the October 30, 2024 letter. Dryfhout Decl., ¶ 23.

The December 10, 2024 email from Defendants' attorney to Mr. Hopkirk simply acknowledged that a purported purchase had occurred, questioning its validity. (D.I. 18, Ex. A.) Absent any indication that the IP Assets were being sold to PGC, and considering language in the SPA, discussed *supra*, requiring a subsequent IP Assignment, knowledge of the transfer cannot be applied to Defendants.

In the absence of USPTO recordation prior to the Writ or actual knowledge of an assignment, Defendants cannot be charged with notice of any assignment in October 2024, even

if the SPA purported to assign title (which it does not).

Further, under the Delaware Uniform Fraudulent Transfer Act, Shellco's purported transfer to PGC is void as it was a fraudulent transfer. Sister companies PGC and Shellco purported to transfer the IP Assets with an intent to defraud, hinder, and/or delay Defendants' ability to execute on its eventual Default Judgment. Shortly after the transfer, Shellco became insolvent.

Thus, the SPA is void against Defendants, making Defendants the owner of the IP Assets.

### c. PGC's Failure to Show Likelihood of Ownership Is Fatal to PGC's Request to Enjoin Defendants' Use of the IP Assets

Even though PGC has not brought a claim for trademark or patent infringement, PGC seeks to enjoin Defendants' use of the IP Assets. Ownership is a prerequisite to proving infringement. Because PGC has not established a reasonable likelihood of success as to ownership of the IP assets, a prerequisite for asserting infringement and enjoining to use, as a matter of law, PGC is not entitled to enjoin use of the IP Assets. *Cf. Mercado-Salinas v. Bart Enters. Int'l, Ltd.*, 747 F. Supp. 2d 265, 274 (D.P.R.), *order amended on denial of reconsideration*, 747 F. Supp. 2d 275 (D.P.R. 2010), *aff'd*, 671 F.3d 12 (1st Cir. 2011), and *aff'd and remanded*, 671 F.3d 12 (1st Cir. 2011) (when faced with competing PIs, enjoining use of trademarks to the party establishing both ownership *and* likelihood of confusion, i.e. infringement).

### 2. Defendants are at Risk of Irreparable Harm, Not PGC

Because PGC has failed to demonstrate that it is likely to prevail on its replevin claim or claim of ownership to the IP Assets, the Court need not address its showing of irreparable harm. *Ponder v. Maaranu*, 2021 WL 4928452, *2 (D. Del. Oct. 21, 2021) (failure to establish any factor renders preliminary injunctive relief inappropriate.) Even if the Court were to consider PGC's irreparable harm arguments, PGC "'must make a clear showing that it is at risk of irreparable harm, which entails showing a likelihood of substantial and immediate irreparable injury.'" *Sunoco*

*Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, 2018 WL 395750, at *5 (D. Del. Jan. 8, 2018) (citation omitted).

PGC does not make a clear showing that it is at risk of irreparable harm because the irreparable harm here is actually Defendants. PGC has taken actions to use Defendants' IP Assets, irreparably harming Dryfhout Properties, the entity that currently owns the IP Assets. As such, it is filing its own motion for preliminary injunction to enjoin PGC's use of certain of the IP Assets. If this Court were to enjoin Defendants, Dryfhout Properties would be unable to sell purchased products using the IP Assets it owns.

Moreover, enjoining Defendants in this case would cause more irreparable harm to Defendants, as its denial would to PGC. Defendants litigated their claims against Shellco, PGC's sister company, and Defendants became the owner of the IP Assets through a public auction sanctioned by this Court. Because Defendants have submitted proof that they are the rightful owners of the IP Assets, a grant of PGC's motion for injunctive relief, or denial of Defendants' motion of injunctive relief, will cause irreparable harm to Defendants' use of the IP Assets. Although PGC is concerned that "Defendants [] can easily cripple PGC's Amazon Marketplace business by telling Amazon that PGC is infringing on "Defendants'" trademarks or patents," the actual infringer here is PGC. (D.I. 13 at 14.) PGC also states that "[a suspension of PGC's sales on Amazon Marketplace would cause massive damage to the company and potentially cripple it." *Id*. However, because of PGC's control of Amazon accounts and domains, Defendants are and will continue to lose sales to PGC especially during the holiday season if PGC is not enjoined. PGC's Motion should be denied because it failed to clearly show that PGC is irreparably harmed.

### 3. The Balance of Hardships Favor Defendants

Here, the balance of the equities favors Defendants. "A party seeking a preliminary injunction must show that ... granting preliminary relief will not result in even greater harm to the

nonmoving party." *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006); *Novartis Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) (comparing "the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued.").

PGC suggests "Defendants will not be harmed in any way by being prevented from using PGC's Trademarks, Patents, and Website Domains." (D.I. 13 at 15.) This willfully blind conclusion, however, is based on a faulty premise—that PGC owns the IP Assets. Because Defendants own the IP Assets, the converse is just as easily said: *PGC* will not be harmed in any way by being prevented from using the IP Assets that Dryfhout Properties LLC owns. While at first glance, it may appear that the balance of hardships is equal, here it tips strongly in favor of Defendants because Defendants have made a stronger showing on the merits that Dryfhout Properties LLC is the owner of the IP Assets.

Further, PGC's reference to maintaining the status quo (D.I. 13 at 15-16) is its own Achilles heel. PGC does not seek the status quo. Defendants already offered to refrain from destroying, damaging, selling, or secreting the IP. (D.I. 27-1 at 8.) PGC wants the *status quo ante*, but even then misconstrues what that means. (D.I. 29, ¶ 1.) PGC wants the Bill of Sale *and* the Writ reversed while enforcing the SPA. (D.I. 13 at 16 ("that status was PGC's ownership and possession of the [IP Assets] before Defendants seized them.").)[8] But *status quo ante* does not refer to maintaining any preceding situation; it refers to the last uncontested status which preceded the pending controversy, which here predates the SPA and removing any of PGC's potential interest in the IP

---

[8] If PGC seeks the last peaceable and uncontested point in time, that would be October 2024 when Defendants had reason to think they would receive the remaining ~$4M under the AAPA. PGC is welcome to take on that obligation.

Assets.[9] By seeking to enjoin Defendants' *use* of the IP Assets,[10] PGC's requested relief becomes overly broad; nothing pled in the Complaint entitles PGC to prevent another party from using the IP Assets. That would come in the form of an infringement claim, which PGC has not brought. For infringement, PGC must prove additional elements beyond ownership.

### 4. The Proposed Injunction Will Not Serve the Public Interest

The proposed injunction does not serve the public interest. PGC argues "the public interest certainly favors protecting the lawful owner of trademarks, patents and other properties." (D.I. 13 at 16.) Defendants agree, but that interest is not at risk here, as Defendants are the lawful owners of the IP Assets. However, dangerous precedent could be set by granting the requested injunctive relief, which weighs heavily against the public interest. First, it would set precedent that a Default Judgment and Writ can be ignored *post hoc* by a non-party to the original proceeding in an entirely separate lawsuit. Second, it affirms immoral business practices—encouraging a company to enter into a renegotiated IP contract, transferring the IP to a sister subsidiary at a massive discount[11] in the name of "entering administration," and leaving judgment creditors hung out to dry.

## VI. CONCLUSION

For the reasons set forth above, this Court should deny the relief requested by PGC. *Ponder,* 2021 WL 4928452 at *2.

---

[9] PGC also seeks to enjoin Defendants from using trademarks that have been cancelled or abandoned which are included in the IP Assets. Richey Decl., ¶ 4, Ex. II.

[10] Notably PGC's Proposed Order does include language enjoining "use" even though the Motion argues to enjoin PGC's use of the IP Assets. (D.I. 12 at 3.)

[11] As of December 31, 2022, Bakblade issued a financial statement indicating the value of the IP assets and goodwill exceeded £12 million. Dryfhout Decl., ¶ 24. The valuation it received under the SPA was less than £1,000,000. D.I. 1, Ex. C.

Dated: October 6, 2025

Respectfully submitted,

*Of Counsel:*

Carrie J. Richey
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2740
San Francisco, California 94111
Telephone: (415) 433-1900
carrie.richey@wbd-us.com

*/s/ Stephanie S. Riley*
Stephanie S. Riley (#5803)
Zachary Murphy (#6881)
Alexander P. Wharton (#7304)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
stephanie.riley@wbd-us.com
zachary.murphy@wbd-us.com
alexander.wharton@wbd-us.com

*Counsel to Dryfhout Enterprises, LLC,*
*Dryfhout Properties, LLC, Matthew Dryfhout,*
*and Angelina Dryfhout*