IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERSONAL GROOMING CO LIMITED,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>DRYFHOUT ENTERPRISES, LLC,<br>DRYFHOUT PROPERTIES, LLC,<br>MATTHEW DRYFHOUT, and<br>ANGELINA DRYFHOUT,<br><br>　　　　　　　Defendants. | Case No.: 1:25-cv-01047-RGA<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ORDER TO SHOW CAUSE FOR AN ORDER PROHIBITING DEFENDANTS FROM INTENTIONALLY DESTROYING, DAMAGING, SELLING OR SECRETING THE SEIZED PROPERTIES OR IN THE ALTERNATIVE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Of Counsel:

Joel H. Rosner
*Admitted Pro Hac Vice*
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Tel. (212) 216-8000
jrosner@tarterkrinsky.com

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
Wilmington, Delaware 19803
Tel. (302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiff*
*Personal Grooming Co Limited*

Dated: October 14, 2025

# TABLE OF CONTENTS

                                                     **Page**

PRELIMINARY STATEMENT ................................................................................ 1

 ARGUMENT ............................................................................................................ 2

   I. PGC IS THE RIGHTFUL OWNER OF THE SEIZED PROPERTIES ........................ 2

   II. DEFENDANTS WERE ON NOTICE OF THE SALE OF SHELLCO'S ASSETS TO PGC AS OF OCTOBER 30, 2024 ................................................................. 5

   II. THE COURT SHOULD ORDER DEFENDANTS NOT TO INTENTIONALLY DESTROY, DAMAGE, SELL OR SECRETE THE SEIZED PROPERTIES ................... 7

      A. PGC Can Pursue a Replevin Remedy ............................................... 7

      B. The Initiation of a Replevin Action Entitles PGC to the Requested Relief ... 8

   IV. THE COURT SHOULD ENJOIN DEFENDANTS FROM USING THE SEIZED PROPERTIES ................................................................................................. 9

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Harlan and Hollingworth Corp. v. McBride*,
    69 A.2d 9, 11 (Del. 1949)). ........................................................................................ 7

*Paul v. Sturevant,*
    2006 WL 1476888, at *1 ................................................................................................. 7

*Yamaha Motor Fin. Co., U.S.A. v. ML Country Club*,
    2020 WL 7334189, at *2-3 (D.N.J. Dec. 14, 2020)............................................................ 8

**Statutes**

15 U.S.C. § 1119................................................................................................................... 9

Plaintiff Personal Grooming Co Limited ("PGC"), through its undersigned counsel, submits this reply memorandum of law in further support of its proposed Order to Show Cause for an order under Rule 64 of the Federal Rules of Civil Procedure, applying Delaware law, to prohibit Defendants (and those acting in concert with them) from intentionally destroying, damaging, selling or secreting the properties they have seized from PGC, or, in the alternative, under Rule 65 of the Federal Rules of Civil Procedure, for temporary restraining order and preliminary injunction restraining Defendants (and those acting in concert with them) to cease and desist from any use of the seized properties, including not engaging in any acts to enforce purported rights in the seized properties against PGC or in any manner concerning it, and not selling, transferring, assigning or otherwise disposing of the seized properties pending the outcome of this lawsuit.

## PRELIMINARY STATEMENT

The central issue to decide in this case is who is the rightful owner of the Trademarks, Patents, and Website Domains. Defendants' opposition confirms they have no evidence to refute the fact that PGC is the rightful owner of those assets. PGC presented: (a) the declaration of PGC's director, confirming the purchase of Shellco's business and assets on October 24, 2024; (b) the Shellco administrator's October 30, 2024, letter to creditors (including Defendants), confirming the sale of Shellco's business and assets to PGC on October 24, 2024; (c) the SPA, the agreement by which PGC purchased Shellco's business and assets on October 24, 2024; and (d) Defendants' prior counsel's December 10, 2024, email to Shellco's administrators, acknowledging the sale to PGC. Instead of confronting this evidence, Defendants resort to misdirection: selectively quoting the SPA to falsely suggest the sale did not occur, falsely denying knowledge of the Shellco administrator's report on the sale of its business and assets, and falsely asserting they are bona fide purchasers for value. Indeed, Defendants are not purchasers at all, because on the date the U.S. Marshals Service purported to seize assets from Shellco, there was nothing to seize; Shellco had

1

transferred all those assets to PGC months earlier. Defendants knew of PGC's purchase of Shellco's business and assets by October 30, 2024, including all its intellectual property, and they admitted their knowledge of that sale on December 10, 2024. Yet Defendants knowingly concealed this information from the Court when they applied for a writ of execution. Defendants undoubtedly concealed Shellco's sale of its intellectual property assets to PGC because they knew if they disclosed it the Court would deny their application and direct them to pursue relief against PGC.

Having previously induced this Court to order the seizure of the Trademarks, Patents, and Website Domains, Defendants now insist this Court is powerless to again order the seizure of those properties and return them to their rightful owner. The Court should not countenance this blatant abuse of process. At a minimum, it should issue an order prohibiting them from taking any action to destroy, damage, sell, or secrete those properties. But the Court should also grant the additional injunctive relief PGC has requested, restraining Defendants from taking any action using the seized properties, as PGC has met every element required to obtain that relief: a strong likelihood of success on the merits; a showing of irreparable harm; a balance of interests favoring PGC; and the public interest also favoring PGC.

Accordingly, the Court should grant the relief requested and prevent Defendants from using the properties that do not belong to them.

## ARGUMENT

### I. PGC IS THE RIGHTFUL OWNER OF THE SEIZED PROPERTIES

PGC has established that it owns the Trademarks, Patents, and Website Domains. In its moving papers, it submitted a declaration from Ben Poynter, a director of PGC, who stated that PGC purchased the business and assets of Shellco on October 24, 2024. (D.I. 16 ¶ 3.) The same declaration also attached the SPA, the agreement by which PGC purchased the business and assets

2
17583130/1/EGREEK/146845-0001

of Shellco, (D.I. 16, Ex. A.), and the letter from Shellco's insolvency administrators to its creditors, dated October 30, 2024, reporting the completion of the sale of its business and assets to PGC on October 24, 2024, and transmitted the administrators' proposals and a report concerning the sale. (D.I. 16, Exs. B, C.)

Defendants have not refuted any of this evidence of PGC's ownership. Instead, they selectively quote from Section 2.1 of the SPA, which states that "the Company [Shellco] (acting by the Administrators) shall sell, and the Purchaser [PGC] shall purchase for the Consideration …" and argue that the use of the word "shall" in means only a future promise of transfer, not a present transfer of title that occurred on October 24, 2024. (D.I.. 37, at 9 (quoting D.I. 16, Ex. A § 2.1).) Defendants assert that title to the intellectual property assets of Shellco did not transfer until June 2, 2025.

But Defendants' argument conveniently ignores the express language of the SPA, which shows that the sale was to be completed on October 24, 2024, and that title to all assets transferred at that time. Section 1 of the SPA defines "Completion" as "the completion of the sale and purchase of the Assets pursuant to and in accordance with Clause 6 (Completion)." (*Id.* § 1.) "Effective Time" is defined as "the date and time of Completion." (*Id.*) "Assets" are defined as "all the property, assets and rights of the Company in relation to the Business including without limitation all the items listed in Clause 2.1 but excluding in each case the Excluded Assets." (*Id.*) Section 2.1.2 lists Shellco's "Intellectual Property Rights" as among the assets that are being sold to PGC, including its trademarks, patents, and website domains. (*Id.* § 2.1.2.) Section 6.1 provides, "Completion shall take place at the offices of the Administrators' Solicitors immediately after the execution of this Agreement or at such other place as the Parties may agree." (*Id.* § 6.1.) Section 7.1 provides that title to Shellco's assets would transfer upon completion of the sale, i.e.,

3

without the need for an assignment: "Such right, title and interest (if any) as the Company has in the Business and the Assets … shall pass to the Purchaser at the Effective Time." (*Id.* § 7.1.) Section 12.2 provides, "The Assets are sold in their condition and locations at the Effective Time." (*Id.* § 12.2.) Finally, the SPA states that it "has been executed as a deed and is delivered and takes effect on the date stated at the beginning of it," i.e., October 24, 2024. (*Id.* at 4, 50.)[1]

Furthermore, the October 30, 2024, report by Shellco's administrators to its creditors regarding the sale of its business and assets to PGC confirms that the sale completed on October 24, 2024. "I write to advise you that James Hopkirk and I were appointed Administrators of the Company on 24 October 2024 . . . shortly after appointment I effected a sale of the Company and assets to Personal Grooming Co Limited." (D.I.. 16, Ex. B, at 1.) That report also conveyed the "Administrators Proposals" and "SIP 16 Statement" to Shellco's creditors, which both confirm the sale occurred on October 24, 2024. The Administrators' Proposals state that, "[i]mmediately upon our appointment, the business and assets of the Company were sold to a connected party, Personal Grooming Co Limited. Attached to these proposals is a statement disclosing full details of the sale …." (D.I. 16, Ex. C, at 3.) Section 6.1 of the Administrators Proposals confirms Shellco's intellectual property assets, valued at £999,995, were sold, and the "Statement of Financial Affairs as at 24 October 2024" confirms that was the entirety of those intellectual property assets. (*Id.* at 10, 28.)

Defendants contend that title did not transfer until June 2, 2025, pointing to an assignment signed on that date by a Shellco administrator and Poynter. But that assignment itself explicitly refutes their contention, as it states that it merely memorializes a previous transfer: "The assignment of the intellectual property rights was agreed upon and formalized as of October 24th,

---

[1] As the SPA's internal page numbering is inconsistent, we are citing to the order of pages within the exhibit.

2024 and the Assignee acquired such right, title and interest in and to the Intellectual Property (if any) held by the Assignor and the registration thereof. This Intellectual Property Assignment memorializes the transfer and assignment of the Intellectual Property …." (D.I. 17, Ex. I, at 1.)

PGC acquired Shellco's business and assets, including its intellectual property assets, on October 24, 2024, and it is the rightful owner of them. Accordingly, Defendants' execution on those assets in May 2025 under the false pretense that they belonged to Shellco was unlawful.

## II. DEFENDANTS WERE ON NOTICE OF THE SALE OF SHELLCO'S ASSETS TO PGC AS OF OCTOBER 30, 2024

Defendants also contend that Shellco's sale of its assets to PGC on October 24, 2024, was ineffective against them because they did not have notice of the sale, and therefore they acquired Shellco's assets as a bona fide purchaser for value. This argument is a red herring. Defendants did not enter into a voluntary purchase agreement with Shellco. They obtained a writ in May 2025 to forcibly seize assets from Shellco. That writ could only seize assets Shellco actually possessed at that time. Even if Defendants were not aware of Shellco's sale when they obtained that writ of execution, the identified assets were not in Shellco's possession at that time and could not be seized from it.

However, Defendants had actual and constructive knowledge of the sale to PGC when they asked this Court for a writ against Shellco. They are not bona fide purchasers for value. Defendants admit in their Answer that they received the October 30, 2024, letter from Shellco's administrator, which reported on the sale to PGC. (D.I.. 36 ¶ 41.) But Defendants disingenuously contend that when Shellco's administrator stated in the letter that "I effected a sale of [Shellco's] business and assets to [PGC]," this was not sufficient to inform them that Shellco's intellectual property assets were part of the sale because the administrator did not identify each individual property. The ordinary meaning of "business and assets" adequately conveyed that the intellectual

5

property, core to the business, had been sold. But any genuine doubt Defendants might have had was erased when they reviewed the Administrators Proposals, which were made available to them by weblink in the October 30, 2024, letter and later filed publicly on November 14, 2024. As discussed above, those Proposals explicitly stated that the sale to PGC included all the intellectual property assets of Shellco. Defendants reviewed the Administrator Proposals sometime between October 30 and December 10, 2024, as their counsel's email to Shellco's administrator that day reflected their knowledge of the contents of the Proposals. (D.I. 18, Ex. A, at 3-4 ("The Proposals indicate there are no known bad debts … The Proposals do not include … my clients strongly object to the Administrators Proposals").) The December 10 email also repeatedly demonstrated Defendants' knowledge that Shellco's intellectual property assets had been sold by Shellco to PGC, by (a) stating "the Administration chose to sell the company," (b) complaining that the transfer of assets to PGC violated Defendants' previous agreements with Shellco, (c) asserting that "Olsam Opco previously owned the assets of Bakblade by virtue of its one hundred percent ownership of Bakblade. Olsam Opco is also the new owner of the assets by virtue of its one hundred percent ownership of the purchasing company," (d) referring to PGC as "the new owner," and (e) acknowledging that they had to seek legal action in order to have the sale set aside. (*Id.* at 2-4.)

Consequently, Defendants had actual knowledge of the sale of Shellco's intellectual property assets to PGC before they sought the writ of execution from this Court to seize those assets, or at minimum, were constructively aware those assets had been sold, given the extensive information provided to Defendants about the sale.

17583130/1/EGREEK/146845-0001

## III. THE COURT SHOULD ORDER DEFENDANTS NOT TO INTENTIONALLY DESTROY, DAMAGE, SELL OR SECRETE THE SEIZED PROPERTIES

### A. PGC Can Pursue a Replevin Remedy

Contrary to Defendants' argument, PGC can pursue the replevin of its wrongfully seized property.[2] "Replevin is primarily a form of action for the recovery of possession of personal property which has been taken or withheld from the owner unlawfully." *Paul v. Sturevant*, No. 05-07-0135AP, 2006 WL 1476888, at *1 (citing *Harlan and Hollingworth Corp. v. McBride*, 69 A.2d 9, 11 (Del. 1949)). "Replevin may be brought to recover any specific property unlawfully detained from the owner thereof . . . Examples of the type of goods and chattels which may be recovered include deeds, . . . certificates of deposit, stock certificates, and promissory notes." *Id.* at *2. That is, replevin may be had over items, such as stock certificates, which are intangible goods merged into a document, such as the registered trademarks, issued patents, and written applications at issue. Furthermore, nothing in the Delaware replevin statute limits the relief available to tangible property. 10 Del. C. §§ 9631 *et seq.* Defendants have not cited any case holding that registered trademarks and issued patents cannot be replevied.

Regardless, the doctrine of judicial estoppel bars Defendants from denying that the Court has the authority to seize the properties at issue from Defendants and return them to PGC. "Though there is no rigid test for judicial estoppel, three factors inform a federal court's decision whether to apply it: there must be (1) "irreconcilably inconsistent positions;" (2) "adopted ... in bad faith;" and (3) "a showing that ... estoppel ... address[es] the harm and ... no lesser sanction [is] sufficient." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (quotation omitted). Defendants previously successfully argued to this Court that it could authorize the seizure of those

---

[2] PGC can also pursue its conversion claim against the properties at issue. But as Defendants contend in their recently-filed counterclaims that they still possess all those properties, the conversion claim need not be addressed at this time.

7

very same properties, characterizing them as "personal property." (D.I.. 17, Ex. D.) The U.S. Marshals Service was then sent out to, and did, seize the properties. Defendants should not be allowed to now take the opposite position and argue that the Marshals Service is unable to seize the properties at issue. If the Marshals Service cannot do so, then their earlier seizure was void and the properties still belong to PGC. Defendants' position amounts to a "heads I win, tails you lose" argument: the Court had power to seize the properties for them, but now lacks power to return them. Defendants cannot have it both ways.

### B. The Initiation of a Replevin Action Entitles PGC to the Requested Relief

Defendants object to PGC's request for relief under the Delaware replevin statute and Rule 64 of the Federal Rules of Civil Procedure, claiming that PGC is asking the Court to grant replevin—"immediate possession of the subject of this lawsuit." (D.I.. 37, at 6.) But PGC is not asking for final judgment; it seeks only the standard, provisional relief afforded by Delaware's replevin statute, namely, to prohibit Defendants from destroying, damaging, selling, or secreting the seized properties. 10 Del. C. §§ 9631 (plaintiff entitled to a directive for such relief upon initiating a replevin action). This is necessary to secure the properties seized by Defendants for satisfaction of a judgment returning them to PGC and can be granted under Rule 64.

Defendants misconstrue the holding in *Yamaha Motor Fin. Co., U.S.A. v. ML Country Club*, No. 1: 20-cv-04696, 2020 WL 7334189, at *2-3 (D.N.J. Dec. 14, 2020), which held that under Rule 64 a court can grant a request under a state replevin statute so long as compliance with state requirements are shown, without the need to show the elements required under Rule 65. Contrary to Defendants' argument, the *Yamaha* court did not hold that such requests had to satisfy Rule 65 if joined with a separate request for Rule 65 relief. The court merely noted that other courts had required compliance with Rule 65 because the requests in those cases were expressly made pursuant to Rule 65 rather than under Rule 64, e.g., "The plaintiff in VW Credit filed an

8

application for 'preliminary injunctive relief of an Order of Possession and Writ of Replevin.'" *Id.* at *2. The court, noting that there would be no need for Rule 64 if all requests had to be made under Rule 65, held, "the structure and plain language of the Rules, when read side by side, counsel that certain unique common law pre-judgment remedies may be sought under Rule 64 and not solely under Rule 65." *Id.* at *3.

Accordingly, the Court should issue an order under Rule 64, directing Defendants "not to intentionally destroy, damage, sell or secrete" the Trademarks, Patents, and Website Domains they have seized from PGC.

## IV. THE COURT SHOULD ENJOIN DEFENDANTS FROM USING THE SEIZED PROPERTIES

Defendants' opposition to the injunctive relief sought by PGC relies completely on their faulty premise that they are the lawful owners of the Trademarks, Patents, and Website Domains. Their only objection is that, because Defendants own the properties, they have a likelihood of success, they will be harmed by an injunction, the balance of hardships favors them, and an injunction is not in the public interest. But PGC has shown that it is the owner of those properties and acquired them months before Defendants sought to execute against Shellco. PGC has also shown that Defendants knew of the sale to PGC. Therefore, as set forth in its moving papers, PGC has satisfied the requirements to obtain injunctive relief against Defendants. (D.I.. 13, at 12-16.) Among other things, PGC has a strong probability of prevailing on its claims. Even if the Court found replevin to be unavailable, PGC also seeks a declaratory judgment that PGC owns the Trademarks, Patents, and Website Domains and that Defendants may not take action against those properties to enforce a judgment against Shellco and all such efforts are void. (This can be accomplished, among other methods, under 15 U.S.C. § 1119, which gives the Court the power to alter the ownership of trademark registrations.) Furthermore, the threat of irreparable harm is not

theoretical. Defendants' own counterclaims confirm they are already—or will shortly be—using the seized trademarks to sell competing goods, as Defendants have raised counterclaims against PGC for trademark infringement and false advertising and they are selling goods bearing the seized trademarks in the same channels of trade as PGC. (D.I.. 36, Counterclaims, ¶ 43; *see generally*, D.I.. 36, Counterclaims, ¶¶ 39-54.)

Accordingly, the Court should enjoin Defendants from making any use of PGC's Trademarks, Patents, and Website Domains pending the outcome of this lawsuit.

## **CONCLUSION**

For the foregoing reasons, the Court should grant PGC's motion in its entirety, together with such other and further relief as the Court may deem just and proper.

Dated: October 14, 2025

*Of Counsel:*

Joel H. Rosner
*Admitted Pro Hac Vice*
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Tel. (212) 216-8000
jrosner@tarterkrinsky.com

  /s/ *Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
Wilmington, Delaware 19803
Tel. (302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiff*
*Personal Grooming Co Limited*

10