# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERSONAL GROOMING CO LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>DRYFHOUT ENTERPRISES, LLC,<br>DRYFHOUT PROPERTIES, LLC,<br>MATTHEW DRYFHOUT, and<br>ANGELINA DRYFHOUT,<br><br>Defendants. | Case No.: 1:25-cv-01047-RGA |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT DRYFHOUT PROPERTIES, LLC'S COUNTERCLAIMS AND TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSE OF FRAUDULENT TRANSFER

OF COUNSEL:

Joel H. Rosner
*Admitted Pro Hac Vice*
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Tel. (212) 216-8000
jrosner@tarterkrinsky.com

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
Wilmington, DE  19803
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiff*
*Personal Grooming Co Limited*

Dated: November 10, 2025

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .............................................................................................................................. 3

    I. THE COURT SHOULD DISMISS THE COUNTERCLAIMS AND STRIKE THE AFFIRMATIVE DEFENSE OF FRAUDULENT TRANSFER ............................................ 3

        A. The Delaware Fraudulent Transfer Counterclaim Should be Dismissed Because It Does Not Apply to Conduct Outside Delaware and DP Fails to Adequately Allege Actual or Constructive Fraud ................................................................................................ 4

            1. The Delaware Statute Does Not Apply to Alleged Fraudulent Transfers Conducted Entirely in the United Kingdom ........................................................ 4

            2. DP Fails to Allege Actual or Constructively Fraudulent Transfers ................ 6

        B. The Court Should Strike the Fraudulent Transfer Affirmative Defense ...................... 10

        C. The Trademark Infringement and False Designation of Origin Counterclaims Should be Dismissed Because DP Does Not Own the Trademarks is Not Operating a Business, and Acquired any Rights Through Unclean Hands ........................................................... 11

CONCLUSION ........................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000) ................................................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009). ........................................................................................................ 4, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 4

*Buck v. Hampton Twp. School Dist.*,
  452 F.3d 256 (3d Cir. 2006) ................................................................................................ 4

*Burkhart v. Genworth Fin., Inc.*,
  275 A.3d 1259 ..................................................................................................................... 6

*Cipollone v. Liggett Group, Inc.*,
  789 F.2d 18 (3d Cir. 1986). ............................................................................................... 10

*Davis v. Abington Memorial Hosp.*,
  765 F.3d 236 (3d Cir. 2014) ................................................................................................ 3

*FdG Logistics LLC v. A&R Logistics Holdings, Inc.*,
  131 A.3d 842 ............................................................................................................ 4, 5, 10

*Focus Financial Partners, LLC v. Holsopple*,
  250 A.3d 939 (Del. Ch. 2020) ............................................................................................. 4

*In re Nortel Networks, Inc.*,
  669 F.3d 128 (3d Cir. 2011) ................................................................................................ 7

*Industria de Alimentos Zenu S.A.S. v. Latinfood US Corp.*,
  679 F. Supp. 3d 53 (D.N.J. 2023) ...................................................................................... 13

*James v. City of Wilkes-Barre*,
  700 F.3d 675 (3d Cir. 2012) ............................................................................................ 4, 6

*Joint Stock Soc'y v. UDV N. Am., Inc.*,
  53 F. Supp. 2d 692 (D. Del. 1999) .................................................................................... 13

*Lexington Ins. Co. v. Forrest*,
  263 F. Supp. 2d 986, (E.D. Pa. 2003). ................................................................................ 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118, 134 S. Ct. 1377 (2014) ............................................................................... 13

*Singer v. Magnavox Co.*,
    380 A.2d 969 ....................................................................................................................... 4

*vMedex, Inc. v. TDS Operating, Inc.*,
    2020 WL 4925512, at *10 (D. Del. Aug. 21, 2020) ............................................................. 6

**Statutes**

6 Del. C. § 1304(a)(1) ................................................................................................................... 6

6 Del. C. § 1304(a)(2) ................................................................................................................... 6

15 U.S.C. § 1114 ......................................................................................................................... 11

15 U.S.C. § 1125(a)(1)(A) .......................................................................................................... 11

Plaintiff Personal Grooming Co Limited ("PGC"), through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss Defendant Dryfhout Properties, LLC's ("DP") counterclaims and to strike Defendants' affirmative defense of fraudulent transfer.

## PRELIMINARY STATEMENT

The record in this case has made the following pertinent facts clear, which demonstrate that DP's counterclaims (and Defendants' affirmative defense) are meritless and should be dismissed:

- PGC, a UK company, purchased all the intellectual property rights and assets of Shellco 2021 Limited ("Shellco"), a UK company, on October 24, 2024, including those concerning the "Bakblade" business, in a sale by the independent, court-supervised UK administrators who control Shellco in its UK insolvency proceeding. (D.I. 16, Exs. A, B, C; D.I. 60, ¶¶ 3, 5-13 & Ex. A.)

- Defendants were notified of the sale to PGC by October 30, 2024. (D.I. 36, Answer, ¶ 41; D.I. 1, Ex. B.)

- Defendants received and reviewed the Administrators Proposals document (including its attached "SIP 16 Statement") issued by Shellco's administrators, which described the sale to PGC in extensive detail, including what PGC purchased, the value of that property (which was less than the consideration given by PGC), and the process by which the sale occurred. The Administrators Proposals/SIP 16 statement was made available to Defendants by a Shellco administrator on October 30, 2024, was published publicly by November 14, 2024, and was reviewed by Defendants' prior counsel on December 8, 2024. (D.I. 36, Answer, ¶ 42; D.I. 16, Ex. C; D.I. 18, Ex. A; D.I. 38, Ex. G, internal Ex. B, at 14.)

1

- Both the Amazon storefront and the website for the Bakblade business (bakblade.com) were updated by November 3, 2024, to show that PGC owned the Bakblade business. (D.I. 60 ¶¶ 15-20 & Exs. B, C, D.)

- On December 10, 2024, Defendants' prior counsel wrote to Shellco's administrators to complain about the sale of the Bakblade business to PGC, which counsel contended was a fraudulent transfer of Shellco's assets, including the intellectual property rights and assets Shellco had acquired from Defendants. (D.I. 18, Ex. A.) Counsel also commented on the contents of the Administrators' Proposals. (*Id.*)

- On May 6, 2025, Defendants' prior counsel applied for a writ of execution to this Court, requesting that it approve the seizure of intellectual property rights and assets for the Bakblade business from Shellco. (D.I. 1, Ex. D.) Defendants did not inform the Court that PGC had purchased those rights and assets months earlier. (*Id.*) Defendants also did not serve PGC with the request for execution. (D.I. 36, Counterclaims, ¶ 20.) Relying on Defendants' false representations and unaware of the concealed information, the Court issued the writ of execution. (D.I. 1, Ex. E.)

- On October 6, 2025, Defendants for the first time established a website to sell their products. (D.I. 59, ¶ 4 & Ex. H.) Their website, bakbladeco.com, copied the similar name of PGC's website, bakblade.com, and copied the design and content of PGC's site so extensively that PGC's name and information appeared all over Defendants' site. (D.I. 59, ¶¶ 2-3 & Exs. A, B, C, D, E, F, G.)

- That same day, October 6, Defendants filed counterclaims asserting that PGC was interfering with Defendants' sales of their products. (D.I. 36, Counterclaims.)

2

In short, in a transaction taking place in the UK and solely involving UK entities and individuals, PGC acquired ownership of the Bakblade business and all associated intellectual property rights and assets in October 2024 from Shellco through a sale by Shellco's administrators, and Defendants knew about that sale to PGC. Yet Defendants nevertheless falsely misrepresented to the Court that Shellco owned that intellectual property and assets so Defendants could purport to seize them from an entity they knew had long since stopped possessing them.

Consequently, the Court should dismiss DP's counterclaims and strike Defendants' affirmative defense of fraudulent transfer. DP's counterclaim under the Delaware Uniform Fraudulent Transfer Act ("DUFTA") should be dismissed because that statute does not apply to the alleged transfer, which occurred entirely in the UK, and DP fails to allege facts supporting actual or constructively fraudulent transfers, including because this was an independent sale by a court-supervised administrator and reasonably equivalent value was provided by PGC when it acquired the Shellco intellectual property rights and assets. Defendants' factually identical affirmative defense asserted under DUFTA should be stricken for the same reasons. DP's counterclaims for trademark infringement and false designation of origin should be dismissed because DP cannot satisfy the fundamental element of its claims: ownership of the trademarks it claims are being infringed or falsely used. In addition, as DP does not allege facts showing it has an actual business that could be harmed by PGC, and the documentary evidence proves otherwise, it cannot maintain either of its trademark-related claims.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE COUNTERCLAIMS AND STRIKE THE AFFIRMATIVE DEFENSE OF FRAUDULENT TRANSFER

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Davis v. Abington Memorial*

3

*Hosp.*, 765 F.3d 236, 240 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 241 (quoting *id.*). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[W]e disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012).

"In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint . . . any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quotation omitted).

### A. The Delaware Fraudulent Transfer Counterclaim Should be Dismissed Because It Does Not Apply to Conduct Outside Delaware and DP Fails to Adequately Allege Actual or Constructive Fraud

#### 1. The Delaware Statute Does Not Apply to Alleged Fraudulent Transfers Conducted Entirely in the United Kingdom

Under Delaware law, there is "a presumption that a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted." *FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 852-53 (Del. Ch. 2016) (quoting *Singer v. Magnavox Co.*, 380 A.2d 969, 981 (Del. 1977)). The Delaware courts have held that Delaware statutes apply only "where there is a sufficient nexus between Delaware and the transaction at issue." *Id.* at 853. "[A]bsent clear legislative intent, it is impermissible to punish an individual under Delaware law for an action

4

occurring exclusively in another state." *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del. Ch. 2020) (quotation omitted).

Here, there is no Delaware nexus at all. DP alleges that PGC's purchase of Shellco's assets was a fraudulent transfer that violated DUFTA. (D.I. 36, Counterclaims, ¶¶ 56-59.) But DP does not allege that any conduct concerning that purchase occurred in Delaware. (*Id.*) Rather, the purchase took place entirely in the United Kingdom. As stated in the "Agreement for the Sale and Purchase of the Business and Assets of Shellco 2021 Limited (in administration)" ("SPA"), the "Sale and Purchase Agreement" that DP relies on as the basis for its claim (and has been previously filed in the record), all the participants in PGC's purchase of Shellco's business and assets are located in the UK: PGC and Shellco are UK companies and are headquartered there and Shellco's administrators, James Hopkirk and Andrew Tate, are UK insolvency practitioners who were appointed under the UK's Insolvency Act of 1986. (D.I. 36, Counterclaims, ¶ 56 (alleging the transfer under the SPA was fraudulent; D.I. 16, Ex. A, at 4[1]; *see also* D.I. 36, Counterclaims, ¶ 3 (alleging PGC is a UK company headquartered in the UK).) The closing of PGC's purchase occurred in the UK, at the offices of the solicitors for Shellco's administrators. (D.I. 16, Ex. A, §§ 1.1, 6.1.) And, the SPA is governed by English law and has a forum selection provision requiring suit in the English courts. (*Id.* § 27.) Furthermore, none of the Defendants reside in or are incorporated in Delaware. (D.I. 36 ¶¶ 3-7.)

Under these circumstances, DP's DUFTA fraudulent transfer counterclaim is inapplicable to PGC's purchase of assets. *See, e.g.*, *FdG*, 131 A.3d at 853-54 (dismissing a claim under the Delaware Securities Act because "[n]o negotiations concerning the merger are alleged to have

---

[1] As the SPA's internally-marked page numbering is not consecutive and does not number certain pages, citations to page numbers are counted from the first page of the document.

5

taken place in Delaware, and none of the allegedly underlying fraudulent business practices or violations is alleged to have occurred in Delaware"). Accordingly, the counterclaim should be dismissed.

### 2. DP Fails to Allege Actual or Constructively Fraudulent Transfers

"The DUFTA protects a 'creditor' from two types of fraudulent transfers." *Burkhart v. Genworth Financial, Inc.*, 275 A.3d 1259, 1269 (Del. Ch. 2022). "First, 6 Del. C. § 1304(a)(1) prohibits 'transfer[s]' by debtors that are made 'with actual intent to hinder, delay or defraud' ('actual fraudulent transfers')." *Id.* "Second, 6 Del. C. § 1304(a)(2) prohibits 'transfer[s]' by debtors where the debtor (i) did not receive 'reasonably equivalent value' and (ii) was rendered insolvent ('constructively fraudulent transfers')." *Id.* A party alleging an actual fraudulent transfer in "violation of the Delaware UFTA must meet the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure by showing a defendant's 'intent to defraud with specific supporting facts describing the circumstances of the transfer.'" *vMedex, Inc. v. TDS Operating, Inc.*, No. 18-1662, 2020 WL 4925512, at *10 (D. Del. Aug. 21, 2020).

DP fails to plead facts showing an actual or constructively fraudulent transfer. DP alleges that there were "badges of fraud" associated with the transfer to PGC, but other than asserting that PGC is a "sister company" of Shellco and thus supposedly an insider, DP states only conclusions, which are insufficient to withstand a motion to dismiss. *James*, 700 F.3d at 681 (conclusory statements in pleadings are disregarded on a motion to dismiss). Indeed, DP has failed to provide even the most basic details regarding the transfer, let alone facts sufficient to "show[] a defendant's intent to defraud with specific supporting facts describing the circumstances of the transfer." It does not plead when the transfer took place, the circumstances of the transfer, or what consideration was given for the transfer. Nor has DP pleaded facts to support the claim that the transaction was motivated by "actual intent" to hinder, delay, or defraud it, or even that the

6

transaction actually has prevented DP from enforcing its judgment against Shellco. DP also does not allege any facts that show PGC did not give Shellco reasonably equivalent value for the assets it purchased; it merely recites the formulaic elements of the claim. *Ashcroft*, 556 U.S. at 678 ("A pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.").

Consequently, DP fails to state a claim for fraudulent transfer.

But even if DP had attempted to plead facts supporting its claim, any assertion of impropriety would be refuted by the SPA and by the Administrators Proposals and SIP 16 Statement, which are part of the documentation of the transfer that is the basis for DP's claim, were received by Defendants' counsel before December 10, 2024, when it complained about the sale and the Administrators Proposals to PGC ten months before DP raised its fraudulent transfer counterclaim in this action, and are already in the record. (D.I. 38, Ex. G, internal Ex. B, at 14; D.I. 18, Ex. A.) Those materials show that DP was given extensive information about the sale to PGC and that there was nothing unlawful about it.

Shellco went into administration in the UK on October 24, 2024, and administrators were appointed over it. (D.I. 36, Counterclaims, ¶ 15.) Administration is "the British equivalent of bankruptcy." *Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 991 (E.D. Pa. 2003). An administrator is similar in function to a bankruptcy trustee. An administrator is "appointed . . . to manage the company's affairs, business and property." Insolvency Act 1986, sch. B1 ¶ 1(1) (U.K.); *see also In re Nortel Networks, Inc.*, 669 F.3d 128, 131 n.2 (3d Cir. 2011) (discussing court-appointed administrators, "Under U.K. law, the court appoints a person ('the administrator') to manage 'the affairs, business and property of the company' during the period that the company is in administration.") "An administrator is an officer of the court" who is required to "perform his

7

functions in the interests of the company's creditors as a whole." Insolvency Act 1986, sch. B1 ¶¶ 3(2, 5) (U.K.). DP acknowledges that Shellco's administrators are independent of Shellco, distinguishing between them in its counterclaims. (*Id.* ¶ 17 ("Neither Shellco nor its administrators . . .."); ¶ 24 ("At no time did Shellco, or its administrators appear . . ..").) An administrator is permitted to sell assets of a company in administration to a "connected person," defined as, among other things, a company connected with the company in administration through a common director or common ownership. Insolvency Act 1986, sch. B1 ¶ 60A3 (U.K.); The Administration (Restrictions on Disposal etc. to Connected Persons) Regulations 2021 (U.K.).

The Administrators Proposals describe the administrators' authority over Shellco and the reasons for the sale of Shellco's business and assets:

> As Joint Administrator I am an officer of the Court, and must perform my duties in the interests of the creditors as a whole in order to achieve the purpose of the Administration, which is to achieve one of the three objectives set out in the insolvency legislation, namely to:
>
> > (a) rescue the Company as a going concern; or
> > (b) achieve a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration); or
> > (c) realise property in order to make a distribution to one or more secured or preferential creditors.
>
> . . .
>
> In this case I intend to pursue Objective (b). I consider that the Administration represents the best result for the Creditors generally, and I believe that the Pre-Pack sale has enhanced the level of funds which will be payable to unsecured creditors under the Prescribed Part.
>
> . . .
>
> The objective has been achieved by the sale of business and certain assets described below and in greater detail in the SIP 16 Statement.
>
> . . .
>
> I have completed the pre-pack sale of the business and the majority of the assets, as detailed in the attached disclosure report.

(D.I. 16, Ex. C, §§ 4-5.)

8

The "SIP16 Statement" attached to the Administrators Proposals also described the value of the assets that were sold to PGC. Specifically, the administrators retained a company, Hilco Valuation Services, which valued Shellco's business and assets as between £1,000,000 and £1,075,000. (D.I. 16, Ex. C, at 39-40.[2]) PGC, described as a "connected party," offered consideration of £1,300,000—more than valuation of Shellco's business and assets—and was the highest bidder. (*Id.* at 41-43.) Following UK regulations on sales to connected parties, the administrators then retained an "independent person known as an evaluator," who was required to assess the reasonableness of the consideration being offered to PGC. (*Id.* at 44-52.) That evaluator confirmed the reasonableness of PGC's offer. (*Id.* at 52.) PGC then purchased the business and assets of Shellco from its administrators for the offered consideration of £1,300,000. (D.I. 16, Ex. A § 3.)

Therefore, none of DP's conclusory allegations about badges of fraud can carry any weight. This was not a private sale of assets. Nor was the sale concealed from Defendants—they admit receiving the October 30, 2024, letter from Shellco's administrators disclosing the sale of Shellco's business and assets to PGC. (D.I. 36, Answer, ¶ 41; D.I. 1, Ex. B.) This was a sale by court-supervised, independent administrators exercising their authority under UK law to sell the assets of a company in administration to achieve the best result for the company's creditors. It is no different from a bankruptcy trustee's sale of a debtor's assets. It defies logic to argue that such a sale could be considered an actively (or constructively) fraudulent transfer, even if that sale went to an insider or corporate affiliate, particularly where the purchaser provided reasonably equivalent value to the bankruptcy estate. The trustee is not the debtor; it is not liable on any debt of the

---

[2] As the Administrators Proposals' internally-marked page numbering is not consecutive and does not number certain pages, citations to page numbers are counted from the first page of the document.

9

debtor. Transfers from a non-debtor do not violate fraudulent transfer law. *Burkhart*, 275 A.3d at 1269 (DUFTA does not apply to transactions by non-debtors). So too with an administrator.

Moreover, Delaware state law cannot purport to govern the actions of a UK administrator, acting under UK law in the UK to sell assets from one UK entity to another UK entity.

Accordingly, the Court should dismiss the fraudulent transfer counterclaim.

### B.      The Court Should Strike the Fraudulent Transfer Affirmative Defense

Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Third Circuit has held that "a court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). Here, the insufficiency of Defendants' Ninth Affirmative Defense of fraudulent transfer is clearly apparent. That defense is nearly word-for-word identical to DP's fraudulent transfer counterclaim—the only difference is that the counterclaim adds "Alternatively" at the beginning—and thus lives or dies on the same grounds. The affirmative defense, like the counterclaim, is expressly asserted under DUFTA. Consequently, it clearly is insufficient, as the Delaware statute does not apply to the alleged fraudulent transfer because there is no "nexus between Delaware and the transaction at issue." *FdG*, 131 A.3d at 853. The defense, like the counterclaim, does not assert that any conduct concerning PGC's purchase of Shellco's business and assets occurred in Delaware. (D.I. 36, at 36.) Rather, the purchase took place entirely in the United Kingdom, between UK entities and UK administrators under the aegis of a UK insolvency proceeding. Moreover, the fraudulent transfer affirmative defense, like the counterclaim, is entirely devoid of factual detail that could support a claim of actual or constructive fraudulent transfer. On the contrary, the facts already in the record demonstrate that the transfer was made by Shellco's administrators, who are not debtors of Defendants, that PGC provided reasonably

10

equivalent value in exchange for the transfer, and that the entire transaction took place pursuant to the administrators' lawful authority under the UK'S Insolvency Act 1986. As the allegedly fraudulent transaction took place entirely in the UK, as none of the Defendants reside in or are incorporated in Delaware, (D.I. 36 ¶¶ 3-7), and as Defendants have failed to set forth sufficient factual detail to support their defense, the fraudulent transfer affirmative defense is clearly insufficient and should be dismissed.

### C. The Trademark Infringement and False Designation of Origin Counterclaims Should be Dismissed Because DP Does Not Own the Trademarks is Not Operating a Business, and Acquired any Rights Through Unclean Hands

To prove a claim for trademark infringement under 15 U.S.C. § 1114 or a claim for false designation of origin under 15 U.S.C. § 1125(a)(1)(A), a claimant "must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (trademark infringement under 15 U.S.C. § 1114 and unfair competition under 15 U.S.C. § 1125(a)(1)(A) are measured by identical standards).

DP has not pleaded facts sufficient to satisfy the key element on its Lanham Act claims that it owns the trademarks at issue, which concern the Bakblade business. DP alleges that it acquired the trademarks by obtaining a writ of execution issued by this Court on May 21, 2025, to seize those marks from Shellco, which DP then purchased on July 22, 2025. (D.I. 36 ¶¶ 20, 22.) But any writ of execution DP served on Shellco's administrators or after May 21, 2025, to seize those trademarks from Shellco was ineffective because it no longer possessed them: PGC acquired possession and ownership of those marks on October 24, 2024 pursuant to the SPA (which DP relies on to assert its fraudulent transfer counterclaim) and the Deed of Assignment of Intellectual

11

Property Rights and Goodwill ("IP Assignment Deed") delivered in connection with the SPA, both of which are already in the record. (D.I. 16, Ex. A; D.I. 60, Ex. A.)

DP admits Defendants sold the trademarks at issue to Shellco in October 2022 pursuant to an Asset Purchase Agreement. (D.I. 36 ¶¶ 7-8.) The Asset Purchase Agreement expressly provides that Shellco acquired all Defendants' "Intellectual Property Assets." (D.I. 38, Ex. A §§ 1.01(a)(ii), 1.01(b), 4.09.) Those Assets were defined as including all "Intellectual Property," which, in turn, included all trademarks. (*Id.* § 9.16.) Defendants admit that all the trademarks were registered prior to October 2022. (D.I. 36 ¶¶ 25-36.) Therefore, they were included in the sale to Shellco.

The SPA and the IP Assignment Deed, which were both executed on October 24, 2024, explicitly provide that PGC purchased all of Shellco's intellectual property rights and assets and that title transferred on October 24, 2024. (D.I. 16, Ex. A § 2.1.2 (listing Shellco's "Intellectual Property Rights" as among the assets that are being sold to PGC, including its trademarks, patents, and website domains), § 7.1 (providing that title to Shellco's assets would transfer upon completion of the sale), and at 50 (stating that the SPA "has been executed as a deed and is delivered and takes effect on the date stated at the beginning of it," i.e., October 24, 2024); D.I. 60, Ex. A § 2.2 (providing that, "the Assignor [Shellco] hereby assigns to the Assignee [PGC] absolutely all such right, title and interest as the Assignor may have in and to the Intellectual Property Rights and the Goodwill"). Consequently, on October 24, 2024, PGC acquired ownership and possession of Shellco's trademarks, including those sold by Defendants.

Accordingly, by the time Defendants obtained the writ of execution in May 2025 to seize intellectual property rights and assets from Shellco, that writ was ineffective because Shellco neither owned nor possessed that intellectual property, including the trademarks at issue in DP's counterclaims. Moreover, as discussed above, Defendants knew before they obtained the writ of

12

execution that Shellco had already sold its business and assets to PGC and that there was nothing to seize from Shellco. But they concealed that fact from the Court and obtained the writ of execution under false pretenses, which, in turn, they have used to falsely purport DP to be the owner of the trademark. The fact that DP may now be identified as the owner of those trademarks on the USPTO records does not avail it, as DP cannot manufacture ownership through its unlawful efforts. As PGC owns the trademarks at issue, DP cannot state a claim for trademark infringement or false designation of origin based on PGC's use of those trademarks.

Lastly, as DP has not pleaded facts indicating it is presently engaged in any business in the United States using the trademarks at issue or has the "immediate intent and present ability" to do so, its Lanham Act claims should be dismissed because it has not demonstrated "an actual or imminent injury" or that it is "likely to suffer an injury in the future," and it therefore "fail[s] to satisfy the minimum requirements necessary to establish standing under the United States Constitution" for a claim under 15 U.S.C. § 1125(a) *Joint Stock Soc'y v. UDV N. Am., Inc.*, 53 F. Supp. 2d 692, 707 (D. Del. 1999); *see* D.I. 36, Counterclaims. "The purpose of the Lanham Act is to 'protect persons engaged in . . . commerce against unfair competition.'" *Industria de Alimentos Zenu S.A.S. v. Latinfood US Corp.*, 679 F. Supp. 3d 53, 84 (D.N.J. 2023) (quoting 15 U.S.C. § 1127). "In *Lexmark International, Inc. v. Static Control Components*, the Supreme Court set forth a two-prong test to determine whether a plaintiff has a statutory cause of action to sue under Section 43(a) of the Lanham Act. The critical inquiry is whether the plaintiff 'falls within the class of plaintiffs whom Congress has authorized to sue under § [43(a)].'" *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 1388 (2014). Specifically, for a suit under Section 43(a), "to come within the zone of interests . . . a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* (quoting *id.* at 1390). As

13

DP has not alleged any ongoing business, or imminent business, using the trademarks at issue, it lacks standing to bring a counterclaim under 15 U.S.C. § 1125(a).

Therefore, the Court should dismiss DP's counterclaims for trademark infringement and false designation of origin.

## CONCLUSION

For the foregoing reasons, PGC's motion to dismiss DP's counterclaims and to strike Defendants' affirmative defense of fraudulent transfer should be granted in its entirety, together with such other and further relief as the Court may deem just and proper.

Dated: November 10, 2025

|  |  |
|---|---|
| OF COUNSEL:<br><br>Joel H. Rosner<br>*Admitted Pro Hac Vice*<br>TARTER KRINSKY & DROGIN LLP<br>1350 Broadway<br>New York, New York 10018<br>Tel. (212) 216-8000<br>jrosner@tarterkrinsky.com | /s/ Kenneth L. Dorsney<br>Kenneth L. Dorsney (#3726)<br>Cortlan S. Hitch (#6720)<br>MORRIS JAMES LLP<br>3205 Avenue North Boulevard, Suite 100<br>Wilmington, DE 19803<br>(302) 888-6800<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>*Attorneys for Plaintiff*<br>*Personal Grooming Co Limited* |

14