# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERSONAL GROOMING CO LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>DRYFHOUT ENTERPRISES, LLC,<br>DRYFHOUT PROPERTIES, LLC,<br>MATTHEW DRYFHOUT, and<br>ANGELINA DRYFHOUT<br><br>Defendants. | )<br>)<br>)<br>)<br>)   C.A. No. 25-1047-RGA-LDH<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR RELIEF REQUESTED, OR IN THE ALTERNATIVE, FOR A HEARING AND <u>EXPEDITED BRIEFING</u>**

*Of Counsel:*

Carrie J. Richey
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, California 94111
Telephone: (415) 433-1900
carrie.richey@wbd-us.com

Stephanie S. Riley (#5803)
Zachary Murphy (#6881)
Alexander P. Wharton (#7304)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
stephanie.riley@wbd-us.com
zachary.murphy@wbd-us.com
alexander.wharton@wbd-us.com

*Counsel to Dryfhout Enterprises, LLC, Dryfhout Properties, LLC, Matthew Dryfhout, and Angelina Dryfhout*

Dated: December 11, 2025

1. Plaintiff Personal Grooming Co Limited ("PGC") claims that if the Court does not act within "two weeks," it and the "other companies" will be insolvent. D.I. 99 ¶ 1. The irony of Plaintiff's Motion cannot be overlooked.

2. When Shellco was forced into insolvency, Shellco owned the very intellectual property that PGC alleges to be necessary to prevent PGC and the other companies from being insolvent. D.I. 99 at 1 ("PGC cannot survive on the remaining cash flow and will be forced to shut down operations within the next two weeks unless it obtains relief from the Court now.); 2 ("[a]bsent the continued operation of PGC's business, those other companies … will be forced to enter into insolvency proceedings."). Following PGC's logic, Shellco should never have been placed into insolvency because its intellectual property is so valuable that it was keeping afloat the entire Olsam dynasty. Thus, in reality, Shellco should have continued to operate, paying the Deferred Payments of $1 million a year to Defendants, apparently a small price to pay to enable the entire Olsam dynasty to stay afloat.

3. But instead, Denali European Opportunities DAC ("Denali") and NorthWall Capital LLP ("NorthWall")—venture capitalists structured to maximize returns—concocted a scheme to discharge Shellco's debt to guarantee more money in their pockets. The same administrators who had previously advised Denali on how to take over control of the Olsam group from its founders, Ollie and Sam Horybee (D.I. 21 at 80), once again, upon information and belief, counseled Denali and NorthWall on how to clear Shellco's (the "Company") debts while maintaining control of the valuable IP assets. *Id.* ("I advised the Board as a whole, acting on behalf of the Company [Shellco], about the Company's financial difficulties and **provided advice about the options available to the Company to help determine an appropriate course of action to**

**take, particularly if a settlement with the original vendor [Defendants] could not be reached**."). These perceived "financial difficulties" is code for Denali's loan.

4. At that time, Denali could have forced one or all of the Olsam entities into bankruptcy because they were each jointly liable to secure the Denali loan, including PGC. D.I. 72-2 at 15-25 (Ben Poynter signing on behalf of PGC and Shellco making them and the other Olsam entities jointly liable for Denali's loan). But Denali chose only to place Shellco into bankruptcy and cause the IP Assets to be sold to PGC, another Olsam entity equally responsible for the Denali loan, to wipe out Shellco's obligation to pay the Deferred Payments.

5. The evidence will show that when the Administrators approached Defendants threatening to place Shellco into administration if they did not settle the Deferred Payments for pennies on the dollar. Administrators told Defendants that it would cost them €80,923,750 to purchase the IP Assets because Denali had a potential buyer that would pay back the loan, discharging the entirety of the Denali security. D.I. 98 ¶¶ 234-235.

6. This potential buyer was no other than Olsam Acq AA controlled by Denali and NorthWall. *Id*. Ben Poynter and Scott Carpenter are Directors. *Id*. ¶ 236. This entity had no business assets and no apparent ability to pay this amount. It was simply Denali and NorthWall boxing the Defendants out from being able to repurchase the IP Assets.

7. Now PGC is asking this Court to prop up its shell game. Plaintiff has filed its third emergency motion, alleging the same harm that it argued in its first TRO back in August. D.I. 13, at 14, and again in October, D.I. 68 at 18. But PGC's prospects of succeeding on the merits have not changed.

8. Shellco, PGC, and their cohorts took a group approach in deciding not to participate in *Dryfhout Enterprises, LLC et al v. Shellco 2021 Limited*, Case 1:24-cv-01184-RGA (the "Default

Action"). D.I. 83 at 7 (citing D.I. 18 at 6.) Defendants legally obtained a Default Judgment that led to the issuance of a Writ and Marshal Sale of the IP Assets to Defendants. The legality of these documents remains fully in effect. Recently, this Court issued an Order Confirming U.S. Marshal's Sale and Facilitating Transfer of Property Sold ("Confirming Order"). Default Action, D.I. 24. Thus, through operation of law, Defendants became owners of the IP Assets. And Defendant Dryfhout Properties LLP ("DP") has established prima facie case of ownership of the IP Assets. D.I. 44 at 3-4.

9. PGC took a calculated risk by not participating in the Default Action so any harm is of its own doing. To be sure, the SPA states that PGC assumed any and all risk related to the IP Assets. D.I. 16, Ex. A, § 7.2 ("Risk in the Assets [] shall pass to the Purchaser"); *see also id.*, § 12.6.

10. Defendants do not believe that they have misconstrued the Court's guidance that the parties meet and confer over an agreement that would permit the winner of the lawsuit to have a chance at thriving. D.I. 82. At the meet and confer, PGC demanded that Defendants agree to PGC's requested injunctive relief, when the Court already indicated it may deny both parties' preliminary injunctions. D.I. 82 at 3.

11. On October 28, 2025, Defendants applied for an Amazon Brand Registry account to sell Bakblade products on Amazon to customers in the U.S. In this application, Defendants included the U.S. Marshal's Bill of Sale, the Writ of Execution, Default Judgment, all from the Default Action, and USPTO trademark and patent assignment records. D.I. 84 at ¶¶ 8-12. Defendants subsequently provided the Confirmation Order to Amazon. *Id.* at ¶¶ 12, 25. On or around November 13, 2025, Defendants resumed selling Bakblade products on Amazon.com (U.S. only). *Id.* ¶ 27.

12. PGC controls the Amazon Brand Registry for the rest of the world in which it sells. D.I. 16 at 40-41 (Schedule 1, Part 1 of SPA). PGC can continue to operate these storefronts and utilize the revenues as it sees fit during the pendency of this litigation. Contrary to PGC's representation, Defendants are not attempting to shut down PGC's Amazon Seller Accounts in non-U.S. countries. PGC must be referring to Amazon's boilerplate language in Exhibit A that states unresolved violations may result in account deactivation. D.I. 99-1 at 3. Defendants have no present intention to block PGC's use of the IP Assets outside of the U.S. or its non-U.S. Amazon accounts.

13. Further, Defendants are capable of running the U.S. Amazon storefront as they did long before PGC and Shellco. *See generally* D.I. 84. Thus, when all the ownership disputes are resolved, the entity that owns the IP Assets will be able to thrive as Defendants are protecting the BAKBLADE brand. *Id*.

14. Allowing PGC to sell Bakblade products on Amazon (i.e., having two primary sellers) would ultimately harm the brand. D.I. 84 at ¶¶ 5-6.

15. PGC claims that within "two weeks" it and the "other companies" will be insolvent, but to be clear, each entity is already insolvent. And it has nothing to do with this lawsuit. Ben Poynter caused each Olsam entity to jointly cross-collateralize the second Denali loan, making each Olsam entity individually responsible for the totality of the Denali loan. D.I. 72-2 at 15-25. This makes each entity's debt obligations outweigh its capital—or being incapable of paying off the debt on its own. NorthWall and Denali could cause any entity to go into administration based on this alone. In fact, this is the reasoning behind why Shellco's administrators claimed Shellco was placed into administration—because Denali was calling on its debt and Shellco alone could

not pay off the entirety of the Denali loan and therefore was insolvent, ***but so was every other Olsam entity***.

16. Finally, Plaintiff's Motion underscores Defendants' position that the Olsam entities are one and the same. D.I. 98 ¶¶ 228-239, 261 (DP's Amended Counterclaims alleging Olsam entities are one and the same); D.I. 99 at ¶ 2 ("PGC's parent company and related other companies … rely … on the funds they receive [from] PGC in exchange for their services to its business"); *id*. ("[a]bsent the continued operation of PGC's business, those other companies will be unable to engage in their own commercial activities."). These other entities that PGC did not even bother to name are Olsam entities controlled by the same individuals that control PGC, the same individuals that forced Shellco into bankruptcy, and who caused a fraudulent transfer from Shellco to PGC in an effort to evade Defendants' collection efforts. *Id*.

17. Accordingly, PGC's requested relief should be denied.

Dated: December 11, 2025

*Of Counsel:*

Carrie J. Richey
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2740
San Francisco, California 94111
Telephone: (415) 433-1900
carrie.richey@wbd-us.com

Respectfully submitted,

*/s/ Stephanie S. Riley*
Stephanie S. Riley (#5803)
Zachary Murphy (#6881)
Alexander P. Wharton (#7304)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
stephanie.riley@wbd-us.com
zachary.murphy@wbd-us.com
alexander.wharton@wbd-us.com

*Counsel to Dryfhout Enterprises, LLC,
Dryfhout Properties, LLC, Matthew Dryfhout,
and Angelina Dryfhout*